IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED AMERICA FINANCIAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:06CV0123 |
| ) | |
| POSTMASTER GENERAL, JOHN E. POTTER ) | |
| ) | |
| Defendant ) | |
| ) | |

## DECLARATION OF JOHN PATRICK TYRRELL

I, John Patrick Tyrrell, declare as follows:

1.    I am currently employed as an attorney in the Claims and Employment Law Branch, Office of General Counsel, U.S. Department of Health and Human Services, Washington, D.C. I previously worked as an attorney at U.S. Postal Service Headquarters, Washington, D.C., from July 1999 until May 2006. During my last four years at the Postal Service, I worked in the Corporate Law Section, Office of General Counsel, primarily providing advice concerning the Privacy Act of 1974 and the Freedom of Information Act.

2.    I reviewed the 11 pages of Postal Service documents (as distinguished from U.S. Postal Inspection Service documents) at issue in this case, which were provided to me by someone who worked for Julie Moore, Manager, Compensation. I believe this woman was the Insurance Officer Beverly Wegner. After reviewing the documents and discussing them with Ms. Wegner, I recommended that one page be released with redactions based on FOIA Exemptions 2, 3, 5, and 6; that five pages should

be released in their entirety; and that five pages should be withheld in their entirety under FOIA Exemptions 2, 3, 5, and 6. I later drafted the letter for Ms. Moore's signature which accompanied and explained the release decision made. The following paragraphs explain the rationale for applying the relevant FOIA exemptions to the documents in question.

3.    The email released in redacted form contained a request that certain steps be taken to determine whether transactions affecting the pay of individuals were pending and ensuring that the affected employees approved of those transactions. Also redacted was a discussion of the proposed steps that would be taken to accomplish this review and to notify affected employees. As such, at that time, I considered that this information was trivial, did not shed light on Postal Service operations, and would have been of little interest to the public within the meaning of FOIA Exemption 2 (Low). Now, on further consideration, I also consider that the redacted material could also have been withheld under FOIA Exemption 2 (High) to the extent that it could aid one in determining how to avoid detection in the future when attempting to effect a pay change of a Postal Service employee. In addition, I considered that this was information that a private business entity would not have released to the public within the meaning of FOIA Exemption 3 in conjunction with 39 U.S.C. § 410(c)(2), as explained in <u>Wickwire Gavin, P.C. v. United States Postal Service</u>, 356 F.2d 588 (4th Cir. 2004), where it is said that the Postal Service may look to the practices followed by private businesses in determining whether to release commercial information. I considered matters related to protecting the pay of employees to be commercial information and that releasing it could affect the morale and welfare of employees and might affect the profitability of a business and therefore would

2

not be information that a private business would disclose to the public. I considered FOIA Exemption 5 applicable to the redacted information because, although the initiating email (matter redacted at the bottom of that page) may be read to be a request, it proposed a course of action that the addressee could have declined. Therefore, the redacted material was predecisional and deliberative within the meaning of the deliberative process privilege under FOIA Exemption 5. At this time, I do not remember the rationale for applying FOIA Exemption 6 to this document.

4.      Three of the pages which were withheld in their entirety contained an email chain proposing drafts of the notice to employees that ultimately became the article on the Postal Service Intranet entitled, "A Dropped PIN." The drafter and editor of the two versions of the draft article that appear in this email chain ask each other and another individual whether the drafts are acceptable. Given this content, I considered that this information was trivial, did not shed light on Postal Service operations, and would have been of little interest to the public within the meaning of FOIA Exemption 2 (Low). In addition, it seemed clear to me that these drafts and the entire email chain were predecisional and deliberative within the meaning of the deliberative process privilege under FOIA Exemption 5. At this time, I do not remember the rationale for applying FOIA Exemptions 3 and 6 to this document.

5.      One of the pages withheld was a routing slip, addressed to an individual who is unknown to me from a Postal Seravice employee at a Post Office, containing a list of names of Postal Service employees who "signed up." I believe that this was a partial listing of employees at that Post Office who had indicated an interest in attending a presentation by or receiving information from employees of UAF. I considered that this

information was trivial, did not shed light on Postal Service operations, and would have
been of little interest to the public within the meaning of FOIA Exemption 2 (Low). In
addition, I considered that this was information that a private business entity would not
have released to the public within the meaning of FOIA Exemption 3 in conjunction with
39 U.S.C. § 410(c)(2), as explained in Wickwire Gavin, P.C. v. United States Postal
Service, 356 F.2d 588 (4th Cir. 2004), where it is said that the Postal Service may look to
the practices followed by private businesses in determining whether to release
commercial information. I considered the list of employees to be commercial
information in the sense that a business has an interest in retaining its employees and to
release such a list could make it easier for a competitor to contact such employees with a
view to hiring them away from the current employer and therefore would not be
information that a private business would disclose to the public. Furthermore, I
considered the list of names to be protected under FOIA Exemption 6, because the
employees have a privacy interest in not having their names released to the public and
this interest outweighs the public interest in knowing who had "signed up." Without the
list of names, the Routing Slip loses its meaning and usefulness and provides nothing but
trivial information of no interest to the public. Also appearing on this document was a
photocopy of one of the UAF employee's business cards which was being released on
another document. At this time, I do not remember the rationale for applying FOIA
Exemption 5 to this document.

6.      The final document withheld consisted of one page addressed to a Postal
Service employee and included another Postal Service employee's name, employee
number and what appears to be a Social Security Account Number and photo copies of

two other UAF employees' business cards, different than the business card referred to in

the paragraph immediately above, but also released on another document. Again, I

considered that this information was trivial, did not shed light on Postal Service

operations, and would have been of little interest to the public within the meaning of

FOIA Exemption 2 (Low). Further, I considered that the employee's name and personal

identifying numbers was information that a private business entity would not have

released to the public within the meaning of FOIA Exemption 3 in conjunction with 39

U.S.C. § 410(c)(2), as explained in Wickwire Gavin, P.C. v. United States Postal Service,

356 F.2d 588 (4th Cir. 2004), where it is said that the Postal Service may look to the

practices followed by private businesses in determining whether to release commercial

information. I considered this information to be commercial information in the sense that

a business has an interest in protecting the privacy of its employees and may, in fact, be

required by law to protect personal identifiers and other personal information. An

employee whose employer routinely disclosed personal information might resign a

position with such an employer. In addition, an employer has a commercial interest in

retaining its employees and to release the employee's name and personal identifiers could

allow a competitor to identify the individual and make it easier for a competitor to hire

away such an employee. Therefore, I concluded that this would not be information that a

private business would disclose to the public. Finally, I considered the employee's name

and personal identifiers to be protected under FOIA Exemption 6, because the public has

no interest in knowing whether an individual Postal Service employee has chosen to

obtain information related to his personal financial condition or chosen to "sign up" for

some commercial financial product, while the employee has some privacy interest in

keeping that information from the public. At this time, I do not remember the rationale

for applying FOIA Exemption 5 to this document.

Executed this 30 th day of October, 2006.

JOHN PATRICK TYRRELL
Attorney, Claims and Employment Law Branch
Office of the General Counsel
U.S. Department of Health and Human Services
330 Independence Avenue, S.W., Room 4760
Washington, D.C. 20201