Attachment 1

Corrected Memorandum of Points
and Authorities in Support
of Defendant's Motion to Dismiss
or for Summary Judgment
and in Opposition to Plaintiff's
Motion for Summary Judgment

November 6, 2006

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED AMERICA FINANCIAL, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-1023 (JDB) |
| | ) |
| POSTMASTER GENERAL, JOHN E. POTTER, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## CORRECTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendant Postmaster General John E. Potter, through undersigned counsel, respectfully submits this memorandum of points and authorities in support of his motion to dismiss or for summary judgment, and in opposition to plaintiff's cross motion for summary judgment.

## I. INTRODUCTION

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and pertains to Plaintiff's FOIA request to the Postal Service Records Office and Postal Inspection Service in February 2006 for records concerning employees who may have complained about United America Financial's ("UAF") employees soliciting access to Postal Service employees' life insurance accounts. See Complaint; see also Attachment 1, hereto (Declaration of Julie S. Moore, Manager, Compensation at the U.S. Postal Service Headquarters in Washington, D.C. ("Moore Decl.")), ¶13. As explained in the declarations of Ms. Moore; Ms. Renee Baxter, Disclosure Technician, Office of Counsel for the Postal Inspection Service (Attachment 2, hereto); Ms. Betsy Cuthbertson, Manager, FOIA Office, U.S. Postal Service's Office of Inspector General (Attachment 3, hereto); Postal Inspector Frank O'Connor, U.S. Postal

Inspection Service (Attachment 4, hereto); and, Mr. John Patrick Tyrrell, former attorney, Corporate Law Section Office of General Counsel, U.S. Postal Service (Attachment 5, hereto), a search for records was conducted, records were identified and processed under the FOIA, and releases were made to plaintiff. Redactions were made pursuant to Exemptions 2, 5 & 6, 7(A), 7( C), 7(D), 7(E). See Attachments 1-5.

## II.  FACTUAL BACKGROUND

By letter dated February 1, 2006, addressed to the Postal Service Records Office and to James Rowan, Jr., Acting Chief Postal Inspector, plaintiff requested the names of all people responsible for creating a document titled, "A dropped PIN - Nigerian identity thieves targeting USPS employees."   This article was generated after postal employee(s) complained that plaintiff's employees were representing themselves as representatives of the Office of Federal Employee's Life Insurance ("FEGLI") and were asking the employee(s) for PIN and other personal information.  Attachment 1 (Moore Decl.) at ¶¶ 6 and 13.

Plaintiff also requested information concerning Postal Inspector John Soos's involvement in the creation of the article. Complaint; Moore Decl. at ¶ 6; see also Attachment 2 (Baxter Decl.) at ¶ 4 and Exhibit A, thereto.  In its request, Plaintiff wanted all supporting documents and all investigative documents pertaining to the above-identified document.  Id. and Moore Decl. at ¶ 6 and Exhibit A, thereto.  Plaintiff's request was referred to Anthony J. Vegliante, Chief Human Resources Officer and Executive Vice President, the U.S. Postal Inspection Service.  Id. at ¶ 7.  The Office of Inspector General ("OIG") was also considered to be within the ambit of the request. Attachment 3 (Cuthbertson Decl.) at ¶ 2.

A.  A Search of Each Office was Undertaken to Find Responsive Records, Records
Were Located, Processed Pursuant to FOIA and Releases Made to Plaintiff.

1.  Human Resources.  A Compensation Specialist in the Department of Human Services,
also known as the Insurance Officer was alerted by the Pittsburg, PA, field office that Plaintiff's
employees  were outside the field offices on Postal Property distributing business cards and
making the appearance that they represented FEGLI and asking for personal identification
numbers and PIN numbers of the employees.  See Moore Decl. at ¶ 13.  Subsequently, a series of
emails were distributed resulting in an internal publication warning employees not to release
their PIN numbers. Id. at ¶ 14.  This resulted in the publication of the "Drop PIN" in the Postal
Link. Id. at ¶ 13.  The publication was not published as an external publication or available to the
general public.  Id. at ¶ 15.

After receipt of Plaintiff's FOIA request, it was reviewed and processed in
accordance with the U.S. Postal Service's policy contained in its Handbook AS-353.  Moore
Decl. at ¶ 16.

Because Plaintiff's FOIA request sought information concerning employees who may
have complained about employees of UAF soliciting access to Postal Service employees' life
insurance accounts, Plaintiff's FOIA request was forwarded to the Compensation office which,
as noted above, had posted an internal publication concerning the matter.   Moore Decl. at ¶ 17.

The Insurance Officer in the Compensation office at Headquarters who handled life and
health insurance matters was instructed to pull all her records and work with Headquarters Law
Department to provide a response to Plaintiff's FOIA request. Id. at ¶ 19.   A search was
conducted by using the name UAF or United America Financial, Inc., and also by referencing a
file the Chief Insurance Officer had specific to this request.  Id.  As the records sought were in
the nature of personal correspondence, such as telephone conversations with the field offices and

4

internal email messages, there was no need to search reading files in the normal course of responding to a FOIA request.  Id. at ¶ 18.

As a result of a diligent and exhaustive search, eleven (11) pages of responsive records were found, consisting of email correspondence, a fax cover sheet, copies of business cards, and a routing slip.  All the files related to this FOIA request were in a folder in the Insurance Officer's work area and/or her personal email folder.  Id. at ¶ 20.

As more fully set forth in the Moore Declaration, redactions were made to the identified documents pursuant to Exemption 2, 5, 6 and 7(c) of the FOIA and under the Privacy Act of 1974, 5 U.S.C. 552a. Attachment 1 (Moore Decl.) at ¶ 24.   Exemption 3 was also asserted. Attachment 5 at ¶ 5.[1]  Five of the eleven pages were released in full; one was released in redacted form; and six were withheld in their entirety. Id.

Exemption 2 was asserted by the Records Office to withhold markings on the routing slip and the facsimile transmission.  Moore Decl. at ¶ 24,  These markings were mundane administrative markings that related solely to the internal personnel rules and practices of an agency. Id. at ¶ 34.

