## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED AMERICA FINANCIAL, INCORPORATED,** | |
| **Plaintiff,** | |
| **v.** | Civil Action No.  06-1023 (JDB) |
| **POSTMASTER GENERAL JOHN E. POTTER, U.S. POSTAL SERVICE,** | |
| **Defendant.** | |

## MEMORANDUM OPINION

Plaintiff United America Financial, Inc. ("UAF") brings this action against the head of the U.S. Postal Service ("Postal Service" or "USPS") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  UAF seeks disclosure of documents that concern allegations that UAF was engaged in an identity theft scam involving USPS employees.  Defendant has disclosed roughly 50 pages in full or redacted form, and withheld the remainder under various FOIA exemptions and the Privacy Act.  Currently pending are cross-motions for summary judgment.[1] For the reasons set forth below, the Court will deny the motions without prejudice with respect to

---

[1]  For ease of reference, the Court will refer to plaintiff's memorandum in support of its original motion for summary judgment as "Pl.'s Mem.," and defendant's corrected memorandum in support of its motion for summary judgment as "Def.'s Mem." Plaintiff renewed his request for summary judgment after the filing of defendant's declarations, and the Court will refer to that brief as "Pl.'s Opp. Mem."

Defendant has also submitted seven declarations from the following USPS offices and their representatives describing the searches and justifications for the withholdings at issue: for the Office of Inspector General, Betsy Cuthbertson and Frank O'Connor; for the Inspection Service, Mildred Baxter, Karla Malone, and Terrence Sullivan; and for the Compensation Office, Julie Moore and John Patrick Tyrrell.  The Court will henceforth refer to the declarations solely by the declarant's last name.

the documents withheld by the Office of Inspector General and the Inspection Service, and grant

defendant's motion in limited part with respect to documents withheld by the Compensation

Office, subject to the reservations noted below.

## BACKGROUND

On or about January 27, 2006, the USPS circulated an article to its employees entitled "A

dropped PIN: Nigerian identity thieves targeting USPS employees."  See Pl.'s Mem., Ex. A;

Moore Decl. ¶¶ 6, 13-14.  The article warned employees that:

> Nigerians posing as representatives of the Office of Federal Employees Group
> Life Insurance (OFEGLI) have been asking employees for their Social Security
> numbers, Employee IDs and USPS PINs.  This group surfaced in Pittsburgh under
> the name Employee Services Division, UAF, and is distributing business cards
> claiming to represent FEGLI . . .  If anyone matching this description contacts
> you, call your local Inspection Service office immediately.

Pl.'s Mem., Ex. B. The article cautioned USPS employees not to allow such persons on postal

premises and provided further guidance on safeguarding employee identification information.  Id.

The article was posted on an internal website accessibly only to Postal Service employees,

referred to as "NewsLink" and "LiteBlue."  Moore Decl. ¶ 13.

By letter dated February 1, 2006, plaintiff submitted a FOIA request to the Postal Service

requesting (1) "the names of all people responsible for creating" the foregoing document; (2) all

"supporting documents" and "investigative documents" pertaining to that document; and (3) "all

drafts of documents containing 'UAF' and 'Nigerian' and 'identity thieves' which were created

during January 2006."  Pl.'s Mem., Ex. B.  Plaintiff suggested that a "Mr. Soos" was involved in

creating the document.  Id.  Plaintiff asserted later in the administrative process that the

government had acted improperly in accusing UAF of being composed of "Nigerian identity

thieves," and that it sought the documents to refute the allegations.  See Pl.'s Mem., Ex. G.

2

Three offices within the USPS considered likely to have responsive information were searched: (1) the Compensation Office in the Human Resources Department at headquarters, as the office responsible for generating and posting the article; (2) two divisions of the Inspection Service, which conducts criminal, civil, and administrative investigations, and also employs the Mr. Soos referenced in plaintiff's FOIA request; and (3) the Office of the Inspector General ("OIG"), which was considered the office likely to have an investigative file relating to the subject of plaintiff's request.  Moore Decl. ¶ 17; Baxter Decl. ¶¶ 6, 20; Cuthbertson Decl. ¶ 3.

The Compensation Office informed plaintiff that it had located eleven pages of responsive documents, releasing five pages in full and one redacted page, while withholding the remainder pursuant to Exemptions 2, 3, 5, 6 and 7(C).  Moore Decl. ¶ 11; Tyrrell Decl. ¶ 2.  The Inspection Service located 176 pages of responsive documents, initially releasing five pages with redactions, and subsequently releasing 21 pages in full and an additional 26 redacted pages, withholding the remainder pursuant to Exemptions 2, 5, 6, 7(A), 7(C), 7(D), and 7(E).  Baxter Decl. ¶¶ 22, 23, 29; Malone Decl. ¶ 5.  OIG located an investigative file relating to UAF which it withheld in its entirety pursuant to Exemption 7(A).  Cuthbertson Decl. ¶ 5; O'Connor Decl. ¶ 6.