Exemption 5 was asserted to withhold a portion of three emails, the routing slip form and facsimile transmission. Moore Decl. at ¶ 24.  The withheld documents included information reflecting the thoughts and opinions of agency personnel advising agency policymakers on the potential identity theft situation and what should be included in the News Link article. Id. and ¶ 26.

The Privacy Act and FOIA Exemption 6 were asserted to withhold information in three emails, a routing slip, and facsimile transmission.  Moore Decl. at ¶ 24.  The information

---

[1]  Defendant no longer relies on Exemption 3.  The records that were subject to the Exemption 3 claim, however, are all covered by other exemptions, as described herein.

withheld was personal information, including Employee ID and PIN numbers; information which is of a purely private nature. Id.; ¶ 35.

In processing plaintiff's request, the Records Office made every effort to segregate out releasable information. Moore Decl. at ¶¶ 22, 27, 30.

2. Office of Inspection Services. The Chief Postal Inspector is the official custodian of all Inspection Service records maintained by the Postal Inspection Service. Baxter Decl. at ¶ 2. One of the functions of the office of Chief Postal Inspector is the processing of requests for access to Inspection Service records made pursuant to the FOIA and the Privacy Act of 1974 (PA), 5 U.S.C. §552a (1988). Id. The office reviews requests under these Acts which are referred to the Postal Inspection Service. Id. It also conducts searches to locate responsive records and prepare responses of the Postal Inspection Service to the requester(s), and it is the responsibility of the office to make the determinations to withhold or to release records of the Postal Inspection Service in accordance with the provisions of both the FOIA and PA, and Postal Service regulations 39 C.F.R. § 265.1 et. seq. Id.

The Inspection Service conducts criminal, civil, and administrative investigations and has a number of filing systems. Baxter Decl. at ¶ 20. The Inspection Service Integrated Information System (ISIIS) is an electronic case management database containing case file and other information in support of investigations. The contents of these files are accessible by name and/or social security number. Id. Responsive records were retrieved by using the ISIIS. Id.

By electronic message sent on March 7, 2006, a record search was requested by the Office of Chief Postal Inspector to be conducted by the Special Investigations Division, Inspection Service, and specifically directed Inspector John Soos to search for any and all responsive records relating to the creation of the USPS News Link article, A Dropped PIN. Baxter Decl. at ¶ 6. On March 7, 2006, Plaintiff's new request for a full report of the investigation. Id. at ¶ 7.

6

By electronic message dated March 9, 2006, Ms. Baxter received notice that Postal Inspector John Soos was not involved in the creation of the article, nor were there any records, notes, or emails pertaining to this subject. Id. at ¶ 8. On that same day, Ms. Baxter drafted a letter to Plaintiff's attorney informing him of these facts. Id. at ¶ 9. Plaintiff appealed the no records response. See Id. at ¶ 11 and ¶ 12.

On March 15, 2006, Plaintiff's attorney indicated to Ms. Baxter that records were likely found in the Cleveland, Ohio, Office. Id. at ¶ 13. This office falls under the Pittsburgh, Pa., Division. Id. and Exhibit 1.

On March 16, 2006, an email was sent to the Pittsburgh Division to search the Pittsburgh Division files, including those maintained by two postal inspectors employed there, for references pertaining to United America Financial, Inc. and/or documents used in the creation of the News Link article published on the world wide web. Baxter Decl. at ¶ 15 and Exhibit K. The search located 176 pages of record material consisting of emails, fax cover sheets, copies of business cards, and insurance policy illustrations. Id. These records were processed under the FOIA and, by letter dated April 6, 2006, five pages of responsive records were released. ¶¶ 17-18. 143 pages of records were withheld in full. Id. at ¶ 18. During the preparation of the declaration, the Inspection Service re-reviewed the documents and determined to release an additional 47 pages.

The redactions made on all five pages were made pursuant to Exemptions (b)(2), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D) and (b)(7)(E). Id. at ¶ 22. The Vaughn Index attached to Ms. Baxter's Decl. provides details concerning the redactions. Id.

The records found related to the Inspection Service's investigation of United America Financial, Inc., for possible identity theft fraud against Postal Service employees. Baxter Decl. at ¶ 21.

7

With regard to the redactions, Ms. Baxter explains as follows:

Exemption 2 was asserted to protect Inspection Service records that "related solely to the internal personnel rules and practices of an agency." Exemption 2 records were found in Documents 1, 2, 3, 5, 8, 9, 11, 13 and 14 and only those records that related to the agency's rules and practices were redacted pursuant to Exemption 2 as more fully set forth in the attached Vaughn Index. Id. at ¶ 23.

Exemption 5 was asserted to exempt from release inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the U.S. Postal Service. Id. The records at issue are found in Documents 1, 2, 8, 9, 11 and 14. They relate to (1) Postal Inspectors' selective recollections and recommendations concerning the investigation, and (2) internal correspondence between Postal Service management and Postal Inspectors and only deliberative process information was redacted from the documents pursuant to Exemption 5. Id. at ¶ 23.

Exemption 6 was asserted to protect personnel and medical files and similar files when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." This exemption was applied to protect information about third-party individuals whose personal information appears in the records on Documents 4, 6, 7, 12, 13, 15, 16, 17, 18, 19, 20 and 21. The redactions were of personal information, including Employee ID and USPS Employee PIN numbers. Every effort was made to segregate information and to release as much information as possible. Id. at ¶ 23.

Exemption 7(C) was asserted to protect "records or information compiled for law enforcement purposes, i.e., the names of third-party individuals on Documents 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20 and 21. The threshold of Exemption 7(C) was met because the files at issue were compiled for law enforcement purposes and they contained the

identities and or addresses of individuals who were not the target of the investigation. The exemption was applied because the disclosure of the identities of these third parties could reasonably be expected to result in subjecting them to unnecessary harassment, intimidation and or physical harm. The third parties protected from disclosure in this way include individuals who provided witness statements, individuals who supplied information or otherwise assisted in the investigation, individuals mentioned in the records as being potential leads, and non-postal law enforcement personnel, whether federal, state or local, who played some official role in the investigation and are identified in the records. Id. at ¶ 23.