Defendant has submitted several declarations explaining the basis for the claimed exemptions, and has moved for summary judgment.  Plaintiff responds that the declarations are inadequate, and also moves for summary judgment. After the briefing was completed, defendant submitted the documents at issue for in camera review at the Court's request.

## STANDARD OF REVIEW

"Summary judgment is the preferred method of resolving cases brought under FOIA." Evans v. U.S. Office of Personnel Management, 276 F. Supp. 2d 34, 37 (D.D.C. 2003); see also Summers v. Dep't of Justice, 140 F.3d 1077, 1080 (D.C. Cir. 1998).  The standard is a familiar

one: summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of "the pleadings, the discovery and disclosure materials on file, and any affidavits" which it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); see Celotex, 477 U.S. at 323.

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. Celotex, 477 U.S. at 322. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted). Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

In the FOIA context, the Court may award summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations when they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."

Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).  The declarations and

accompanying Vaughn index (see Vaughn v. Rosen, 484 F.3d 820, 827-28 (D.C. Cir. 1973))

serve three important functions:

> [I]t forces the government to analyze carefully any material withheld, it enables
> the trial court to fulfill its duty of ruling on the applicability of the exemption, and
> it enables the adversary system to operate by giving the requester as much
> information as possible, on the basis of which he can present his case to the trial
> court.

Judicial Watch v. Food and Drug Admin., 449 F.3d 141, 146 (D.C. Cir. 2006).  Thus, the agency

affidavits or declarations must contain "reasonable specificity of detail rather than merely

conclusory statements."  Consumer Federation of America v. Dep't of Agriculture, 455 F.3d 283,

287 (D.C. Cir. 2006) (citations and internal quotation marks omitted); see also Kimberlin v.

Dep't of Justice, 139 F.3d 944, 950 (D.C. Cir. 1998) (explaining that declarations must be

sufficiently detailed "to permit adequate adversary testing of the agency's claimed right to an

exemption").

## I.     Office of Inspector General and the Inspection Service

The Office of Inspector General and the Inspection Service each contend that all of the

withheld documents (excluding Inspection Service's Document 21) are covered by Exemption

7(A).  This exemption authorizes withholding of "records or information compiled for law

enforcement purposes" if disclosure "could reasonably be expected to interfere with enforcement

proceedings."  5 U.S.C. § 552(b)(7)(A).  "The enforcement proceedings need not be currently

ongoing; it suffices for them to be 'reasonably anticipated.'"  Sussman v. U.S. Marshals Serv.,

494 F.3d 1106, 1114 (D.C. Cir. 2007).  However, there is no "blanket exemption for Government

records simply because they were found in investigatory files compiled for law enforcement

purposes."  Crooker v. Bureau of Alcohol Tobacco and Firearms, 789 F.2d 64, 66 (D.C. Cir.

1986).  Rather, the government's affidavit must provide information that "explain[s] to the district court how the release . . . would 'interfere' with enforcement proceedings," in contrast to a bare assertion that an enforcement action would be harmed by disclosure.  <u>Sussman</u>, 494 F.3d at 1114 (quoting with approval <u>Curran v. Dep't of Justice</u>, 813 F.2d 473, 476 (1st Cir. 1987)).

OIG has submitted the Cuthbertson and O'Connor declarations in support of its position that disclosure "could reasonably be expected to interfere with enforcement proceedings."  These declarations are far too conclusory, however, to support withholding under Exemption 7(A). Cuthbertson states nothing more than: "I denied [UAF's] request pursuant to 5 U.S.C. § 552(b)(7)(A) because the records were part of an ongoing investigation.  Release of the records could compromise the law enforcement purposes of the investigation, so no records were released."  <u>See</u> Cuthbertson Decl. ¶ 5.  No mention is made of the types of documents at issue or, more significantly, "<u>how</u> the release . . . would interfere with enforcement proceedings."  <u>See</u> <u>Sussman</u>, 494 F.3d at 1114.

The O'Connor declaration adds little more. He states that disclosure would have a negative impact because "ESD-UAF did not know it was under investigation."  O'Connor Decl. ¶ 5.  Yet defendant has not indicated in this litigation any need whatsoever to keep the fact of investigation a secret from UAF, having publicly filed several briefs discussing the investigation and potential enforcement action.  Moreover, UAF had already indicated in its FOIA request that it believed there was an investigation.  Thus, the first proffered reason -- a potential need to keep the investigation secret from UAF -- makes no sense.  All that is left then is O'Connor's conclusory reference to the potential for criminal prosecution, without describing how disclosure of the documents could reasonably be expected to interfere with such a prosecution.  <u>Id.</u>  ("There was potential that the findings would result in criminal prosecution or penalty against ESD-UAF.