Exemption 7(D) was asserted to protect from mandatory disclosure records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information that could reasonably be expected to disclose the identity of a confidential source, including a state, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of an investigation. Withholdings pursuant to Exemption 7(D) were made on Documents 1, 10 and 13. Id. Ms. Baxter explained that the threshold for Exemption 7(D) was met because the redacted and withheld information consists of the identities of confidential sources and the information they provided in the course of the investigation of United America Financial, Inc. Revelation of these confidential sources could jeopardize future law enforcement cases and disclosure of the identities of these sources could reasonably be expected to result in subjecting them to unnecessary harassment, intimidation and or physical harm. As noted, Exemption 7(D) has been used in this case to protect the identities and statements of sources who provided information under an implied promise of confidentiality. The latter portion of Exemption 7(D) protects all information furnished by confidential sources. This portion of the exemption recognizes the

reality that the identity of a source may often be determined by analyzing the information

provided, a task often easily accomplished by someone familiar with the facts and circumstances

of the case. Should this occur, the Inspection Service's ability to continue to obtain confidential

information concerning suspected criminal activity would be impaired, and sources of

information vital to its investigative and law enforcement functions would be imperiled.

Therefore, the statements of all those who provided information to the Inspection Service under

implied assurances of confidentiality are protected under 7(D). Id. at ¶ 23.

Exemption 7(E) was asserted to protect from mandatory disclosure the revelation of

techniques and procedures for law enforcement investigations or prosecutions. Id.  The

techniques and procedures were in the nature of procedures used by the Postal Inspectors when

investigating suspects and were redacted from Documents 1, 2, 16, 17, 19 and 20.  All efforts

were made to segregate out releasable information to the extent possible.  Id.

As noted by Ms. Baxter, the information contained in her declaration constitutes a

complete and accurate description of all the documents in the custody or possession of the

United States Postal Service that are responsive to the Plaintiff's request. Baxter Decl. at ¶ 27.

### 3. Office of Inspector General.

The Office of Inspector General searched its records and found an ongoing investigation

relating to the subject of Plaintiff's request.  Attachment 3 (Cuthbertson Decl.) at ¶¶ 3-4.  When

the FOIA request was received around March 2, 2006, only a few records, such as memoranda of

interview, existed, and were withheld under exemption 7(A) because the records were part of an

ongoing investigation.  Id. at ¶ 5; See also Attachment 4 (O'Connor Decl.) at ¶¶ 2-6.  Ms.

Cuthbertson and Special Agent O'Connor both indicated that release of the records could

compromise the law enforcement purposes of the investigation.  Id.  Ms. Cuthbertson informed

Plaintiff that it could periodically request the information until the investigation was completed.

10

<u>Id</u>. at ¶ 6.  Plaintiff instead appealed Ms. Cuthbertson's determination. <u>Id</u>. at ¶ 7.  The appeal was denied pursuant to exemption 7(A) because there was still an ongoing investigation of this matter. <u>Id</u>. at ¶ 8.  Even if this were not the case, the records in question would fall under exemptions 2, 5, 6, 7(C), 7(D) and 7(E) for the reasons noted above under the U.S. Postal Inspection Service section of this Memorandum.  In any event, Plaintiff will have access to the records relating to its FOIA request in the normal course of the discovery process if civil and/or criminal charges are formally filed against it.

## III.  ARGUMENT

A.    Summary Judgment Should be Granted in Defendant's Favor and
<u>Plaintiff's Motion for Summary Judgment Should be Denied.</u>

Where no genuine dispute exists as to any material fact, summary judgment is required. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986).  A genuine issue of material fact is one that would change the outcome of the litigation.  <u>Id</u>. at 247.  "The burden on the moving party may be discharged by 'showing'—that is, pointing out to the [Court]—that there is an absence of evidence to support the non-moving party's case." <u>Sweats Fashions, Inc. v. Pannill Knitting Company, Inc.</u>, 833 F.2d 1560, 1563 (Fed. Cir. 1987).

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Thus, to avoid summary judgment, the plaintiff must present some objective evidence that would enable the court to find he is entitled to relief.  In <u>Celotex Corp. v. Catrett</u>, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute.  477 U.S. 317, 322-23 (1986).

In Anderson, the Supreme Court explained under what circumstances summary judgment
is appropriate:

> If the evidence is merely colorable, . . . or is not significantly
> probative, . . . summary judgment may be granted . . . [T]he mere
> existence of a scintilla of evidence in support of the plaintiff's
> position will be insufficient; there must be evidence on which the
> jury could reasonably find for the plaintiff.

Anderson, 477 U.S. at 252; see also Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987)
(the non-moving party is "required to provide evidence that would permit a reasonable jury to
find" in its favor).  In Celotex, the Supreme Court further instructed that the "[s]ummary
judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an
integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and
inexpensive determination of every action.'"  477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

The summary judgment standards set forth above also apply to FOIA cases, which are
typically decided on motions for summary judgment.  See Cappabianca v. Commissioner, U.S.
Customs Serv., 847 F.Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly
identified, FOIA cases should be handled on motions for summary judgment") (citing Miscavige
v. IRS, 2 F.3d 366, 368 (11th Cir. 1993)).  In a FOIA suit, an agency is entitled to summary
judgment once it demonstrates that no material facts are in dispute and that each document that
falls within the class requested either has been produced, is unidentifiable, or is exempt from
disclosure.  Students Against Genocide v. Dept. of State, 257 F.3d 828, 833 (D.C. Cir. 2001);
Weisberg v. U.S. Dept. of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980).