6

Prosecution is still a possibility."). That is not enough.

The most generous reading of the Cuthbertson and O'Connor declarations, collectively, is that the documents were withheld because of the potential for interference with a future criminal prosecution. But that conclusion, without more, is insufficient. This Circuit has unequivocally held that the case law under Exemption 7(A) "does not authorize an agency to refuse to disclose any record compiled in anticipation of enforcement action merely because the record has found its way into an investigative file." See Crooker, 789 F.2d at 66. More recently, the D.C. Circuit rejected the government's reliance on Exemption 7(A) where all that the declarations offered was the opinion that disclosure could reasonably be expected to "reveal[] the focus of a grand jury investigation," emphasizing that the government "must . . . demonstrate how disclosure would reveal that focus." Sussman, 494 F.3d at 1114 (emphasis in original). The court rejected the proposition that the case law established a "low threshold" for Exemption 7(A), emphasizing that it has always "required specific information about the impact of the disclosures." Id. (discussing Boyd v. Criminal Div. of the U.S. DOJ, 475 F.3d 381 (D.C. Cir. 2007)).

The declarations submitted by the Inspection Service in support of Exemption 7(A) claims suffer from the same deficiencies as the OIG declarations. The Malone declaration states in an equally conclusory manner that "because [the] U.S. Postal Service Office of Inspector General has an ongoing investigation, these documents were properly withheld because disclosure would interfere with the ongoing investigation." Malone Decl. ¶ 5(e). She identifies the documents withheld (an improvement over the declarations submitted by OIG), but she still does not explain how their disclosure could reasonably be expected to interfere with a potential enforcement action. The Inspection Service also submits the Sullivan declaration in support of Exemption 7(A), but that declaration only repeats that there was a "potential for criminal prosecution," again

7

without describing what interference from disclosure might reasonably be expected.[2]  See Sullivan Decl. ¶ 6.

The Court pauses here to observe that the documents have been submitted for in camera review, a submission made at the Court's request when it became apparent, from a preliminary review of the record, that a decision based on the declarations alone would be problematic.  See Minute Order (entered July 26, 2007).  However, the Court has concluded that a decision based on that in camera submission, at this stage, would not be appropriate because it would deprive plaintiff of an adequate opportunity to contest an exemption, contrary to Spirko v. U.S. Postal Service, 147 F.3d 992, 997 (D.C. Cir. 1998).  As the court of appeals explained there:

> [A] district court should not undertake in camera review of withheld documents as a substitute for requiring an agency's explanation of its claimed exemptions in accordance with Vaughn.  The district court should first offer the agency the opportunity to demonstrate, through detailed affidavits and oral testimony, that the withheld information is clearly exempt and contains no segregable, nonexempt portions.  The agency must provide a Vaughn affidavit explaining its reasons for withholding the documents so as to alert the FOIA requester to the nature of the documents and the claimed exemptions and allow the requester to challenge the agency's assertions.

Id. at 997 (citations and internal quotation marks omitted).  Hence, the Court will deny defendant's motion for summary judgment without prejudice, and provide defendant a chance to submit more detailed declarations in support of the withholdings under Exemption 7(A).[3]

---

[2]  Like O'Connor, Sullivan also refers to a potential need to keep the fact of the investigation secret from UAF (Sullivan Decl. ¶ 5), but as discussed above, that justification makes no sense on the present record.

[3]  The Court recognizes that it may be the case that defendant ultimately concludes that adequate justification of the asserted exemptions will require some combination of declarations, Vaughn indices, and in camera inspection.  See Spirko, 147 F.3d at 997.  However, defendant has thus far not indicated that in camera review is necessary, and the Court will not resort to in camera review "as a matter of course."  Id.

In preparing those declarations, defendant should be mindful of the standards applicable in this Circuit.  First, as stated above, the declarations must explain with some specificity how disclosure "could reasonably be expected to interfere with enforcement proceedings."  Sussman, 494 F.3d at 1114.  The government may undertake this justification document-by-document or by identifying generic "categories of documents" that were withheld based on generic determinations applicable to those categories.  Crooker, 789 F.2d at 67.  If defendant opts for the latter method, "its definitions of the relevant categories of documents must be sufficiently distinct to allow a court to grasp 'how each . . . category of documents, if disclosed, would interfere with the investigation." Id.; see also Bevis v. Dep't of State, 801 F.2d 1386, 1389-90 (D.C. Cir. 1986).  Furthermore, even under a generic category approach, "the [agency] must itself review each document to determine the category in which it properly belongs." Bevis, 801 F.2d at 1389.  Second, defendant must indicate whether enforcement proceedings are "reasonably anticipated" -- not just "possible" -- and must make that assessment as of the time of the submission of its renewed motion for summary judgment.[4]  See Sussman, 494 F.3d at 1114-15 (explaining that, to withhold under Exemption 7(A), investigatory or enforcement proceedings must be pending "at the time of the district court's eventual decision, not merely at the time of [the] . . . original FOIA request").