Summary judgment may be granted to an agency in a FOIA case solely on the basis of
agency affidavits [or declarations] if the "affidavits are 'relatively detailed, non-conclusory, and
not impugned by evidence . . . of bad faith on the part of the agency.'"  Public Citizen, Inc. v.
Dept. of State, 100 F.Supp.2d 10, 16 (D.D.C. 2000) (quoting McGhee v. Central Intelligence

Agency, 697 F.2d 1095, 1102 (D.C. Cir. 1983); Citizens Commission on Human Rights v. FDA,

45 F.3d at 1329; Bowen v. FDA, 925 F.2d 1224, 1227 (9th Cir. 1991).  See also Hayden, supra,

608 F.2d at 1387; Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).

　　　Defendant has provided the declarations of Ms. Moore, Ms. Baxter, Ms. Cuthbertson, Mr.

John Patrick Tyrrell and Special Agent O'Connor in support of its motion for summary

judgment and in opposition to plaintiff's motion for summary judgment.

　　　B.　The Search for Responsive Records was Reasonable

　　　In responding to a FOIA request, an agency is under a duty to conduct a reasonable search

for responsive records.  Oglesby v. United Sates Department of Army, 920 F.2d 57, 68 (D.C.

Cir. 1990);  Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health, 844 F. Supp. 770, 776

(D.D.C. 1993); Weisberg v. United States Department of Justice, 705 F.2d 1344, 1352 (D.C. Cir.

1983).    The established  reasonableness standard by which FOIA searches are judged "does not

require absolute exhaustion of the files; instead it requires a search reasonably calculated to

uncover the sought materials."  Miller v. Dept. of State, 779 F.2d 1378, 1384-85 (8th Cir. 1985).

Thus, "the issue in a FOIA case is not whether the agencies' searches uncovered responsive

documents, but rather whether the searches were reasonable."  Moore v. Aspin, 916 F.Supp. 32,

35 (D.D.C. 1996); see also Fitzgibon v. U.S. Secret Service , 747 F.Supp. 51, 54 (D.D.C. 1990);

Meeropol v. Meese, 790 F.2d 942, 952-53 (D.C. Cir. 1986).

　　　Since the "reasonableness" standard focuses on the method of the search, not its results,

Weisberg, supra, 844 F. Supp. at 777 n.4, an agency demonstrates that it conducted a reasonable

search by showing "that it made a good faith effort to conduct a FOIA search for requested

records by using methods that can reasonably be expected to produce the information

requested."  Western Center for Journalism v. Internal Revenue Service, 116 F. Supp. 2d 1, 9

(D.D.C. 2000); Oglesby, 920 F.2d at 68.

The search standards established under FOIA do not require an agency to search every record system; instead, the agency need only search those systems in which it believes responsive records are likely to be located.  Oglesby, supra, 920 F.2d at 68.  Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent.  Nation Magazine v. United States Customs Serv., 71 F.3d 885, 892 n.7 (D.C. Cir. 1995); see also Weisberg, supra, 844 F. Supp. at 777 n.4.  It has been held that "'the search need only be reasonable; it does not have to be exhaustive.'"  Miller, supra, 779 F.2d at 1383 (citing National Cable Television Association v. FCC, 479 F.2d 183, 186 (D.C. Cir. 1973)).  Additionally, the mere fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it.  Maynard v. CIA, 982 F.2d 546, 564 (1st Cir. 1993).  Simply stated, the adequacy of the search is "dependent upon the circumstances of the case."  Truitt v. Dept. of State, 897 F.2d 540, 542 (D.C. Cir. 1990).  The fundamental question is not "whether there might exist any other documents responsive to the request, but rather whether the search for those documents was adequate."  Steinberg v. Dept. of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting Weisberg, supra, 745 F.2d at 1485).

The burden rests with the agency to establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  Oglesby, supra, 920 F.2d at 68; see also SafeCard Servs. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991).  "An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in good faith."  Miller, supra, 779 F.2d at 1383; Goland v. Central Intelligence Agency, 607 F.2d 339, 352 (D.C. Cir. 1979).  Though the "affidavits submitted by an agency are 'accorded a presumption of good faith,'"  Carney v. Dept. of Justice,

19 F.3d 807, 812 (2d Cir. 1994), <u>cert. denied</u>, 513 U.S. 823 (1994) (<u>quoting</u> <u>SafeCard Servs.</u>,

<u>supra</u>, 926 F.2d at 1200), the burden rests with the agency to demonstrate the adequacy of its

search.  Once the agency has met this burden through a showing of convincing evidence, the

burden shifts to the requester to rebut the evidence by a showing of bad faith on the part of the

agency.  <u>Miller</u>, <u>supra</u>, 779 F.2d at 1383.  It is insufficient for a requester to attempt to rebut

agency affidavits with purely speculative claims.  <u>See</u> <u>Carney</u>, <u>supra</u>, 19 F.3d at 813; <u>SafeCard</u>,

<u>supra</u>, 926 at 1200; <u>Maynard</u>, <u>supra</u>, 986 F.2d at 559-560.

    1.  <u>The Searches Were Reasonable</u>.

  Each component of the U.S. Postal Service that searched for records used a reasonable

method which resulted in the location of the materials responsive to Plaintiff's FOIA request.

      a.  <u>Human Resources</u>.  Because Plaintiff's FOIA request sought information

concerning employees who may have complained about employees of United American

Financial, Incorporated's (UAF) soliciting access to Postal Service employees' life insurance

accounts, Plaintiff's FOIA request was forwarded to the Human Resources Department,

specifically the Compensation office, which had posted an internal publication concerning the

matter.  Moore Decl. at ¶ 17.  Ms. Moore explained that the search was directed at the

Compensation Office because the Insurance Officer was responsible for the publication of the

"Drop PIN" in the Postal Link.  Moore Decl. at ¶ 13.  The Insurance Officer was instructed to

pull all her records and work with Headquarters Law Department to provide a response to

Plaintiff's FOIA request.  She conducted a search by using the name UAF or United America

Financial, Inc., and also by referencing a file she had specific to the incidents that are subject to

UAF's FOIA request.  <u>Id</u>. at ¶ 19.  This resulted in the production of all of the records in the