The Court will defer resolution of the other exemptions asserted by the Inspection Service -- that is,  Exemptions 2, 5, 6, 7(C), 7(D), and 7(E), and the Privacy Act -- pending submission of

---

[4]  This is particularly important in this case in light of defendant's representations that the investigation was completed by both OIG and the Inspection Service more than a year ago.  See O'Connor Decl. ¶ 6 ("On or about May 9, 2006, the investigation was concluded and a report was finalized.");  Sullivan Decl. ¶ 7 ("At this time my investigation is concluded," and "no charges are anticipated by the Inspection Service.").

defendant's renewed motion for summary judgment, because it is likely that the Court would only address the validity of those exemptions if it rejected the validity of Exemption 7(A). However, it would be prudent for defendant to reexamine whether its declarations in support of those other exemptions contain the requisite reasonable specificity, in light of the deficiencies in declarations that have been identified here by the Court. For example, the Inspection Service relies on Exemptions 6 and 7(C) based on its assessment that the privacy interests of the individuals identified in the documents outweigh the public interest in the documents. It also makes a conclusory statement that the Privacy Act requires withholding. In evaluating the Compensation Office withholdings under Exemptions 6, 7(C), and the Privacy Act, the Court has found several deficiencies that appear to be applicable to the Inspection Service declarations as well, including a failure to make a distinction between the different types of persons involved, who may have different interests (e.g., drafters of the NewsLink article, investigators, and witnesses).

Additionally, defendant should ensure that each of the redacted documents, and the basis of the exemption claimed for the redaction, is clearly identified in any revised declaration or Vaughn index. The record is unclear as to whether all redacted documents are covered by the declarations. On the one hand, the Baxter declaration indicates that it covers some, or perhaps even all, of the redacted pages. See Baxter Decl. ¶ 22 (referring to Vaughn index as covering five pages of redactions); id. ¶ 26 (referring to Vaughn index as covering 26 pages of redactions). On the other hand, defendant's brief indicates that all of the documents described in the Baxter declaration, except Document 21, were withheld in their entirety. See Def.'s Reply Mem. at 2 (noting that the brief "focuses on the documents withheld in full, Documents 1-20"). But the record suggests that more than one redacted document was released by the Inspection Service. Defendant must clarify the record in support of the redactions.

Lastly, under section 552(b), the declarations or <u>Vaughn</u> index must explain "in reasonable detail" which portions of the document are "reasonably segregable" from the exemption portions, and thus releasable. <u>See</u> 5 U.S.C. § 552(b); <u>Armstrong v. Executive Office of the President</u>, 97 F.3d 575, 580 (D.C. Cir. 1996). The current declarations state: "Every effort was made to provide Plaintiff with all material in the public domain and with all reasonably segregable portions of releasable material. Further detailed descriptions of the information contained within the documents withheld would identify the material sought to be protected." <u>See</u> Malone Decl. ¶ 7; <u>see also</u> Baxter Decl. ¶ 25. That type of conclusory statement does not enable the Court to discern why purely factual information in the public domain, such as a portion of a document that reports or summarizes a telephone call between the Postal Service and UAF, is not reasonably segregable. Moreover, this Court has found similar conclusory assertions of nonsegregability insufficient. <u>See</u> <u>Peter S. Herrick's Customs and Int'l Trade Newsletter v. U.S. Customs and Border Protection</u>, No. 04-0377, 2005 WL 3274073, at *3 (D.D.C. Sept. 22, 2005). Thus, a revised <u>Vaughn</u> index or declaration must specifically identify which portion of the document an exemption applies to (instead of simply noting that multiple exemptions apply to a single document) and provide a more generous description of the withheld material's content.

## II.   Compensation Office

The Compensation Office informed plaintiff that it located eleven pages of responsive documents. Moore Decl. ¶ 11; Tyrrell Decl. ¶ 2. It released five pages in full and one redacted page, and allegedly withheld five pages pursuant to Exemptions 5, 6, and 7(C),[5] as well as

---

[5] Although the Tyrrell declaration also relies on Exemption 3 for some documents, counsel for defendant represents that the agency is no longer relying on Exemption 3. <u>See</u> Def.'s Mem. at 5 n.1.

information identified as "trivial" administrative information under Exemption 2.  See Moore Decl. ¶ 24; Tyrrell Decl. ¶ 2.  The redacted and withheld pages consist of five emails, one routing slip, and a facsimile transmission.  Moore Decl. at 8-9 & ¶¶ 25-28; Tyrrell Decl. ¶¶ 3-6.