Human Resources office.

b.  <u>Inspection Office</u>.  Ms. Renee Baxter explained that the search for records by the Office of Inspection Services was conducted by the Special Investigations Division, Postal Inspection Service for all records relating to Inspector John Soos and all records relating to the creation of the USPS News Link article, "A Dropped PIN    " Baxter Decl. at ¶ 6 and Exhibit C. This search produced no records.  However, after Plaintiff's attorney provided additional information that the records would be located in the Cleveland, Ohio, office, a new search was conducted.  Baxter Decl. at ¶¶ 13-14.  The Pittsburgh Division, which oversees the Cleveland office, was contacted via email to the Inspection Office's contact person to  search the Pittsburgh Division files, including those maintained by two postal inspectors in that office, for references pertaining to United America Financial, Inc. and/or documents used in the creation of the News Link article published on the world wide web. (Exhibit K, attached, hereto). <u>Id</u>. at ¶ 15. As a result, records responsive to Plaintiff's request were located and processed for release under the FOIA.

c.  <u>Office of Inspector General</u>.  Ms. Cuthbertson, Manager, Freedom of Information Act, conducted a search for records pertaining to Plaintiff's request.  Cuthbertson Decl. at ¶¶ 2-4.  As part of her search, Ms. Cuthbertson contacted the Office of Investigations to verify if there was an ongoing investigation.  <u>Id</u>. at ¶ 2.  Ms. Cuthbertson was informed that there was an ongoing investigation into this matter.  Cuthbertson Decl. at ¶ 3; O'Connor Decl. at ¶¶ 2-4.  No other files in the Office of Inspector General contain investigative information relevant to Plaintiff's request.  The documents in existence at the time the request was made were withheld under exemption 7(A) due to the ongoing investigation as more fully indicated above.

D.  The Withholdings Were In Accordance With The FOIA.

1.  Exemption 7(A) Was Properly Applied.

The Office of Inspection General withheld records pursuant to FOIA Exemption

7(A).  As indicated in the appeal letter, exemption 7(A) permits agencies to withhold "records or

information compiled for law enforcement purposes" to the extent that disclosures of such

records or information "could reasonably be expected to interfere with enforcement

proceedings."  See 5 U.S.C. §552(b)(7)(A). Cuthbertson Decl. at ¶ 8.   Information provided by

witnesses, investigative reports, and other information obtained during the course of an

investigation are categories of information that may be withheld pursuant to exemption 7(A).

Curran v. Department of Justice, 813 F.2d 473, 476 (1st Cir. 1987).  The application of

exemption 7(A) does not depend on the imminence of a trial or adjudication; it is sufficient that

an enforcement proceeding may result from the investigation.  National Public Radio v. Bell,

431 F.Supp. 509, 514-15 (D.D.C. 1977).  Needless to say, enforcement proceedings may result if

it appears that plaintiff's employees misrepresented plaintiff's affiliation with FEGLI in order to

gain access to federal employees' personal information.

2.  Human Resources and the Inspection Service Properly Applied Exemption 2

Title 5, United States Code, Section 552 (b)(2) (" Exemption 2") exempts from

mandatory disclosure records "related solely to the internal personnel rules and practices of an

agency."  5 U.S.C. § 552(b)(2).  Exemption 2 applies primarily to two types of materials: (1)

internal agency matters so routine or trivial that they could not be "subject to ... a genuine and

significant public interest;" and (2) internal agency matters of some public interest "where

disclosure may risk circumvention" of statutes or agency regulations.  Dept. of Air Force v.

Rose, 425 U.S. 352, 369-70 (1976); National Treasury Employees Union v. U.S. Customs

Service, 802 F.2d 525, 528-30 (D.C. Cir. 1986); Crooker v. Bureau of Alcohol, Tobacco and

Firearms, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981).   This exemption protects routine internal

administrative matters and functions of the agency which have no effect on the public at large.

In this case, Exemption 2 has been asserted to protect portions of a routing slip and facsimile

transmission in the Human Resources records that have no effect on the general public at large.

See Attachment 1 (Moore Decl.) at ¶ 24; see Tyrrell Decl. at Attachment 5, ¶¶ 3 and 5.

Exemption 2 was also asserted to protect records from the Inspection Service that related to the

practice of documenting the chronology of events of an investigation (Documents 1 & 2), a fax

cover sheet (Document 3) internal email regarding the "LiteBlue" website that cannot be usually

accessed by the general public (Document 5) and internal emails and facsimiles (Documents 8,

9, 11, 13 & 14). See Attachment 2 (Baxter Decl.) at Vaughn Index, Doc. 1, 2, 3, 5, 8, 9, 11, 13

and 14.

    As only mundane markings and records related solely to the internal personnel rules and

practices of an agency were withheld pursuant to Exemption 2, the Inspection Services and

Human Services properly applied Exemption (b)(2) in this case.

        F.  Human Resources and the Inspection Service Properly Asserted Exemption 5.

    Exemption (b)(5) protects "inter-agency or intra-agency memorandums or letters which

would not be available by law to a party other than an agency in litigation with the agency."  5

U.S.C. § 552(b)(5).  Courts have construed this language to exempt documents that would not

ordinarily be available to an agency's opponent in a civil discovery context and to incorporate all

evidentiary privileges that would be available in that context.  See United States v. Weber

Aircraft Corp., 465 U.S. 792, 799 (1984); FTC v. Grolier, Inc., 462 U.S. 19, 26 (1983); Martin v.

Office of Special Counsel, 819 F.2d 1181 (D.C. Cir. 1987).

    The deliberative process privilege is incorporated within Exemption 5 and covers

"documents reflecting advisory opinions, recommendations and deliberations comprising part of

a process by which governmental decisions and policies are formulated." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975).[2]  The purpose of this privilege is to protect the "quality of agency decisions." Id.  The policy underlying this privilege is to encourage open, frank discussions of policy matters between subordinates and supervisors, to protect against premature disclosure of proposed policies before they become final, and to protect against public confusion by disclosing reasons and rationales that were not in fact the ultimate grounds for the agency's action.  See, e.g., Russell v. Dep't of the Air Force, 682 F.2d 1045, 1048 (D.C. Cir. 1982); Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980); Jordan v. United States Dep't of Justice, 591 F.2d 753, 772-73 (D.C. Cir. 1978) (en banc), overruled in part on other grounds, Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051 (D.C. Cir.1981) (en banc).