Before discussing the exemptions, the Court pauses to clarify that defendant's in camera submission indicates that the tally of pages withheld in full amounts to nine pages, rather than five.  The miscount apparently arose due to the inadvertent omission of one email dated January 26, 2006 from the Moore declaration -- an email that was, however, covered by the Tyrrell declaration.  Although there is some sloppiness in the record on this point, the matter remains ready for resolution at this time because defendant has submitted declarations explaining the basis for withholding each of the documents at issue.  For the reasons that follow, the Court has concluded that the declarations adequately describe the documents and support the exemptions, except as noted below.

A.      The Routing Slip

The routing slip dated January 24, 2006, contains a list of names of USPS employees who were approached by UAF and had indicated an interest in attending a presentation by or receiving information from UAF.  See Tyrrell Decl. ¶ 5.  Defendant determined that the list of names is protected by Exemption 6, which shields from disclosure information in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."[6]  5 U.S.C. § 552(b)(6).  The "clearly unwarranted" language requires a "balancing of interests between the protection of an individual's private affairs from unnecessary

---

[6]  The phrase "similar files" includes any information "that applies to a particular individual.'" Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Washington Post Co., 456 U.S. 595, 602 (1982)).

public scrutiny, and the preservation of the public's right to governmental information."

Lepelletier v. FDIC, 164 F.3d 37, 46 (D.C. Cir. 1999) (internal citations and quotation marks

omitted).  "'The only relevant public interest in the FOIA balancing analyis [is] the extent to

which disclosure of the information sought would 'she[d] light on an agency's performance of its

statutory duties' or otherwise let citizens know what their government is up to.'"  Lepelletier, 164

F.3d at 46 (quoting U.S. Dep't of Defense v. Fed. Labor Relations Auth., 510 U.S 487, 497

(1994)).

　　　　Defendant considers the employees' names protected under Exemption 6 because the

employees have a privacy interest in not being identified as having signed up for a financial

program, one that allegedly involved identity theft.  Tyrrell Decl. ¶ 5.  This Circuit has

recognized that "individuals have a privacy interest in the nondisclosure of their names . . . in

connection with financial information."  See Lepelletier, 164 F.3d at 47.  In response, plaintiff

contends that this interest is outweighed by a public interest in release of the names of USPS

employees who might have engaged in allegedly discriminatory allegations against UAF, that is,

because it is a minority-owned business.  See Pl.'s Opp. at 3.  However, this assertion amounts to

little more than an assertion of plaintiff's subjective interest in finding out who made the

allegations against it, which is not relevant to the public interest inquiry.  U.S. Dep't of Justice v.

Reporters Comm. for Freedom of the Press, 489 U.S. 749, 771-72 (1989).  Furthermore, the

release of names of government employees pertaining to their financial choices has been

recognized as not shedding light on the government's performance of its duties or otherwise

informing the public of what the government is "up to."  Lepelletier, 164 F.3d at 47.  Considering

that the employees' interest in privacy is significant, and the public interest is at best minuscule,

the Court concludes that Exemption 6 protects against disclosure of the names.

The routing slip includes a photocopy of a UAF employee's business card for which no exemption is claimed.  Tyrrell Decl. ¶ 5.  This part of the document was apparently withheld because it was "being released on another document."  Id.  However, because no exemption is claimed for this part of the document, it is not properly withheld.  Therefore, this portion of the routing slip must be disclosed.

**B.    The Facsimile Transmission Dated January 24, 2006**

This facsimile transmission consists of one page that identifies by name another USPS employee, an employee number, social security number, and photocopies of two UAF employee business cards (which differ from the business card in the routing slip), and includes brief notes reflecting the thoughts and opinions of agency personnel on the potential identity theft situation. Tyrrell Decl. ¶ 6; Moore Decl. at 8.  Like the employees identified in the routing slip, this employee's name and personal identification numbers are protected under Exemption 6 because of the employee's strong privacy interest in not being identified as having signed up for a financial program involving identity theft, in addition to personal identification information that is routinely recognized as protected by Exemption 6.  See Painting and Drywall Work Preservation Fund v. Dep't of Housing and Urban Dev't, 936 F.2d 1300, 1301-02 (D.C. Cir. 1991) (holding that "personal identifiers" such as social security numbers and other payroll identification numbers are protected under Exemption 6).