Flowing from the policy considerations is the privilege's protection of the "decision making processes of government agencies." Sears, 421 U.S. at 150.  The privilege protects not merely documents, but also the integrity of the deliberative process itself where the exposure of that process could result in harm. Nat'l Wildlife Fed'n v. United States Forest Serv., 861 F.2d 1114, 1119 (9th Cir. 1988);  Dudman Communications Corp. v. Dept. of the Air Force, 815 F.2d 1565, 1568 (D.C. Cir. 1987)("Congress enacted Exemption 5 to protect the executive's deliberative processes – not to protect specific materials."). Greenberg v. Dept. of Treasury, 10 F. Supp.2d 3, 16, n.19 (D.D.C. 1998); Marzen v. HHS, 825 F.2d 1148, 1155 (7th Cir. 1987) ("[E]xemption protects not only the opinions, comments and recommendations in the draft, but also the process itself."); Pies v. IRS, 668 F.2d 1350, 1353-54 (D.C. Cir. 1981).  As the Court in

---

[2]"The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within in the Government." Department of Interior, et al. v. Klamath, 532 U.S. 1, 8-9 (2001) (internal citations and quotations omitted).

Coastal States held, the privilege protects "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Coastal States, 617 F.2d at 866.   Indeed, the mere status of an agency decision within an agency decision-making process may be protectible if the release of that information would have the effect of prematurely disclosing "the recommended outcome of the consultative process...as well as the source of any decision." Wolfe v. HHS, 839 F.2d 768, 775 (D.C. Cir. 1988) (en banc).

Courts have recognized that agencies are entitled to deference in regard to the way they characterize their deliberative process.   See generally Allen v. Wright, 468 U.S. 737 (1984); Women's Equity Action League v. Bell, 743 F.2d 42, 43 (D.C.Cir.1984).

Two fundamental requirements must be met for the deliberative process privilege to be invoked. Mapother v. Dept. of Justice, 3 F.3d 1533, 1537 (D.C. Cir. 1993).  First, the communication must be predecisional, i.e., "antecedent to the adoption of an agency policy." Jordan, 591 F.2d at 774.  Second, the communication must be deliberative, i.e., "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." Vaughn v. Rosen, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975).  Documents which are protected by the privilege are those which would inaccurately reflect or prematurely disclose the views of the agency, suggesting an agency position that is as yet only a personal position. Id. Here, documents were withheld under the deliberative process privilege of Exemption 5 by Human Resources to protect the thoughts and opinions of agency personnel reflected in communications between the field office employees and the Compensation Office staff that was advising its Chief, Julia Moore, on the potential identity theft situation and what should be included in the News Link article.  See Moore Decl. at p. 26; see also Attachment 5 (Tyrrell Decl.) at ¶¶ 3-5.  The records preceded the release of the article and thus influenced its content.

20

Accordingly, the withholding met the criteria of being pre-decisional and revealing the thoughts of agency personnel.

The records withheld by the Inspection Service are found at Documents 1, 2, 8, 9, 11 and 14. See Attachment 2 at ¶ 23 and Vaughn Index.  Document 1 is an internal memorandum to the file detailing the events of the investigation of a possible identity theft scam.  Release of this document would show the author's selective recordings of the incident for further action. Document 2 is the Inspection Service's incident report.  This incident report contains the postal inspector's comments and those of other law enforcement personnel concerning an identity theft scam targeting USPS employees.  It was prepared in connection with possible law enforcement action, as were Documents 8 and 9, which record information contained in internal emails regarding UAF requests for USPS employees' personal information.  Document 11 is an internal email regarding background information provided by a third party. Document 14 is also an internal email between Inspection Service personnel discussing possible investigative leads. These documents were prepared in contemplation of possible law enforcement action in connection with the incidents.  Baxter Decl. at ¶ 23.

G.  Human Resource and the Inspection Service Properly Asserted Exemption 6.

Exemption 6 of the FOIA protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  "The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual." Lepelletier v.  FDIC, 164 F.3d 37, 46 (D.C. Cir.  1999), (emphasis supplied), quoting Department of State v. Washington Post Co., 456 U.S. 595, 602 (1982).  The Court has also emphasized that "both the common law and the literal understanding of privacy encompass the individual's control of information concerning his or her

person." U.S. Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 763 (1989).

In order to determine whether there would be a "clearly unwarranted invasion of personal privacy," the court must balance the interests of protecting "an individual's private affairs from unnecessary public scrutiny," and "the public's right to governmental information." Lepelletier, 164 F.3d at 46 (interior quotation marks omitted), citing United States Dept. of Defense Dept. of Military Affairs v. FLRA, 964 F.2d 26, 29 (D.C. Cir. 1992), quoting Department of Air Force v. Rose, 425 U.S. 352, 372 (1976). In determining how to balance the private and public interests involved, the Supreme Court has sharply limited the notion of "public interest" under the FOIA: "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" Lepelletier, 164 F.3d at 46 (editing by the court, emphasis supplied, interior quotation marks omitted), quoting United States Dept. of Defense v. FLRA, 510 U.S. 487, 497 (1994). See also Reporters Committee, 489 U.S. at 773. Information that does not directly reveal the operation or activities of the federal government "falls outside the ambit of the public interest that the FOIA was enacted to serve." Id. at 775. Further, "something, even a modest privacy interest, outweighs nothing every time." National Ass'n of Retired Fed. Employees v. Horner, 879 F.2d 873, 879 (D.C. Cir. 1989); but see Lepelletier, 164 F.3d at 48 (in extraordinary circumstance where the individuals whose privacy the government seeks to protect have a "clear interest" in release of the requested information, the balancing under Exemption 6 must include consideration of that interest).