Defendant asserts Exemption 5 to withhold the thoughts and opinions of agency personnel indicated on the facsimile transmission.  Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  This exemption incorporates the deliberative process privilege, which "protects the decisionmaking process of government

14

agencies and encourage[s] the frank discussion of legal and policy issues by ensuring that agencies are not forced to operate in a fishbowl." Mapother v. Dep't of Justice, 3 F.3d 1533, 1537 (D.C. Cir. 1993) (quoting Wolfe v. Dep't of Health and Human Servs., 839 F.2d 768, 773 (D.C. Cir. 1988) (en banc)). Two requirements apply: first, the information must be predecisional, and second, it must be deliberative. Information is "'predecisional if it was generated before the adoption of an agency policy' and deliberative if 'it reflects the give-and-take of the consultative process," such as by disclosing advice or recommendations or revealing factual information that would so expose the deliberative process that it must be covered by the privilege. Judicial Watch v. FDA, 449 F.3d at 151; see also Wolfe, 839 F.2d at 774.

The notes on this document represent the thoughts and opinions of agency personnel -- that is, as a communication between field office employees and the Compensation Office staff at headquarters -- concerning the potential identity theft situation that were provided to the Compensation Office to assist in preparation of the NewsLink article. See Moore Decl. ¶ 26. Furthermore, the communication was predecisional -- that is, it arose prior to publication of the article -- and influenced its content. Id. The Court thus concludes that Exemption 5 was properly invoked.

Defendant does not explain, however, why the exemption would cover the two UAF business cards, and has suggested elsewhere that it is willing to release UAF business cards in its possession. See Tyrrell Decl. ¶¶ 5, 6. The Court concludes that, like the other UAF business card, they must be disclosed.

### C.    The Emails

The withheld emails consist of one email dated January 26, 2006 containing internal drafts of the NewsLink article and four emails generated in the following weeks discussing how

to respond further to UAF's actions -- that is, the emails dated January 27, 2006 (redacted), January 30, 2006, February 9, 2006, and February 16, 2006.  Defendant asserts that the drafts of the NewsLink article are covered by the deliberative process privilege, and thus properly withheld under Exemption 5, which plaintiff has not disputed.  See Tyrrell Decl. ¶ 4.  The drafts are clearly predecisional and deliberative, reflecting the give and take of the deliberative process that is typical of drafts that precede a final document.  See Quarles v. Dep't of the Navy, 893 F.2d 390, 392 (D.C. Cir. 1990) (explaining that this exemption protects drafts preceding final documents because disclosure of earlier drafts would reveal editorial judgments).   Therefore, the Court concludes that this email was properly withheld under Exemption 5.

The email dated January 27, 2006 -- released in redacted form -- requests that certain steps be taken to determine whether transactions affecting the pay of individuals were pending and ensuring that the affected employees approved of those transactions, and recommends a course of action.  See Tyrrell Decl. ¶ 3.  The other three emails withheld in their entirety similarly include thoughts and opinions of field office and headquarters employees concerning the potential identity theft situation to enable headquarters to provide advice.  See Moore Decl. at 8-10 (describing emails dated January 30, 2006; February 9, 2006; and February 16, 2006, between the Inspection Service, the Pittsburgh and Cleveland Field Offices, and headquarters.).  Although these emails post-date the release of the NewsLink article, they are clearly part of the deliberative process pertaining to how to handle the potential identity theft situation on a continuing basis.  Therefore, the Court concludes that these also were legitimately withheld under Exemption 5.

The Court is unable to conclude, however, whether portions of the emails are reasonably segregable, or which portions of the emails were considered "trivial" administrative information under Exemption 2.  The Moore declaration, like the Baxter and Malone declarations discussed

16

earlier, contains the same conclusory statement that "[e]very effort was made to provide . . . all reasonably segregable portions of releasable material" and that the withheld information cannot be further described without identifying protected information.  See Moore Decl. ¶ 22.  That type of conclusory statement fails to explain why purely factual information, such as a portion of a document that reports or summarizes a telephone call between the Postal Service and UAF, is not reasonably segregable.  This is particularly applicable in the context of the deliberative process privilege, where any such purely factual information should be released unless its disclosure would expose the deliberative process.  See Mapother, 3 F.3d at 1539-40 (explaining that summaries of factual information presented to a decisionmaker may nonetheless be protected by Exemption 5 because disclosure of summaries would have permitted "inquiry into the mental process" of the decisonmaker, but contrasting segregability of an inventory of chronological events reflecting no point of view).   It may be the case that defendant considers some of that purely factual information "trivial" administrative information covered by Exemption 2, but the basis for that conclusion is not apparent from the record.  Defendant must explain why the purely factual information in the emails cannot be released as reasonably segregable material and, to the extent it continues to rely on Exemption 2, identify more specifically which information that exemption covers.