The Postal Service Human Resources withheld records pursuant to Exemption 6 that would threaten the privacy of the U.S. Postal Service employees in the three electronic messages, a

routing slip and facsimile transmission.  <u>See</u> Attachment 1, ¶¶ 23 and ¶ 37; Attachment 5, ¶ 6..

These records were also withheld pursuant to the Privacy Act as no written consent of the

employees has been obtained.  The information withheld included employee social security or

ID numbers and employee PIN numbers.  <u>Id</u>. at ¶ 32.  On October 30, 2006, plaintiff was sent an

additional 47 pages of record material by the Inspection Service. <u>See</u> Baxter Decl. and Vaughn

Index at Document 21.

The Inspection Service withheld records that revealed personal information about third

parties in Documents 4, 6, 7, 12, 13, 15, 16, 17, 18, 19, 20 and 21. <u>See</u> Attachment 1 and

accompanying Vaughn Index.  Document 4 contains the name and phone number of a postal

employee who was involved as a victim in the possible scam.  Document 6 contains the name

and a personal cell phone number of a postal employee who was also involved as a victim in the

possible scam.  Documents 7 and 15 contain copies of driver licenses of three Employee

Services Division, UAF representatives.  Documents 16, 17, 19 and 20 contains information

from a law enforcement database concerning a third party.  Documents 18 and 21 contain names

and phone numbers of postal and law enforcement employees appearing in the investigative file.

Baxter Decl. at Vaughn Index. The agency has weighed the individuals' privacy interests against

the public interest in disclosure and determined that the records should be protected.

H.  <u>The Inspection Service Properly Applied Exemption 7(C)</u>

The FOIA, 5 U.S.C. § 552, does not apply to matters that are:

> (7)  records or information compiled for law enforcement purposes,
> but only to the extent that the production of such law enforcement
> records or information . . . (C) could reasonably be expected to
> constitute an unwarranted invasion of personal privacy. . . .

This exemption protects the identities of suspects and other persons of investigatory interest who

are identified in agency records in connection with law enforcement investigations.  <u>Reporters</u>

Comm. for Freedom of the Press v. U.S. Dept of Justice, 816 F.2d 730, 780 (D.C. Cir. 1987), modified on other grounds, 831 F.2d 1124 (D.C. Cir. 1987), rev'd on other grounds, 489 U.S. 749 (1989); Computer Prof'ls for Social Responsibility v. U.S. Secret Serv., 72 F.3d 897, 904 (D.C. Cir. 1996).  Indeed, an agency in a FOIA case may categorically assert Exemption 7(C) to protect the identities of witnesses or other persons mentioned in law enforcement files in such a way as to associate them with criminal activity.  Reporters Comm. for Freedom of the Press, 489 U.S. at 780; Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 893, 895-896 (D.C. Cir. 1995); SafeCard Services, Inc. v. S.E.C., 926 F.2d 1197, 1206 (D.C. Cir. 1991).

The names of law enforcement officers who work on criminal investigations have also traditionally been protected against release by Exemption 7(C).  Davis v. U.S. Dep't of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992); Lesar v. U.S. Dept of Justice, 636 F.2d 472, 487-488 (D.C. Cir. 1980).  Similarly, individuals who provide information to law enforcement authorities, like the law enforcement personnel themselves, have protectable privacy interests in their anonymity.  Computer Prof'ls for Social Responsibility, 72 F.3d at 904; Farese v. U.S. Dep't of Justice, 683 F. Supp. 273, 275 (D.D.C. 1987).  The fact that the requester might be able to figure out the individuals' identities through other means or that their identities have been disclosed elsewhere does not diminish their privacy interests.  Fitzgibbon v. CIA, 911 F.2d 755 (D.C. Cir. 1990); Weisberg v. Dep't of Justice, 745 F.2d 1476, 1491 (D.C. Cir. 1984).

Once a privacy interest has been established, as here, it must be balanced against the public interest, if there is any, that would be served by disclosure.  Albuquerque Publ'g Co. v. Dep't of Justice, 726 F. Supp. 851, 855 (D.D.C. 1989).[3]  The public interest in disclosure is limited to the FOIA's "core purpose" of shed[ing] light on an agency's performance of its statutory duties."

---

[3] Exemption 7(c) provides similar protection to Exemption 6, but tips the scales strongly against disclosure by making the relevant standard "an unwarranted invasion of personal privacy" rather than a "clearly unwarranted invasion of personal privacy," as in Exemption 6.

Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989).  This standard is not

easily satisfied when law enforcement information pertaining to individuals is sought, for there

"is no reasonably conceivable way in which the release of one individual's name . . . would allow

citizens to know 'what their government is up to.'"  Fitzgibbon v. CIA, 911 F.2d 755, 768 (D.C.

Cir. 1990).  See also Albuquerque Publ'g Co., 726 F. Supp. at 855-56 (no public interest in

disclosure of sensitive information DEA obtained about individuals and their activities, where

such material would not shed light on DEA's conduct with respect to the investigation).

Furthermore, in order to overcome legitimate privacy interests, the requester must not only

demonstrate the existence of the public interest but also that the public interest is both significant

and compelling. Senate of Puerto Rico v. Dep't of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987);

Stone v. FBI, 727 F. Supp. 662, 667-69 (D.D.C. 1990).

Here, the Inspection Service asserted Exemption (b)(7)(C) to protect records appearing in

Documents 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20 and 21.  Exemption 7( C)

was used to withhold the names of law enforcement personnel and third parties and/phone

numbers and other personal identifiers of third party individuals.  As explained in the Baxter

Declaration, the Inspection Service weighed the privacy interests of these individuals against the

public's interest in disclosure and determined that the privacy interests are greater.  Baxter Decl.

at ¶ 23.