### D.     Names of Persons Involved

Plaintiff represents that its primary interest is in obtaining the names of the persons spreading the allegations that UAF is involved in identity theft, and that it may pursue a civil rights or other lawsuit for which it would need the employees' names.  See Pl.'s Opp. at 3, 13-14. Defendant asserts that these employees have a strong privacy interest in the nondisclosure of their names, and thus invokes Exemptions 6 and 7(C) to justify withholding their names. See

17

Moore Decl. at 8-9 & ¶¶ 26-28. Exemption 6 authorizes withholding of the names of personnel when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) authorizes the withholding of "records or information compiled for law enforcement purposes" where disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Id. § 552(b)(7)(C). These two exemptions are closely related because of the privacy interest inquiry common to both, although Exemption 7(C) carries with it a distinguishing threshold requirement that is significant here.

Exemption 7 in general applies only to "records or information compiled for law enforcement purposes." "In assessing whether records are compiled for law enforcement purposes, . . . the focus is on how and under what circumstances the requested files were compiled, . . . and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." Tax Analysts v. IRS, 294 F.3d 71, 78 (D.C. Cir. 2002) (emphasis added) (quoting Jefferson v. Dep't of Justice, 284 F.3d 172, 176-77 (D.C. Cir. 2002)). The Moore Declaration -- the only declaration from the Compensation Office that discusses Exemption 7 -- provides virtually no explanation of why the emails may be considered "compiled for law enforcement purposes."[7] Moore only recites the requirement that Exemption 7 protects "records or information compiled for law enforcement purposes," and then states that her "contact with the Inspection Service revealed that there was an ongoing investigation of United America Financial, Inc." See Moore Decl. ¶ 39. This falls far short of establishing that the emails identified by the Compensation Office were "compiled for law enforcement purposes."

_____

[7] The Tyrrell Declaration is of no relevance here since it does not address Exemption 7, and excludes discussion of most of the emails.

First, this position presumes that the existence of the separate Inspection Service investigation automatically renders the Compensation Office records "compiled for law enforcement purposes." That position is an untenable reading of Exemption 7(C), for it would mean that any time there was an investigation conducted by one unit of an agency, all agency records touching on the subject matter of the investigation may be deemed "compiled for law enforcement purposes." That reading is inconsistent with this Circuit's admonition that where, as here, an agency's principal functions cover both law enforcement and administrative responsibilities -- a "mixed-function agency" -- a court must give "thoughtful consideration" to whether the "law enforcement purposes" threshold has been satisfied. Tax Analysts, 294 F.3d at 77.

Moreover, other portions of the Moore Declaration suggest that the emails were not "compiled for law enforcement purposes." The Compensation Office is described as "responsible  for establishing procedures and guidelines related to pay, benefits and retirement programs" and is involved with "policymaking related to pay, benefits, awards, idea programs, systems administration of various human resources programs." See Moore Decl. ¶ 2. Furthermore, the Compensation Office became involved here because employees had complained about solicitation of access to life insurance accounts -- a matter within the purview of "employee benefits" -- and the Compensation Office had posted an internal article about the matter. Id. ¶¶ 7, 17.

In light of the functions of the Compensation Office and the failure to explain how the emails were "compiled for law enforcement purposes," the Court concludes that it is unlikely that a valid basis exists for asserting Exemption 7(C) for the Compensation Office emails, i.e., the names in the emails. However, the Inspection Service originated one of the emails (and was on

the distribution list for others), and thus it may be the case that Exemption 7(C) may be claimed

based on that office's involvement. Considering that further briefing is forthcoming on other

withheld documents, the Court will give defendant another opportunity to justify withholding of

the names in the emails under Exemption 7(C).

The Court next turns to whether the privacy interests of the employees could justify

withholding their names under Exemption 6 -- and Exemption 7(C) assuming, for the moment,

that defendant gets past the threshold requirement. "[T]he privacy inquiry of Exemptions 6 and

7(C) [is] essentially the same," although Exemption 7(C) sets a slightly lower threshold for

withholding.[8] See Judicial Watch v. Dep't of Justice, 365 F.3d 1108, 1125 (D.C. Cir. 2004). As

noted earlier, the court must balance the interest in protecting an individual's private affairs

against the public's right to governmental information. Lepelletier,164 F.3d at 46.