I.    The Office of Inspection Services  Properly Applied Exemption 7(D)

Title 5, United States Code,  § 552 (b)(7)(D) (hereinafter Exemption (7)(D)), exempts

from disclosure material that:

> could reasonably be expected to disclose the identity of a confidential
> source including a State, local or foreign agency or authority or any
> private institution which furnished information on a confidential
> basis, and, in the case of a record or information compiled by a
> criminal law enforcement authority in the course of a criminal

investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

Exemption (7)(D) recognizes that information furnished by third parties cooperating with Federal, state or local law enforcement investigations is, by its very nature confidential. Significantly, the statute affords protection from disclosure to all the information furnished by third-party sources, as well as the actual identity of the cooperating individual, if there has been an explicit assurance of confidentiality or circumstances exist from which such an assurance could reasonably be inferred. U.S. Dep't of Justice v. Landano, 508 U.S. 165 (1993). This exemption recognizes the distinct likelihood that the identity of a source may often be determined from an analysis of the information furnished by the source himself. Indeed, this becomes more inevitable when the analysis is made by a person familiar with the facts and circumstances on which the investigation was predicated.

Here, Exemption (b)(7)(D) was asserted to protect individuals who were granted express assurances of confidentiality. Exemption 7(D) has been asserted to withhold records in Documents 1, 10 and 13. Document 1 contains information that could reasonably be expected to disclose the identity of a confidential source and confidential information furnished by those sources that appear in an internal memorandum to the file detailing the events of the investigation of possible identity theft scam by UAF. Information provided by confidential sources also appears in Documents 10 and 13. See Baxter Decl. at Vaughn Index.

J. The Inspection Service Properly Applied Exemption 7(E)

Exemption 7(E) of the FOIA provides protection for all information compiled for law enforcement purposes when release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement

investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

"[T]he term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope." Mittleman v. Office of Personnel Management, 76 F.3d 1240, 1243 (D.C. Cir. 1996), cert. denied, 519 U.S. 1123 (1997) (citing Pratt v. Webster, 673 F.2d 408, 420 n.32 (D.C. Cir. 1982)).  When, however, a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." Keys v. U.S. Dept. of Justice, 830 F.2d 337, 340 (D.C. Cir. 1987) (citing Pratt v. Webster, 673 F.2d 408, 418 (D.C. Cir. 1982)).  A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least "a colorable claim" of its rationality.'" Keys, 830 F.2d at 340 (quoting Pratt, 673 F.2d at 421).

The first clause of Exemption 7(E) affords "categorical" protection for "techniques and procedures" used in law enforcement investigations or prosecutions. Smith v. Bureau of Alcohol, Tobacco and Firearms, 977 F.Supp. 496, 501 (D.D.C. 1997) (citing Fisher v. United States Dep't of Justice, 772 F. Supp. 7, 12 n. 9 (D.D.C. 1991), aff'd, 968 F.2d 92 (D.C. Cir. 1992)).  While Exemption 7(E)'s protection is generally limited to techniques or procedures that are not well known to the public, even commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness. See, e.g., Coleman v. FBI, 13 F.Supp. 2d. 75, 83 (D.D.C. 1998).   In justifying the application of Exemption 7(E) the agency may describe the general nature of the technique while withholding the full details. See e.g. Bowen v. FDA, 925 F.2d 1225, 1228 (9th Cir. 1991).  The agency is not, however, required to describe secret law enforcement techniques, even in general terms, if the description would

disclose the very information sought to be withheld.  <u>Coleman</u>, 13 F.Supp. 2d at 83; <u>Smith</u>, 977

F.Supp. at 501.

Exemption 7(E)'s second clause separately protects "guidelines for law enforcement

investigations or prosecutions if [their] disclosure could reasonably be expected to risk

circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  Accordingly, this clause of the Exemption

protects any "law enforcement guideline" that pertains to the prosecution or investigative stage

of a law enforcement matter whenever its disclosure "could reasonably be expected to risk

circumvention of the law."  <u>See</u>, <u>e.g.</u>, <u>PHE, Inc. v. United States Dep't of Justice</u>, 983 F.2d 248,

251 (D.C. Cir. 1993) ("release of FBI guidelines as to what sources of information are available

to its agents might encourage violators to tamper with those sources of information and thus

inhibit investigative efforts"); <u>Jimenez v. FBI</u>, 938 F.Supp. 21, 30 (D.D.C. 1996) (applying 7(E)

to gang-validation criteria used by Bureau of Prisons to determine whether individual is gang

member).

In the instant case, Exemption 7(E) was asserted for information in Documents 2, 12, 16,

17, 19 and 20.  The techniques and procedures were in the nature of procedures used by the

Postal Inspectors when investigating suspects and involve the format of the databases and

methods of keeping records. Baxter Decl. at ¶ 23 and attached Vaughn Index.

K.  <u>Segregability</u>

The FOIA requires that if a record contains information that is exempt from disclosure, any

"reasonably segregable" information must be disclosed after deletion of the exempt information

unless the non-exempt portions are "inextricably intertwined with exempt portions."  5 U.S.C. §

552(b); <u>Mead Data Cent., Inc. v. United States Dept. of the Air Force</u>, 566 F.2d 242, 260 (D.C.

Cir. 1977).  The Court of Appeals for the District of Columbia Circuit has held that a District

Court considering a FOIA action has "an affirmative duty to consider the segregability issue <u>sua</u>

sponte." Trans-Pacific Policing Agreement v. United States Customs Service, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements". Mead Data, 566 F.2d at 261. The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed. Id. All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated. Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996). Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." Mead Data, 566 F.2d at 261, n.55.

In this case, the Postal Service expressly considered the segregability issue and concluded that no additional information could be released to the plaintiff. Moore Decl. at ¶ 22; Baxter Decl. at ¶ 23.

## IV.  CONCLUSION

For the reasons set forth herein and the attached supporting documents, it is respectfully requested that defendant's motion for summary judgment be granted and plaintiff's motion for summary judgment be denied. A proposed order is attached.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 49860
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

29

_____
                    /s/
CLAIRE WHITAKER, D.C. BAR # 354530
Assistant U.S. Attorney