Unlike the names on the routing slip and facsimile transmission, the names in the emails

are not employees who were approached by UAF for personal information, but rather identify

USPS employees who were involved in responding to the potential identity theft situation. The

Moore declaration asserts that Exemption 6 applies to all USPS names in the emails because

disclosure "would invade the U.S. Postal Service employees' privacy and would threaten the

privacy of [those] employees," and that Exemption 7(C) applies because disclosure of those

---

[8] More specifically, the thresholds for withholding differ slightly because "while
Exemption 6 requires a 'clearly unwarranted invasion of personal privacy' to qualify for
withholding, Exemption 7(C) requires only that disclosure 'could reasonably be expected to
constitute an unwarranted invasion of personal privacy.' The addition of the reasonable
expectation language, coupled with the omission of the term 'clearly,' in Exemption 7(C) signals
a somewhat lower bar for withholding material." Stonehill v. Internal Revenue Serv.. --- F.
Supp. 2d ---, 2008 WL 101712, at *9 (D.D.C. Jan. 10, 2008)

names "would have subjected them to unnecessary harassment, intimidation, or physical harm."[9] See Moore Decl. at 8, 9, 15. No further explanation of the employees' privacy interests is provided.

Once again, the primary problem with this justification is that it is far too conclusory. A "bare conclusory assessment" that public disclosure of an employee's name would constitute an invasion of personal privacy is insufficient to support the existence of a privacy interest. See Stonehill, 2008 WL 101712, at *10 (holding that agency affidavit stating that disclosure of an employee's name "could cause harassment and/or undue embarrassment or could result in undue public attention" was too conclusory to support withholding under Exemptions 6 and 7(C)). "[I]f the government's bare assertion that a protected privacy interest is involved . . . is sufficient, then the FOIA privacy exemptions could effectively swallow the general rule favoring disclosure." Id. Furthermore, the "privacy interest at stake may vary depending on the context in which it is asserted," and thus an agency must at least explain the ground for concluding that there is some factual basis for concerns about "harassment, intimidation, or physical harm." See Judicial Watch v. FDA, 449 F.3d at 153 (holding that names of FDA employees and others who worked on the approval of a controversial abortion drug were properly withheld under Exemption 6 where the agency provided affidavits describing threats and instances of abortion-related violence). Because the Moore declaration does not provide a factual basis for the conclusion that harassment or intimidation would result from disclosure of the names, the Court cannot uphold the assertion of Exemptions 6 or 7(C).

---

[9] The Moore Declaration also justifies withholding the names in the emails under the Privacy Act, 5 U.S.C. § 552a(b). The declaration is, however, far too terse to discern the basis for claiming Privacy Act protection. See Moore Decl. ¶ 32 ("The requested records contained personal information of U.S. Postal Service employees which were exempt from disclosure without the written authorization of the employee.").

It is possible that defendant may be able to provide the necessary explanation of the privacy interests at stake; hence, the Court will deny defendant's motion for summary judgment without prejudice, and provide defendant a further opportunity to submit more detailed declarations justifying the withholding of the names under Exemptions 6 and 7(C).  The Court notes that it has some skepticism, however, about whether defendant can do so.  First, the privacy interests of government employees involved in an investigation are less than for private citizens who are involved (e.g., as suspects and witnesses) because there is no suspicion of wrongdoing on their part, and, unlike private citizens, their continued cooperation is not at stake.  See Stonehill, --- F. Supp. 2d ---, 2008 WL 101712, at *10 (citing Iglesias v. CIA, 525 F. Supp. 547, 563 (D.D.C. 1981)).  Indeed, some of the names are not even connected to the investigation, but simply are names of persons involved in drafting the NewsLink article and ensuring that individual employees were provided assistance by the Compensation Office.  Second, although the subjective purpose of FOIA requesters is not considered -- here, plaintiff's interest in finding out who has made allegations against plaintiff -- this Court has recognized that "there is a 'strong public interest in disclosing the names of employees and agents who worked on [a] case since they may be able to provide valuable information in the context of a related civil suit,'" which is a benefit that runs to the public at large.  Stonehill, --- F. Supp. 2d ---, 2008 WL 101712, at *11 (quoting Iglesias, 525 F. Supp. at 563).  Defendant's renewed motion for summary judgment should address that public interest.

## CONCLUSION

For the foregoing reasons, the Court will grant defendant's motion for summary judgment in part, that is, with respect to the withholdings of the Compensation Office with two exceptions: first, the UAF business cards are not covered by any exemption and, hence, must be released; and

second, the Court will reserve decision on whether portions of the withheld emails are reasonably segregable and whether the names in the emails must be released.  The Court will deny the remainder of defendant's motion for summary judgment without prejudice and also deny plaintiff's motion for summary judgment without prejudice.  A briefing schedule will be set to govern further dispositive motions.  A separate order has been issued on this date.


_____
/s/
JOHN D. BATES
United States District Judge

Date:   January 22, 2008