## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED AMERICA FINANCIAL, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-1023 (JDB) |
| | ) |
| POSTMASTER GENERAL, JOHN E. POTTER, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

On January 22, 2008, this Court granted defendant's motion for summary judgment in part, and denied it in part, and provided defendant another opportunity to justify certain withholdings of the Postal Services' Compensation Office, Human Resources Department; the Office of Inspector General, and the Inspection Service. Defendant herein renews its motion for summary judgment on behalf of these entities and attaches a memorandum of points and authorities, statement of material facts not in dispute, and supporting documents and declarations. A proposed order is also attached.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____/s/_____
CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorneys Office
Civil Division
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED AMERICA FINANCIAL, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 06-1023 (JDB)** |
| | ) |
| **POSTMASTER GENERAL, JOHN E. POTTER,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
**OF DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT**

Defendant Postmaster General John E. Potter, through undersigned counsel, respectfully

submits this memorandum of points and authorities in support of his renewed motion for

summary judgment on behalf of the Postal Services' Compensation Office, Office of Inspector

General ("OIG") and the Inspection Service ("IS").

## I.  INTRODUCTION

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and

pertains to Plaintiff's FOIA request to the Postal Service Records Office and Postal Inspection

Service in February 2006, for records concerning employees who may have complained about

United America Financial's ("UAF") employees soliciting access to Postal Service employees'

life insurance accounts. See Complaint and Memorandum Opinion, dated January 22, 2008

("Mem.Op.") at 2.

This renewed motion addresses the following:

1.  Whether portions of four emails withheld by the Compensation Office are reasonably

segregable and whether the names in the emails must be released;

2.  Whether the Office of Inspector General has properly asserted FOIA Exemptions 2, 5, 6, 7(C), 7(D), and 7(E).   FOIA Exemption 7(A) is no longer being asserted in this litigation.

3.  Whether the Inspection Service has properly asserted FOIA Exemptions 2, 5, 6, 7(C), 7(D), and 7(E).   FOIA Exemption 7(A) is no longer being asserted in this litigation..

## II. DISCUSSION

### A.  Emails withheld by the Compensation Office.

The Court granted summary judgment to defendant with regard to the documents withheld by the Compensation Office, except as to the issue of whether the content of four emails could be  reasonably segregated and released, or if applicable, which portions of the emails were considered "trivial" administrative information under Exemption 2.  Mem. Op. 16.  The Court noted that "the Moore declaration, like the Baxter and Malone declarations . . , contains the same conclusory statement that '[e]very effort was made to provide . . . all reasonably segregable portions of releasable material' and that the withheld information cannot be further described without identifying protected information." Id. at pp. 16-17.  The Court determined that "[t]hat type of conclusory statement fails to explain why purely factual information, such as a portion of a document that reports or summarizes a telephone call between the Postal Service and UAF, is not reasonably segregable."  The Court further observed that "[i]t may be the case that defendant considers some of that purely factual information "trivial" administrative information covered by Exemption 2, but the basis for that conclusion is not apparent from the record." Id. at p. 17. In addition, the Court observes that there has been a failure to explain how the emails were compiled for law enforcement purposes to warrant protection under Exemption 7(C) and how the Privacy interests of individuals justifies the withholding of their names under either Exemptions 6 and  7(C).  Mem.Op., p. 19-20. It found the explanation "far too conclusory." Id. at 21.

As explained in the attached Declaration of Julie S. Moore, Manager of the Compensation Office, dated March 24, 2008, the four email messages identified by the Court were reviewed to determine whether any nonexempt responsive material could be reasonably segregated from the material exempt. <u>See</u> Attachment 1 at ¶ 3. As more fully explained below and in Ms. Moore's declaration, it was determined that information in these emails was properly withheld and any attempt to segregate nonexempt information and release additional information "would essentially leave only a meaningless collection of words and phrases. <u>Id</u>.

**1.  <u>January 27, 2006 Email.</u>**

The first email discussed by Ms. Moore is a one-page interoffice email, dated January 27, 2006, and sent from a Postal Service Human Relations Generalist in Pittsburgh, PA, to an Insurance Office at Postal Service Headquarters in Washington, DC.  <u>Id</u>. at ¶ 7.  It was released in redacted form pursuant to Exemptions 2, 6, and 7(C).

With regard to the Exemption 2 withholdings, portions of the January 27, 2006, email were redacted because they "describe the actions that Postal Service personnel were undertaking at the time to ensure that all financial transactions in the affected employees' pay records were legitimate and had been approved by each affected employee."  <u>Id</u>.  As noted by Ms. Moore, the redactions consisted of trivial information concerning internal payroll processing matters about which there is no genuine public interest. <u>Id</u> at ¶ 8.  The redacted portions also contained information about the "means and processes that Postal Service managers employ to protect employees' pay records in response to a possible security breach. . . " <u>Id</u>.  This information is internal and if disclosed, "could enable potential wrongdoers to devise strategies that would circumvent those security measures." <u>Id</u>.  Ms. Moore noted that "[w]hile there may be some

public interest in the fact that measures were or would be taken to protect the employees'
records, there would appear to be little public interest in which measures were taken or how or
when those measures were taken." Id.

With regard to the Exemption 6 withholdings in the January 27, 2006, email, portions
were withheld to protect private information of Postal employees as it outweighed any public
interest in the internal workings of the Postal Service. Id. at ¶14. Specifically, the email
information redacted contains the "work location of the affected employees, the author of the
email, and the individuals responsible for protecting postal employees' identities and changing
their PINs." Id. at ¶ 15. It also "identifies the Inspectors involved in the investigation of
complaints from postal employees who had given Plaintiff their personal identifiable
information." As explained by Ms. Moore, "[a]lthough the names and work locations of postal
employees may generally be public information, identification of employees in the context of
this matter would reveal their incidental involvement in a contested matter between plaintiff and
the Postal Service." Id. at 16. Security of employees' personal information was considered when
making the decision to redact the information. Id. In addition, "the risk that the employees
might face retaliation from Plaintiff if the fact of their involvement in this matter were
disclosed" was also considered. Id. It was therefore determined that there was a strong privacy
interest in any identifying information and, as such, "disclosure of such information to Plaintiff
would result in an unwarranted invasion of their privacy." Id Moreover, no public interest is
served by disclosing the information. Id.

With regard to Exemption 7(C), the one-page interoffice email dated January 27, 2006,
released in redacted format, "identifies a Postal Inspector, and law enforcement personnel for the

Postal Service, responsible for investigating the complaints from Postal employees approached by Plaintiff." See Attachment 1 (Moore Declaration) at ¶ 25.   In addition, the redacted information details "a method used in the investigation of the possibility of an insurance scam and provides details of the investigation conducted by the Postal Inspector." Id.   The information was gathered during the Postal Inspector's investigation of Plaintiff's activities with regard to Postal employees. Id.

### 2. **January 30, 2006, Email**.

The second email is a one-page interoffice email, dated January 30, 2006, which was withheld in its entirety.  Attachment 1 (Moore Declaration) at ¶ 9.  This email was sent by a "Postal Inspector investigating Postal Service employee complaints to Postal Service management personnel and Inspection Service investigators." Id.

In explaining the rationale for withholding information pursuant to Exemption 2, Ms. Moore stated that "the email describes what actions were taken and would be taken to forewarn and protect Postal Service employees against businesses seeking the employees' Personal Identification Numbers (PIN)." Id.   Contained in the email were "phone numbers, email address, work location, and name of one Postal Inspector involved in investigating the complaints." Id.  Also contained in the email were "names and work locations of Inspection Service personnel and Postal Service managers at Headquarters and field offices who were involved in the investigation." Id.  In withholding this information, Ms. Moore determined that there was little public interest in the identities and/or work locations of Inspection Service and Postal Service "personnel responding to a particular employee information security risk" or to "what measures were or would be taken to forewarn and protect the affected employees."   Id. at

¶ 10.  As noted by Ms. Moore, "disclosures of the measures taken could permit a potential wrongdoer to devise methods to circumvent such protections in the future." <u>Id</u>.

Exemption 6 was asserted regarding information in the January 30, 2006, that identified "names, work locations, and/or phone numbers, its author, a Postal Inspector and other individuals responsible for protecting postal employee's identities." Attachment 1 (Moore Declaration) at ¶ 17.  The email also includes the name of a Postal Inspector involved in coordinating the investigation in this case. <u>Id</u>.  As noted above, although the names and work locations of postal employees may generally be public information, in the context of the underlying investigation in this case, the sensitivity of the information involved, and the "risk that employees might face retaliation," the Compensation Office determined that the strong privacy interest was greater than the public interest in disclosure. <u>Id</u>. at ¶ 21.

Exemption 7(C) was also asserted to withhold the contents of the January 30, 2006, email.  As explained by Ms. Moore, "[t]he email contains information gathered during the law enforcement proceedings by the Postal Inspection Service, a law enforcement entity for the Postal Service."  Attachment 1 at ¶ 26.  The email contained the names, email addresses and phone numbers of Postal Inspectors involved in the coordination of the investigation of complaints from Postal employees and "details of the investigation of Plaintiff's solicitation of postal employees on Postal property and obtaining Postal employee's personal information."  <u>Id</u>. The investigation was undertaken to resolve the possibility of an identity fraud or an insurance scam. <u>Id</u>.

**3.  February 9, 2006, interoffice email.**

This one-page email was withheld in its entirety.  Attachment 1 at ¶ 11.  It was sent from a Postal a Service Headquarters employee to Inspection Service investigators and Postal Service management personnel Id.  It described "what actions were taken and would be taken to asist employees in changing PINs and reviewing their records for unauthorized transactions."  Id.

With regard to the Exemption 2 withholdings, as Ms. Moore explained, "[b]ecause the information concerns advice to employees about the security of benefits-related employee information for affected employees, my office considered the information to involve solely internal matters of a relatively trivial nature and not matters of any genuine public interest."  Id. It was also concluded that "disclosure of information about the Postal Service's response to a potential identity security breach could provide potential wrongdoers with key information to circumvent such protections in the future."  Id.

Exemption 6 was also applied to withhold certain information in the February 9, 2006, email.  See Attachment 1 at ¶ 19.  That information was "the names and work locations of [the email's] author and recipients, who were involved in resolving the matter in question and the security response."  In addition, the names of a Postal Inspector and a Postal Service management employee involved in coordinating the investigation were protected. Id.  Again, Ms. Moore recognized that the names and work locations of postal employees referenced in paragraph 19 may generally be public information, identification of employees in the context of this matter would reveal their involvement in a sensitive matter. Id. at ¶ 20.  The office was concerned about the security of the employees' personal information and considered the risk that the employees might face retaliation from Plaintiff if the fact of their involvement in the matter

were disclosed.  Id.  The strong privacy interest outweighed the public interest in disclosure.  Id.
Indeed, as Ms. Moore explained, the "employees' names and their work locations [were
withheld] because during the investigation by the Postal Inspectors, Plaintiff demonstrated
hostility and animosity towards Postal Service employees involved in the investigation and the
employees involved in protecting employees' personal and financial information."

Exemption 7(C) was also asserted to protect the February 9, 2006 email.   This email
message contains information gathered during the law enforcement proceedings by the Postal
Inspectors. Id. at ¶ 27.   It  included names of Postal Inspectors involved in coordinating the
investigation of complaints from Postal Employees and details of the investigation of Plaintiff's
activities soliciting on Postal Property. The Postal Inspectors were investigating the possibility of
identify fraud and this information is protected from disclosure under Exemption 7.

**4.  February 16, 2006 email**.

The fourth email, dated February 16, 2006, was withheld in its entirety and consists of
two pages.  This email was sent from Office of Compensation employees to Postal Service
management personnel and Inspection Service investigators.  The email describes an experience
at a Postal facility location, the affected employees, and previous and prospective actions to
assist employees in changing their PINs and reviewing their records for unauthorized
transactions.

Exemption 2 was applied to protect information in this email.  As Ms. Moore explained,
"[b]ecause the emails concern the security of benefits-related employee information for affected
employees, the information was considered to involve solely internal matters of a relatively
trivial nature and not of any genuine public interest."  Id. at ¶ 12.  Like the other emails, it was

determined that there would be little interest outside of the Postal Service in the fact that the Inspection Service and Postal Service managers allowed certain postal employees to review their records and change their PINs in response to a possible security breach. Id. There would be little or no significant public interest in the details of such action and "disclosure of information about the Postal Service's response to a potential identity security breach could provide future wrongdoers with key information to circumvent such protections in the future." Id.

Exemption 6 was asserted to the two-page email dated February 16, 2006, to withhold "the names and work location of its author and various recipients of it and related emails, as well as the phone numbers of the author and one recipient." Id. at ¶ 21. As Ms. Moore noted "[a]ll of these individuals were Postal Service management employees or Inspection Service personnel involved in this matter and security response. In addition, the body of the email specifically identifies Postal Inspectors and Postal Service management employees involved in coordinating this matter and security response." These names and work locations were protected because of security concerns and the risks of retaliation from Plaintiff. Id. at ¶ 22. As noted above, Plaintiff demonstrated hostility and animosity towards Postal Service employees involved in the investigation and the protection of its employees tipped the scale with regard to the public/private interest in disclosure. See Id.

Exemption 7(C) was asserted to protect the February 16, 2006, email. Id. at ¶ 12. It was sent from the Compensation Office to a Postal Facility in Ohio and was distributed to Postal Inspectors in Washington, DC, and Ohio and other Postal Employees in Washington, DC. Id. This email contains information gathered during the law enforcement proceedings by the Postal Inspectors. This email includes names of the Postal Inspectors in Ohio and Washington DC who

were involved in investigating complaints from Postal employees and details of the investigation. The Postal Inspectors were investigating the possibility of identify fraud and this information is protected from disclosure under Exemption 7(C). Id.

**B. Office of Inspector General.**

The Office of Inspector General ("OIG"), previously withheld documents entirely under FOIA Exemption 7(A). However, Exemption 7(A) is no longer being asserted. As explained in the Declaration of Betsy Cuthbertson, Manager for the FOIA Office of the Inspector General (OIG), Exemptions 2, 5, 6, 7(C) and 7(D) were asserted to protect certain information as described below. Ms. Cuthbertson notes that the Report of its Investigation and exhibits were released to Plaintiff in redacted form. See Attachment 2 at ¶ 2.

Ms. Cuthbertson explains that the redactions were as follows:

1. **Report of Investigation ("ROI").** The ROI consists of 20 pages. See Attachment 2 at p. 3 & p. 7. Information in the ROI that was redacted may be summarized as follows:

a. Names of and pronouns referring to the original complainant, potential victims who provided testimony or evidence, and representatives of complainants under FOIA Exemptions 6, 7(C), and 7(D). This information appears on pages 1, 2, 5, 6, 7, 8, 9, 11, 12, 13, 14, 15, 16, 17, 18, and 20 of the ROI. Id. at pp. 4-5, 7. This personal information was protected to safeguard the individuals' personal privacy. Id. at p. 3. "Because this information is part of files created for law enforcement purposes, it is . . . protected under (b)(7)(C) [as well as Ex. 6], where release could reasonably be expected to constitute an unwarranted invasion of personal privacy. Id. at p. 4. Exemption 7(D) was asserted to

protected the identity of a source that provided information to the OIG on a confidential

basis Id. As Ms. Cuthbertson explained (Id. at pp. 4-5):

> Section 7 of the Inspector General Act of 1978, as amended,
> directs that after the OIG receives a complaint or information from
> a Postal Service employee, the OIG will only reveal information if
> it is unavoidable during the course of the investigation.  As FOIA
> requests fall outside of the investigative work of the agency, I have
> disclosed only that information that I believe is sufficiently generic
> to shed light on the investigation.  I have attempted to avoid any
> disclosure which could result in retaliation; moreover, I sought to
> protect such information to avoid any negative affect a disclosure
> might have on this investigative agency's ability to encourage
> cooperation of witnesses, sources, and complainants in future
> investigatory work. Protection of the names in this case
> furthermore is not based on theoretical senses that sources' privacy
> might have been invaded. As the released text demonstrates, many
> of the sources state that they feared identity theft; others stated that
> they received persistent, unwelcome, and high-pressure phone
> calls at their homes from the insurance sales force; others, having
> provided personal information, found their allotments had been
> altered without their knowing consent.

b.  Personal financial and employment-related information was redacted under

FOIA Exemptions 6, 7(C), and 7(D) on pages 2, 5, 6, 7 , 9, 11, 12, 13, 15, 16, 18, and

20. Id. at p. 5.  This information was redacted because such references can point back

to the name of the complainant or source.  Id. at p. 5.  As example, Ms. Cuthbertson

provided the following (Id.):

> For example, the dollar value of allotments was redacted because each
> was linked to specific age, policy value, and on other factors pertaining to
> the specific insured.  Giving that allotment amount would tend to identify
> these sources to the plaintiff or their agents.  Social Security numbers,
> locations of insurance presentations, portions of a postmark, and duty
> stations were similarly redacted throughout.

c.  Specific events under FOIA Exemptions 6, 7(C), and 7(D) on pages 10, 14,

and 15.  Id. at p. 7.  As Ms. Cuthbertson explained (Id. at p. 5):

Events, such as was described in a witness statement that an insurance
sales representative persistently tried to contact a postal employee outside
of work for non-professional reasons were redacted. We do not believe
release of such personal information shines a light on the operations of the
government generally nor were they germane to the case. The release
would identify to plaintiff's agents (sales force) the identity of a source.

d. Names of, or pronouns referring to, postal officials who were not potential

victims but who did provide evidence or testimony to OIG agents under Exemptions

7(C) and 7(D) and 6 on pages 6, 7, 8, 9, 11, 12, 14, 15, and 20. Id. at p. 8. As noted

by Ms. Cuthbertson "Pronouns referring to complainant, representatives, and sources

were routinely redacted because they can tend to assist plaintiff's agents in

determining the identity of sources in the context of released documents." Id. at p. 5.

e. Names of Inspector General Special Agent and Inspection Service Inspectors

under Exemption 7(C) on pages 5, 6, 7, 8, 9, 11, 12, 13, 14, 15, 16, 17, and 18. Id. at

p. 8. The names of postal officials who were not potential victims but who did

provide evidence or testimony to OIG agents were redacted under (b)(6) and

(b)(7)(C), as they have privacy interests that can be protected by redacting their

names. As explained by Ms. Cuthbertson, "[t]he OIG has an interest in preserving

their privacy to encourage continuing cooperation with investigations. Pronouns

referring to these officials were not redacted." Id. at p. 6.

f. Names of low-level agency and non-governmental personnel under Exemption

7(C) and 6 as mentioned on pages 5, 6, 8, 17, and 19. The names of low-ranking

agents were redacted under Exemption 7(C). Absent a demonstration of significant

misconduct on the part of law enforcement personnel, they retain a substantial

privacy interest. Id. at p. 6. Moreover, the names of low-level agency personnel and

employees of companies related to plaintiff and mentioned in the documents were

redacted under Exemption 7(C), which protects from release identities and activities

of such personnel where to do so would shed no light on government operations.  As

Ms. Cuthbertson explained (Id. at p. 6):

> I have used my discretion to release that information on
> certain activities where it appears to shed light on the
> matters under investigation, without compromising
> personal information. I have alternatively asserted
> Exemption 6, which pertains to personal information, the
> release of which could reasonably be expected to constitute
> an unwarranted invasion of personal privacy, to the
> identities of low-level personnel

g.  Speculative statements under Exemption 5 on page 14. Id. at p. 8.  Ms.

Cuthbertson explained that "[t]here were two or more statements volunteered but clearly

noted as speculative by the Special Agent. [Exemption 5] is intended to preserve

information containing staff opinion leading to decision-making.  Disclosure of such

material would inhibit free and candid expression of such views in the future. " Id. at p.

7.

In addition, information that was outside the scope of the FOIA request was

withheld. Id. at 7.  For instance, portions of newsletter articles unrelated to the article

on identity theft were redacted because they were considered internal or contained

personally identifiable information about individuals who maintain privacy rights.

Id. at p. 7.

13

### 2.  **Exhibits to the ROI.**

Exhibits attached to the Report of Investigation consist of 117 pages. Attachment 2 at p. 8.  Based on the same rationale mentioned above in Section 1 (see also Attachment 2 at pp. 3-9), Ms. Cuthbertson redacted information on 88 pages, as follows:

a. **Exhibit 1** - The names of low-level governmental and non-governmental personnel on Personnel Application Sheet (one page); Direct Deposit Sign Up Form (one page); and Business Reply Mail cover of a two-page mailer bearing address to low-level agency personnel (one page); were redacted pursuant to Exemptions 7(C) and 6.

b. **Exhibit 2**   Exhibit 2 contains multiple documents redacted as follows:

i. Interoffice Memorandum dated March 15, 2006 (one page).  The names of, or pronouns referring to, postal officials who were not potential victims but who did provide evidence or testimony to OIG agents, were redacted pursuant to Exemptions 7(C) and 7(D) and 6.

ii. Human Resources' chronological listing of district involvement with Employee Service Division (ESD), undated (four pages);   Redacted from this listing were the names of the original complainant, potential victims who provided testimony or evidence, and representatives of complainants pursuant to Exemptions 6, 7(C), and 7(D), personal financial and employment-related information pursuant to Exemptions 6, 7(C), and 7(D), names of postal officials who were not potential victims but who did provide evidence or testimony to OIG agents pursuant to Exemptions 7(C) and 7(D) and 6, names of Inspector General Special Agent and/or Inspection Service Inspectors pursuant to Exemption 7(C), and, names of low-level agency or non-governmental personnel mentioned in the documents

14

pursuant to Exemptions 7(C) and 6.  Reliance on these redactions is described at pp. 3-5 of the Cuthbertson declaration.

 iii. <u>Internal email dated January 23, 2006</u> (two pages) concerning discovery of non-FEGLI representatives gaining access to postal facilities for purposes of solicitation. Ms. Cuthbertson redacted names of postal officials who were not potential victims but who did provide evidence or testimony to OIG agents under Exemptions 7(C) and 7(D) and 6 as well as other agency personnel mentioned in the document, under Exemptions 7(C) and 6.

 iv. <u>Internal email dated January 27, 2006</u> (one page); OIG redactions were made to the names of agency personnel mentioned in the document under Exemptions 7(C) and 6.

 v. <u>Internal email dated February 9, 2006</u> (two pages, one page unredacted); OIG redactions were made to the names of postal officials, who were not potential victims but who did provide evidence or testimony to OIG agents, under Exemptions 7(C) and 7(D) and 6. Names of Inspector General Special Agent and/or Inspection Service Inspectors were also redacted under Exemption 7(C) and names of low-level agency or non-governmental personnel mentioned in the documents were redacted under Exemptions 7(C) and 6.

 vi. <u>Internal email dated January 27, 2006</u> (one page), Ms. Cuthbertson redacted names of postal officials who were not potential victims but who did provide evidence or testimony to OIG agents under Exemptions 7(C) and 7(D) and 6. Names of Inspector General Special Agent and/or Inspection Service Inspectors were redacted under Exemption 7(C) and names of low-level agency or non-governmental personnel mentioned in the documents were also redacted under Exemptions 7(C) and 6.

vii.  Internal email dated January 24, 2006 (one page); Ms. Cuthbertson redacted names of postal officials who were not potential victims but who did provide evidence or testimony to OIG agents under Exemptions 7(C) and 7(D) and 6.  Names of Inspector General Special Agent and/or Inspection Service Inspectors were redacted under Exemption 7(C) and names of low-level agency or non-governmental personnel mentioned in the documents were redacted under Exemptions 7(C) and 6.

viii.  Three signed employee accounts of solicitation (one page); Ms. Cuthbertson redacted names of the potential victims who provided testimony or evidence, and representatives of complainants under Exemptions 6, 7(C), and 7(D), personal financial and employment-related information under Exemptions 6, 7(C), and 7(D), and names of postal officials who were not potential victims but who did provide evidence or testimony to OIG agents under Exemptions 7(C) and 7(D) and 6.

ix.  Handwritten note date stamped January 30, 2006, requesting a copy of a form (possibly to confirm whether an improper allotment had been submitted) (one page); Ms. Cuthbertson redacted names of the potential victim who provided testimony or evidence, and representatives of complainants under FOIA Exemptions 6, 7(C), and 7(D),

x.  Internal email dated February 13, 2006 (one page) concerning solicitation on postal property in violation of postal regulations.  Ms. Cuthbertson redacted names of postal officials who were not potential victims but who did provide evidence or testimony to OIG agents under Exemptions 7(C) and 7(D) and 6.  Names of Inspector General Special Agent and/or Inspection Service Inspectors were redacted under Exemption 7(C) and names of low-level agency or non-governmental personnel mentioned in the documents were redacted

under Exemptions 7(C) and 6.  Ms. Cuthbertson also redacted a speculative statement under Exemption 5.

       xi.  <u>Internal email dated March 24, 2006</u> (two pages) concerning the Link article on the non-FEGLI solicitations.  Ms. Cuthbertson redacted names of postal officials who were not potential victims but who did provide evidence or testimony to OIG agents under Exemptions 7(C) and 7(D) and 6.  Names of Inspector General Special Agent and/or Inspection Service Inspectors were redacted under Exemption 7(C) and names of low-level agency or non-governmental personnel mentioned in the documents were redacted under Exemptions 7(C) and 6.  Ms. Cuthbertson also redacted a draft of newsletter language as a pre-decisional inter-agency communication under Exemption 5.

    **c.  <u>Exhibit 3 - internal email dated January 27, 2006</u>** (three pages).  This email embedded a USPS News Link edition from that date.  Attachment 2 (Cuthbertson Declaration) at p. 12.  The edition contained one article on potential identity theft and seven unrelated articles.  Ms. Cuthbertson redacted names of postal officials who were not potential victims but who did provide evidence or testimony to OIG agents under Exemptions 7(C) and 7(D) and 6. In addition, the names of Inspector General Special Agent and/or Inspection Service Inspectors were redacted under Exemption 7(C) and names of low-level agency or non-governmental personnel mentioned in the documents were redacted under Exemptions 7(C) and 6.  Ms. Cuthbertson also redacted names of postal employees from articles falling outside the scope of the FOIA request  and part of a discussion of internal postal matters of a trivial nature under Exemptions 2 and 6.  <u>Id</u>.

**d.  Exhibit 4 - Newslink dated January 30, 2006** (one page), as republished in an Office of Inspector General electronic newsletter.  Ms. Cuthbertson redacted the name of an OIG employee under Exemption 6.

**e.  Exhibit 5 - OIGNewslink February 6, 2006** (one page).  Ms. Cuthbertson redacted names of postal employees under Exemption 6 and some content from articles falling outside the scope of the FOIA request and part of a discussion of internal agency matters of a trivial nature under Exemptions 2.

**f.  Exhibit 6 - Letter dated February 10, 2006, from Rosario Holmes, unsigned (two pages) 2 copies**; UAF Notice of Information Privacy Practices (one page) 2 copies; Letter dated February 10, 2006 from Rosario Holmes, signed (one page redacted).  Ms. Cuthbertson redacted the names in the salutations as well as the facsimile numbers and identifiers under FOIA Exemptions 6, 7(C), and 7(D); these identifiers referred to employees or workstations, which, if revealed, could lead to the identities of potential victims who provided testimony or evidence.

**g.  Exhibit 7 - message dated March 14, 2006** (one page), Postal Service letter to potential victims.  Name of postal official who was not a potential victim but who did provide evidence or testimony to OIG agents was redacted under Exemptions 7(C) and 7(D) and 6.

**h.  Exhibit 8 - Account Change Confirmation dated December 7, 2005** (one page) and account audit history (one page), each of which contained sensitive personal information including Social Security Number, bank account numbers and related financial information

18

concerning one specific employee.  Ms. Cuthbertson redacted personal financial and employment-related information under Exemptions (b)(6), (b)(7)(C), and (b)(7)(D).

    i.  **Exhibit 9 - <u>Office of Inspector General Memorandum of Interview of victim</u>** (two pages).  Ms. Cuthbertson redacted names of the original complainant, potential victims who provided testimony or evidence, and/or representatives of complainants under Exemptions 6, 7(C), and 7(D).   Personal financial and employment-related information was redacted under Exemptions 6, 7(C), and 7(D).  Names of postal officials who were not potential victims but who did provide evidence or testimony to OIG agents were redacted under Exemptions 7(C) and 7(D) and 6.  Names of Inspector General Special Agent and Inspection Service Inspectors were redacted under Exemption 7(C).  Names of low-level agency personnel mentioned in the documents were redacted under Exemptions 7(C) and 6.

    **j.  Exhibit 10 - <u>Office of Inspector General Memorandum of Interview of victim</u>** (two pages).  Ms. Cuthbertson redacted names of the original complainant, potential victims who provided testimony or evidence, and/or representatives of complainants under Exemptions 6, 7(C), and 7(D).   Personal financial and employment-related information was redacted under Exemptions 6, 7(C), and 7(D).  Names of postal officials who were not potential victims but who did provide evidence or testimony to OIG agents were redacted under Exemptions 7(C) and 7(D) and 6.  Names of Inspector General Special Agent and Inspection Service Inspectors were redacted under Exemption 7(C).  Names of low-level agency personnel mentioned in the documents were redacted under Exemptions 7(C) and 6.

    **k.  Exhibit 11 - <u>Direct Deposit Sign up Forms 1199A</u>** (eight pages), Sensitive personal information including Social Security Number fragments, bank account numbers

19

and related financial information was redacted.  Other redactions made were the names of the potential victims who provided testimony or evidence and their personal financial and employment-related information were redacted under Exemptions 6, 7(C), and 7(D).  The name and signature of a direct deposit representative was also redacted under Exemption 6.

l.  **Exhibit 12 – <u>Refund and cancellation request letter dated December 21, 2005, from victim</u>** (one page).  The name of the potential victim who provided testimony or evidence was redacted under Exemptions 6, 7(C), and 7(D). Personal financial and employment-related information was redacted under Exemptions 6, 7(C), and 7(D).  Names of postal officials who were not potential victims but who did provide evidence or testimony to OIG agents were redacted under Exemptions 7(C) and 7(D) and 6.

m.  **Exhibit 13 – <u>Questionnaire/letter dated December 20, 2005, from Office of Inspector General to victim</u>** (one page).  Name of the potential victim who provided testimony or evidence was redacted under Exemptions 6, 7(C), and 7(D). Personal financial and employment-related information was redacted under Exemptions 6, 7(C), and 7(D). Name of Inspector General Special Agent  was redacted under Exemption 7(C).

n.  **Exhibit 14 - <u>Office of Inspector General Memorandum of Interview of victim</u>** (two pages).  Redactions were made to the names of the original complainant, potential victims who provided testimony or evidence, and/or representatives of complainants under Exemptions 6, 7(C), and 7(D).   Personal financial and employment-related information was redacted under Exemptions 6, 7(C), and 7(D).  Names of Inspector General Special Agent and Inspection Service Inspectors were redacted under Exemption 7(C).  Name of low-level agency personnel mentioned in the documents was redacted under Exemptions 7(C) and 6.

**o.  Exhibit 15 - <u>Business card of an insurance salesperson Xeroxed on a sheet</u>**

**<u>with handwritten note</u>**  (one page).  Name of postal official who was  a potential victim and

provided evidence or testimony to OIG agents was redacted under Exemptions 7(C) and 7(D)

and 6.

**p.  Exhibit 16 - <u>Office of Inspector General Memorandum of Interview</u>** of

employee of company that processes direct deposit forms for Employee Services

Division/United America Financial (two pages).  Redactions were made to the names of the

original complainant who provided testimony or evidence, under Exemptions 6, 7(C), and

7(D).   Name of source who provided evidence or testimony to OIG agents was redacted

under Exemptions 7(C) and 7(D) and 6.  Name of Inspector General Special Agent was

redacted under Exemption 7(C).

**q.  Exhibit 17 – <u>E-mail dated January 11, 2006</u>**, from Office of Inspector General

Special Agent verifying processing of allotments to representative of direct deposit

administrator for Employee Services Division/UTS, containing multiple victim names and

Social Security Numbers (one page).  Name of source who provided evidence or testimony

to OIG agents was redacted under Exemptions 7(C) and 7(D) and 6.  Name of Inspector

General Special Agent was redacted under Exemption 7(C).  Ms. Cuthbertson redacted

names of the original complainant and potential victims who provided testimony or evidence

under Exemptions 6, 7(C), and 7(D).   Personal financial information was redacted under

Exemptions 6, 7(C), and 7(D).

**r.  Exhibit 18 – <u>E-mail dated January 12, 2006, to Office of Inspector General</u>**

**<u>Special Agent</u>** investigating complaints from direct deposit administrator for Employee

Services Division/UTS confirming status of allotments and containing banking information and Social Security Numbers for multiple victims/complainants (two pages).  Name of source who provided evidence or testimony to OIG agents was redacted under Exemptions 7(C) and 7(D) and 6.  Name of Inspector General Special Agent was redacted under Exemption 7(C).  Ms. Cuthbertson redacted names of the original complainant and potential victims who provided testimony or evidence under Exemptions 6, 7(C), and 7(D).   Personal financial information was redacted under Exemptions 6, 7(C), and 7(D).

     **s.  Exhibit 19 - <u>Office of Inspector General Memorandum of Interview of victim</u>** (two pages).  Ms. Cuthbertson redacted names of the original complainant and a potential victim who provided testimony or evidence, under Exemptions 6, 7(C), and 7(D).   Personal financial and employment-related information  as well as the account of a specific event not germane to the identity theft issue under investigation was redacted under Exemptions 6, 7(C), and 7(D) because release of that information might tend to reveal the identity of this source to plaintiff's agents.  Name of Inspector General Special Agent was redacted under Exemption 7(C).

     **t.  Exhibit 20 - <u>Questionnaire/letter dated December 20, 2005</u>**, from Office of Inspector General to victim (one page).  Name of the potential victim who provided testimony or evidence was redacted under Exemptions 6, 7(C), and 7(D). Personal financial and employment-related information was redacted under Exemptions 6, 7(C), and 7(D). Name of Inspector General Special Agent was redacted under Exemption 7(C).

     **u.  Exhibit 21 - <u>Office of Inspector General Memorandum of Interview of potential victim</u>** (two pages: one redacted, one page blank).  Ms. Cuthbertson redacted

names of the original complainant and a potential victim who provided testimony or evidence under Exemptions 6, 7(C), and 7(D).   Personal financial and employment-related information was redacted under  Exemptions 6, 7(C), and 7(D). Name of Inspector General Special Agent was redacted under Exemption 7(C).

  **v.  Exhibit 22 - <u>Office of Inspector General Memorandum of Interview of victim</u>** (two pages).  Ms. Cuthbertson redacted names of the original complainant and a potential victim who provided testimony or evidence under Exemptions 6, 7(C), and 7(D).   Personal financial and employment-related information  was redacted under Exemptions 6, 7(C), and 7(D).  Name of Inspector General Special Agent was redacted under Exemption 7(C).

  **w.  Exhibit 23 - <u>internal E-mail dated January 20, 2006, from Office of Inspector General Special Agent investigating complaints from USPS Employees regarding Plaintiffs</u>** (one page). Names of postal officials who were not potential victims but who did provide evidence or testimony to OIG agents were redacted under Exemptions 7(C) and 7(D) and 6.  Name of Inspector General Special Agent was redacted under Exemption 7(C).

  **x.  Exhibit 24 - <u>Office of Inspector General Memorandum of Interview of victim</u>** (two pages).  Ms. Cuthbertson redacted names of the original complainant and a potential victim who provided testimony or evidence under Exemptions 6, 7(C), and 7(D).   Personal financial and employment-related information  was redacted under Exemptions 6, 7(C), and 7(D).  Name of low-level agency personnel mentioned in the documents was redacted under Exemptions 7(C) and 6.  Name of Inspector General Special Agent was redacted under Exemption 7(C).

**y.  Exhibit 25 - <u>Office of Inspector General Memorandum of Interview of victim</u>** (two pages).  Ms. Cuthbertson redacted names of the original complainant and a potential victim who provided testimony or evidence under Exemptions 6, 7(C), and 7(D).   Personal financial and employment-related information  including but not limited to an allotment amount was redacted under  Exemptions 6, 7(C), and 7(D).  Name of Inspector General Special Agent was redacted under Exemption 7(C).

**z.  Exhibit 26 - <u>Questionnaire/letter dated December 20, 2005, from Office of Inspector General to a victim</u>** (one page).  Name of the potential victim who provided testimony or evidence was redacted under Exemptions 6, 7(C), and 7(D). Personal financial and employment-related information was redacted under Exemptions 6, 7(C), and 7(D). Name of Inspector General Special Agent was redacted under Exemption 7(C).

**aa.  Exhibit 27 - <u>Office of Inspector General Memorandum of Interview of victim</u>** (two pages).  Ms. Cuthbertson redacted names of the original complainant and a potential victim who provided testimony or evidence under Exemptions 6, 7(C), and 7(D). Personal financial and employment-related information  such as an allotment amount was redacted under Exemptions 6, 7(C), and 7(D).  Name of Inspector General Special Agent was redacted under Exemption 7(C).

**bb.  Exhibit 28 - <u>Office of Inspector General Memorandum of Interview of witness</u>** (two pages, one page redacted).  Names of postal officials who were not potential victims but who did provide evidence or testimony to OIG agents were redacted under Exemptions 7(C) and 7(D) and 6.  Name of Inspector General Special Agent was redacted under Exemption 7(C).

**cc. Exhibit 29 - <u>Office of Inspector General Memorandum of Interview of</u> <u>potential victim</u>** (two pages).  Ms. Cuthbertson redacted names of the original complainant and a potential victim who provided testimony or evidence under Exemptions 6, 7(C), and 7(D).  Personal financial and employment-related information was redacted under Exemptions 6, 7(C), and 7(D).  Name of Inspector General Special Agent was redacted under Exemption 7(C).

**dd. Exhibit 30 - <u>Office of Inspector General Memorandum of Interview of</u> <u>potential victim</u>** (two pages).  Ms. Cuthbertson redacted names of the original complainant and a potential victim who provided testimony or evidence under Exemptions 6, 7(C), and 7(D).  Personal financial and employment-related information was redacted under Exemptions 6, 7(C), and 7(D).  Name of Inspector General Special Agent was redacted under Exemption 7(C).

**ee. Exhibit 31 - <u>Office of Inspector General Memorandum of Interview of</u> <u>potential victim</u>** (two pages).  Ms. Cuthbertson redacted names of the original complainant and a potential victim who provided testimony or evidence under Exemptions 6, 7(C), and 7(D).  Personal financial and employment-related information was redacted under Exemptions 6, 7(C), and 7(D).  Name of Inspector General Special Agent was redacted under Exemption 7(C).

**ff. Exhibit 32 – <u>Eight-page solicitation package and letter dated December 8,</u> <u>2006, from UAF/Connie Choi to Postal Service employee</u>** (one page redacted page).  Ms. Cuthbertson redacted the name of a potential victim under Exemptions 6, 7(C), and 7(D).

Personal financial and employment-related information was redacted under Exemptions 6, 7(C), and 7(D).

gg.  **Exhibit 36 - <u>Office of Inspector General Memorandum of Interview of</u> <u>potential victim</u>** (two pages).  Ms. Cuthbertson redacted names of the original complainant and a potential victim who provided testimony or evidence under Exemptions 6, 7(C), and 7(D).  Personal financial and employment-related information was redacted under Exemptions 6, 7(C), and 7(D).  Name of Inspector General Special Agent was redacted under Exemption 7(C).

hh.  **Exhibit 37 - <u>Office of Inspector General Memorandum of Interview of</u> <u>postal employee as to role in processing of allotments</u>** (one page).  Names of postal officials who were not potential victims but who did provide evidence or testimony to OIG agents were redacted under Exemptions 7(C) and 7(D) and 6.  Name of Inspector General Special Agent was redacted under Exemption 7(C).

ii.  **Exhibit 38 - <u>internal email dated March 9, 2006, forwarding victim statement</u>** (one page).   Ms. Cuthbertson redacted the name of a potential victim who provided testimony or evidence under Exemptions 6, 7(C), and 7(D).  Personal financial and employment-related information was redacted under Exemptions 6, 7(C), and 7(D).  Name of low-level agency personnel were redacted under Exemption 7(C).  Name of Inspector General Special Agent was redacted under Exemption 7(C).

As noted above, names of the original complainant, potential victims, and representatives of complainants were redacted under FOIA Exemptions (b)(6), (b)(7)(C), and (b)(7)(D). These were people whose personal information under Exemption 6 is at least to be

protected from release to protect their personal privacy and safeguard them from harassment. In addition, because this information is part of files created for law enforcement purposes, it is also protected under (b)(7)(C), where release could reasonably be expected to constitute an unwarranted invasion of personal privacy.  Finally, Ms. Cuthbertson asserted Exemption 7(D) where release of these names could reasonably be expected to disclose the identity of a source that provided information to the OIG on a confidential basis.

In applying these exemptions, Ms. Cuthbertson, stated that all documents were processed to achieve maximum disclosure consistent with the provisions of FOIA and as is evident from her declartion, only exemption protected material was withheld. Attachment 2 at pp. 3-7.

3. Inspection Service.

The Inspection Office ("IS"), previously withheld the documents entirely under FOIA Exemption 7(A).  However, Exemption 7(A) is no longer being asserted.  See Attachment 3, hereto (Declaration of Mildred R. Baxter), at ¶4.  As explained in the Declaration of Mildred Baxter, Information Disclosure Technicians in the Office of Counsel for the U.S. Postal Insepction Service, Exemptions 2, 5, 6, 7(C), 7(D) and 7(E) were asserted to protect certain information as described below.

Ms. Baxter explains that two documents were released in full, i.e., Documents 7 and 15, one-page photocopies of drivers' licenses of UAF employees.  Attachment 3 at ¶5.

Exemptions 6 and 7(C) were asserted to redact information from 47 pages of material responsive to its request.  This information was the UAF names (which is being released), postal employee names who were affected employees–the victims (which are being withheld under (b)(6) and inspector names (which are being withheld under (b)(7)(C). Id. at ¶ 7.  Five other

pages have been withheld (2 pages) and released (3 pages) with redactions pursuant to Exemptions 2, 5, 6, 7(C), 7(D) and 7(E). See below at 4 & 5.

A re-review of documents withheld in full was conducted by the Inspection Service in February 2008. Attachment 3 at ¶ 8. It was determined that 40 of the original 118 withheld pages were considered duplicates, bringing the actual withheld page total to 78. <u>Id</u>. The IS determined an additional 28 pages that were previously withheld in their entirety could be released with exemptions applied. <u>Id</u>. A total of 50 pages are now being withheld in their entirety. <u>Id</u>. The redactions and withholdings and the rationale, therefore, are set forth in the Baxter Declaration and repeated below for the Court's convenience (<u>see</u> Attachment 3 at ¶¶ 7 & 8):

    4.    <u>Documents Released with Redactions</u>.

In addition to the limited redactions in the 47 pages of documents mentioned above with redacted victims and postal inspectors names, the re-review of records in February 2008 resulted in 28 pages of records released with minimal redactions. Paragraph 7 of the Baxter declaration describes the redacted information as follows (Attachment 3 at ¶ 7):

    <u>Exemption 2 (low 2)</u> – which concerns records related solely to the internal personnel rules and practices of an agency. This exemption protects routine internal administrative matters and functions of the Inspection Service which have no effect on the public at large. Exemption (b)(2) was applied to:

    ·    Document 2 is a 2-page internal Inspection Report dated January 30, 2006. The information redacted relates to a internal identification number and is an internal administrative matter and function of the Inspection Service protected from disclosure.

    <u>Exemption 5</u> – Exemption (b)(5) protects inter-agency or intra-agency memorandums or letters made in the deliberative process. Exemption (b)(5) was applied to:

    Document 1 is a 2-page internal Memorandum to File dated January 30, 2006, written by a postal inspector to the file. The information redacted relates to speculative

statements made in the deliberative process regarding proceeding with the investigation. There was one statement volunteered but clearly noted as speculative by the postal inspector. This privilege is intended to preserve information containing staff opinion leading to decision-making. Disclosure of such material would inhibit free and candid expression of such views in the future. To disclose this information would reveal pre-decisional communications among government personnel, which would jeopardize the candid and comprehensive considerations essential for efficient and effective decision-making.

Document 11 is a 2-page internal email dated February 9, 2006, between two postal inspectors which contains two separate statements redacted under Exemption 5. The information redacted relates to speculative statements made in the deliberative process regarding proceeding with the investigation. This privilege is intended to preserve information containing staff opinion leading to decision-making. Disclosure of such material would inhibit free and candid expression of such views in the future. To disclose this information would reveal pre-decisional communications among government personnel, which would jeopardize the candid and comprehensive considerations essential for efficient and effective decision-making.

Exemption 6 – applies where release of personnel and similar files would constitute a clearly unwarranted invasion of personal privacy. Exemption (b)(6) was applied to:

Document 6 is a one-page handwritten cell phone number and name of an unknown individual. The name and cell phone are protected from disclosure because release would be an unwarranted invasion of privacy for the individual.

Document 14 is a 2-page internal email dated January 30, 2006, between postal inspectors discussing detailed aspects of the investigation. The information redacted consists of personal phone numbers of postal inspectors.

Exemption 7(C) – where disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy. Exemption (b)(7)(C) has been asserted to protect the names of and/or identifying data of Inspection Service postal inspectors who were responsible for conducting, supervising, and/or maintaining the investigative activities reported in the files concerning plaintiff. Assignments of postal inspectors to any particular investigation are not by choice. Publicity (adverse or otherwise) regarding any particular investigation they have been assigned to may seriously prejudice their effectiveness in conducting other investigations. The privacy consideration is also to protect postal inspectors, as individuals, from unnecessary, unofficial questioning as to the conduct of this or other investigations, whether or not they are currently employed by the Postal Inspection Service. Postal inspectors conduct official inquiries into various criminal and national security cases. They come into contact with all strata of society. They conduct searches and make arrests, both of which constitute reasonable, but nonetheless serious intrusions into peoples' lives. Many of these people carry grudges which last for years and they may seek any excuse to harass the postal inspector they deem responsible for these intrusions. The

publicity associated with the release of a postal inspectors' identity in connection with a particular law enforcement investigation could rekindle animosity toward that postal inspector. Accordingly, postal inspectors maintain substantial privacy interests in not having their identities disclosed. The public would not be served by the disclosure of their identities. Thus, any such disclosure would constitute an unwarranted invasion of their personal privacy. Exemption (b)(7)(C) was applied to:

Document 1 is a 2-page internal memorandum dated January 30, 2006, containing investigation notes of interviews and complaints from postal employees and also contains the names of postal inspectors in Ohio and postal police employees.

· Document 2 is a 2-page incident report dated January 30, 2006, of complaints taken from postal employees of a possible scam and contains the names of postal police, postal inspectors and postal employees involved in the investigation and providing information of the possible scam.

· Document 3 is a 1-page facsimile cover sheet dated January 30, 2006, which contains the names, addresses, phone numbers and fax numbers of postal inspectors.

· Document 4 is a 1-page handwritten name and phone number of a postal employee who provided information to the postal inspectors.

· Document 5 is a 2-page internal email dated January 27, 2006, . . . contains the names and phone numbers of victims.

· Document 8 is a 3-page internal email dated February 16, 2006, from a facility in Ohio to the Inspection Service providing details about assisting victim employees in changing their PIN numbers.

· Document 9 is a 3-page internal email dated February 21, 2006, from a facility employee in Ohio to a postal inspector about advising the employees of the Direct Link.

· Document 11 is a 2-page internal email, dated February 9, 2006, between postal inspectors and contains details of the investigation of a possible insurance scam.

Document 12 is a 1-page internal email dated January 27, 2006, between postal inspectors.

· Document 13 is a 6-page facsimile dated February 1, 2006, to a postal inspector from an affected employee in Ohio which contains police incidents listing of complaints from victims, the names, phone number, addresses and social security numbers of victims. Release of the law enforcement postal inspectors' names and work locations would subject them to harassment and/or intimidation from Plaintiff. One page was released in its entirety; three pages were redacted under (b)(7)(C) and (b)(7)(D). The information redacted under (b)(7)(C) was applied to the names of law enforcement personnel only.

The information redacted under (b)(7)(D) was applied to the name of a state law enforcement source. Two pages were withheld in their entirety. One of the two pages was withheld under (b)(7)(D). The information withheld under (b)(7)(D) was applied to a state law enforcement incident listing. The other page was withheld under (b)(6) and (b)(7)(D). The information withheld consists of a listing of affected employees, their social security numbers, home phone numbers and home address. There is no reasonably segregable portion to these two pages.

·   Document 14 is a 2-page internal email dated January 30, 2006, to a Postal Inspector and contains information gathered in the investigation and contains the names, social security numbers and dates of birth of employees affected by the insurance scam.

·   Document 18 is a one-page handwritten name and telephone number of postal employees and law enforcement employees.

The information redacted under this exemption applied to names of law enforcement personnel only. Law enforcement names are routinely withheld pursuant to Exemption (b)(7)(C). Exemption (b)(7)(C) was also applied to some pages of Document 13.

5. Documents Withheld in Full

A description of the records withheld in full by category and the application of the

FOIA exemptions are explained by Ms. Baxter as follows (Attachment 3 at ¶ 8):

- Document 10 is a 1-page Supplemental Report from a law enforcement agency dated January 30, 2006. This Document is a supplemental incident report from a state law enforcement agency. This document is from a detective in law enforcement involved in investigating complaints from victims in Ohio. Exemption 7(D) applies to this document as the identity of a confidential source and confidential information furnished by that source would be revealed by disclosure.

- [In the Baxter Declaration a discussion of Document 13 appears here. The same

discussion also appears in the Documents Released with Redactions. See supra at p. 30.

This appears to be an administrative error as the Document was not withheld in full]

- Document 16 is a 17-page confidential federal law enforcement report dated January 29, 2006, from a federal law enforcement database on a UAF employee.

- Document 17 is a 5-page confidential federal law enforcement report dated January 27, 2006, from a federal law enforcement database on a UAF employee.

31

- Document 19 is a 10-page confidential law enforcement report dated January 29, 2006, from a federal law enforcement database on a UAF employee; and,

- Document 20 is a 15-page confidential law enforcement report dated January 29, 2006, from a federal law enforcement database on a UAF employee.

These documents are protected from disclosure because they contain confidential information assembled in the course of a lawful investigation. [Exemption 7(D)] protects from mandatory disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information. . . could reasonably be expected to disclose the identity of a confidential source, including a state, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of an investigation. The threshold for Exemption 7(D) was met because the redacted and withheld documents consisting of the identities of confidential law enforcement resources utilized by the Postal Inspection Service and the information they provided in the course of the investigation of United America Financial, Inc. In addition, when the identity of one source is revealed, that revelation has a chilling effect on law enforcement investigations.

Ms. Baxter also explains that withholdings have been made by the IS based on

Exemption 7(E) which provides.

Exemption 7(E) – where disclosure would reveal techniques and procedures for law enforcement investigations or prosecutions. Information gathered during the law enforcement proceedings by the Postal Inspection Service, a law enforcement entity for the Postal Service. These law enforcement reports identifies the name of a postal inspector involved in coordinating the investigation of complaints from postal employees and contains details of the investigation of Plaintiff's solicitation of postal employees on postal property and obtaining postal employee's personal information. Disclosure of this information could enable potential wrongdoers to devise strategies that would circumvent those security measures. Documents 16, 17, 19 and 20 consist of a combined total of 47 pages of federal law enforcement computerized data reports on UAF employees. Exemption 7(E) was invoked to protect the integrity of electronic databases utilized by law enforcement personnel. Exemption (b)(7)(E) was applied to:

- Document 16 is a 17-page confidential law enforcement report dated January 29, 2006, from a federal law enforcement database on a UAF employee. This document was gathered as part of the investigation of complaints from postal employees of possible insurance fraud.

- Document 17 is a 5-page confidential federal law enforcement report from a law enforcement database dated January 27, 2006, on a UAF employee. This document was

gathered as part of the investigation of complaints from postal employees of possible insurance fraud.

- Document 19 is a 10-page confidential law enforcement report dated January 29, 2006, from a federal law enforcement database on a UAF employee. This document was gathered as part of the investigation of complaints from postal employees of possible insurance fraud.

- Document 20 is a 15-page confidential law enforcement report dated January 29, 2006, from a federal law enforcement database on a UAF employee. This document was gathered as part of the investigation of complaints from postal employees of possible insurance fraud.

As explained by Ms. Baxter, the IS made every effort to segregate information for release, if possible. Specifically, she stated at Paragraphs 9 & 10 of her declaration that:

All documents were processed to achieve maximum disclosure consistent with the provisions of the FOIA. Every effort was made to provide Plaintiff with all material in the public domain and with all reasonably segregable portions of releasable material. To further describe the information would identify the material sought to be protected.

10. Copies of the documents contain, on their face, categories of exemptions which detail the nature of the information withheld pursuant to the provisions of the FOIA. To further describe the information withheld in more detail could identify the very material that the U.S. Postal Inspection Service is protecting.

III. <u>ARGUMENT</u>

A. <u>Standard of Review</u>

1.    Summary Judgment Should be Granted in Defendant's Favor and <u>Plaintiff's Motion for Summary Judgment Should be Denied.</u>

Where no genuine dispute exists as to any material fact, summary judgment is required.

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). A genuine issue of material fact is one that would change the outcome of the litigation. <u>Id.</u> at 247. "The burden is on the moving party.

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment, the plaintiff must present some objective evidence that would enable the court to find he is entitled to relief. In Celotex Corp. v. Catrett, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. 477 U.S. 317, 322-23 (1986). In Anderson, the Supreme Court explained under what circumstances summary judgment is appropriate:

> If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted . . . [T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

Anderson, 477 U.S. at 252; see also Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor). In Celotex, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

The summary judgment standards set forth above also apply to FOIA cases, which are typically decided on motions for summary judgment. See Cappabianca v. Commissioner, U.S. Customs Serv., 847 F.Supp. 1558, 1562 (M.D. Fla. 1994). "Summary judgment is the preferred

method of resolving [FOIA] cases." Evans v. U.S. Office of Personnel Management, 276 F.Supp. 2d 34, 37 (D.D.C. 2003).

Summary judgment may be granted to an agency in a FOIA case solely on the basis of agency affidavits [or declarations] if the "affidavits are 'relatively detailed, non-conclusory, and not impugned by evidence . . . of bad faith on the part of the agency.'" Public Citizen, Inc. v. Dept. of State, 100 F.Supp.2d 10, 16 (D.D.C. 2000) (quoting McGhee v. Central Intelligence Agency, 697 F.2d 1095, 1102 (D.C. Cir. 1983); see also Consumer Federation of America v. Dep't of Agriculture, 455 F.3d 283, 287 (D.C. Cir. 2006). In this case, defendant has provided the detailed declarations of Ms. Moore, Ms. Baxter and Ms. Cuthbertson in support of this motion for summary judgment.

        B.   The Withholdings Were In Accordance With The FOIA.

           1.   Exemption 7(A) is No Longer Asserted.

           2.   Exemption 2 has been Properly Applied by Defendant.

Title 5, United States Code, Section 552 (b)(2) ("Exemption 2") exempts from mandatory disclosure records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Exemption 2 applies primarily to two types of materials: (1) internal agency matters so routine or trivial that they could not be "subject to ... a genuine and significant public interest;" and (2) internal agency matters of some public interest "where disclosure may risk circumvention" of statutes or agency regulations. Dept. of Air Force v. Rose, 425 U.S. 352, 369-70 (1976); National Treasury Employees Union v. U.S. Customs Service, 802 F.2d 525, 528-30 (D.C. Cir. 1986); Crooker v. Bureau of Alcohol, Tobacco and

<u>Firearms</u>, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981).  This exemption protects routine internal administrative matters and functions of the agency which have no effect on the public at large.

In this case, Exemption 2 has been asserted to protect mundane markings and records related solely to the internal personnel rules and practices of an agency.  For instance, in one email redacted by the Compensation Office, Exemption 2 was asserted to protect actions that the Postal Service personnel were undertaking at the time to ensure that all financial transactions in the affected employees' pay records were legitimate and had been approved by each affected employee. Attachment 1 at ¶ 7; <u>see</u> <u>also</u> <u>id</u>. at ¶¶ 6-13.   The OIG  withheld names and portions of newsletter articles pursuant to Exemption 2 because the information withheld was unrelated to the article on identity theft and part of a discussion of internal postal matters of a trivial nature. Attachment 2 at p 12-13.  The IS asserted Exemption 2 to withhold an internal identification number and an administrative matter. Attachment 3 at 4.

3.  <u>Exemption 5 has been Properly Applied by Defendant</u>.

Exemption 5 protects, *inter alia*, interagency or intra-agency documents created during the deliberative process to determine whether a law enforcement action against plaintiff would be pursued.  <u>See</u> 5 U.S.C. § 552(b)(5).   The documents must be pre-decisional and deliberative. There must be a specific deliberative process involved in which the document played a role. Exemption 5 was asserted by the OIG to protect speculative statements volunteered by Special Agent who was investigating the identity fraud allegations.  Attachment 2 at pp. 7-8.  Exemption 5 was also asserted by the Inspection Service to protect postal inspectors' speculative statements made in the deliberative process during the investigation.  Attachment 3 at pp. 4-5.

4.  Exemption 6 has been Properly Applied by Defendant

Exemption 6 of the FOIA protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  "The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual."  Lepelletier v.  FDIC, 164 F.3d 37, 46 (D.C. Cir.  1999), (emphasis supplied), quoting Department of State v. Washington Post Co., 456 U.S. 595, 602 (1982).

In order to determine whether there would be a "clearly unwarranted invasion of personal privacy," the court must balance the interests of protecting "an individual's private affairs from unnecessary public scrutiny," and "the public's right to governmental information." Lepelletier, 164 F.3d at 46 (interior quotation marks omitted) (citing United States Dept.  of Defense Dept.  of Military Affairs v.  FLRA, 964 F.2d 26, 29 (D.C. Cir.  1992), quoting Department of Air Force v.  Rose, 425 U.S. 352, 372 (1976)).  In determining how to balance the private and public interests involved, the Supreme Court has sharply limited the notion of "public interest" under the FOIA:  "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'"  Lepelletier, 164 F.3d at 46 (editing by the court, emphasis supplied, interior quotation marks omitted) (quoting United States Dept.  of Defense v.  FLRA, 510 U.S. 487, 497 (1994)).  See also Reporters Committee, 489 U.S. at 773.  Information that does not directly reveal the operation or activities of the federal government "falls outside the ambit of the

public interest that the FOIA was enacted to serve."  Id. at 775.  Further, "something, even a

modest privacy interest, outweighs nothing every time."  National Ass'n of Retired Fed.

Employees v.  Horner, 879 F.2d 873, 879 (D.C. Cir. 1989).

       The Postal Service Compensation Office withheld records pursuant to Exemption 6

in order to protect the private information of its employees contained in emails.  The information

protected includes employees' financial information, PIN numbers, Inspectors' names and postal

employees who had given plaintiff their personal identifiable information. Attachment 1 at p. 5.

Ms. Moore of the Compensation Office noted that identification of employees in the context of

this matter would reveal their incidental involvement in a contested matter between plaintiff and

the Postal Service. Id. at 5-6.  Ms. Moore determined that there was a strong private interest

compared to a weaker public interest in employees' personal information while Postal Inspectors

were investigating their complaints.  As the plaintiff had demonstrated hostility and animosity

towards the Postal employees, protection of their personal information outweighs the public

interest. Id.  Similarly, the OIG and the IS determined that the names of potential victims and

Postal Inspectors should be protected. Attachment 2 at pp. 3-5; Attachment 3 at ¶ 7.  As noted by

Ms. Cuthbertson of the OIG, "the released text demonstrates, many of the sources state that they

feared identity theft; others stated that they received persistent, unwelcome, and high-pressure

phone calls at their homes from the insurance sales force; others, having provided personal

information, found their allotments had been altered without their knowing consent." Id. at pp.

4-5. See also Attachment 3 at paragraph 6, Exemption 6.

5.  Exemption 7(C) was Properly Applied by the Defendant

The FOIA, 5 U.S.C. § 552, does not apply to matters that are:

(7)  records or information compiled for law enforcement purposes,
but only to the extent that the production of such law enforcement
records or information . . . (C) could reasonably be expected to
constitute an unwarranted invasion of personal privacy. . . .

An agency in a FOIA case may categorically assert Exemption 7(C) to protect the identities of

witnesses or other persons mentioned in law enforcement files in such a way as to associate them

with criminal activity.  Reporters Comm. for Freedom of the Press, 489 U.S. at 780; Nation

Magazine v. U.S. Customs Service, 71 F.3d 885, 893, 895-896 (D.C. Cir. 1995); SafeCard

Services, Inc. v. S.E.C., 926 F.2d 1197, 1206 (D.C. Cir. 1991).

The names of law enforcement officers who work on criminal investigations have also

traditionally been protected against release by Exemption 7(C).  Davis v. U.S. Dep't of Justice,

968 F.2d 1276, 1281 (D.C. Cir. 1992).  Similarly, individuals who provide information to law

enforcement authorities, like the law enforcement personnel themselves, have protectable

privacy interests in their anonymity.  Computer Prof'ls for Social Responsibility, 72 F.3d at 904;

Farese v. U.S. Dep't of Justice, 683 F. Supp. 273, 275 (D.D.C. 1987).

Once a privacy interest has been established, as here, it must be balanced against the public

interest, if there is any, that would be served by disclosure.  Albuquerque Publ'g Co. v. Dep't of

Justice, 726 F. Supp. 851, 855 (D.D.C. 1989).  The public interest in disclosure is limited to the

FOIA's "core purpose" of shed[ing] light on an agency's performance of its statutory duties."

Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989).  This standard is not

easily satisfied when law enforcement information pertaining to individuals is sought, for there

39

"is no reasonably conceivable way in which the release of one individual's name . . . would allow citizens to know 'what their government is up to.'" Fitzgibbon v. CIA, 911 F.2d 755, 768 (D.C. Cir. 1990).  See also Albuquerque Publ'g Co., 726 F. Supp. at 855-56 (no public interest in disclosure of sensitive information DEA obtained about individuals and their activities, where such material would not shed light on DEA's conduct with respect to the investigation). Furthermore, in order to overcome legitimate privacy interests, the requester must not only demonstrate the existence of the public interest but also that the public interest is both significant and compelling. Senate of Puerto Rico v. Dep't of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987); Stone v. FBI, 727 F. Supp. 662, 667-69 (D.D.C. 1990).

Here, the Compensation Office, the OIG and the IS were concerned about the safety of their employees in connection with the activities of plaintiff.  The Compensation Office asserted Exemption 7(C) to protect certain personal identifying information in emails about the complaints against plaintiff.  These emails were between postal inspectors and Postal offices. See Attachment 1, pp. 9-11.  The IS asserted Exemption 7(C) to protect the names and identifying data of postal inspectors who were responsible for conducting, supervising, and/or maintaining the investigative activities reported in the files concerning plaintiff. Attachment 3 at pp. 5-6.  The possible intrusion on these employees' privacy by people who may carry grudges and/or may seek to harass warrants substantial protection. Id. at p. 6. The public would not be served by disclosure of their identifies. Id.

The OIG noted that its inspectors, in the absence of significant misconduct, retain a substantial privacy interest.  Attachment 2 at p. 6.  There was also a desire to encourage

continuing cooperation with investigations. Id.  Because of the unwarranted invasion on

employees' privacy for non-professional reasons, personal information that did not shine light on

the operations of the government was redacted. Id. at 5-8.

 6.  Exemption 7(D) has been Properly Applied by Defendant.

 Title 5, United States Code,  § 552 (b)(7)(D) (hereinafter Exemption (7)(D)),

exempts from disclosure material that:

> could reasonably be expected to disclose the identity of a
> confidential source including a State, local or foreign agency or
> authority or any private institution which furnished information on a
> confidential basis, and, in the case of a record or information
> compiled by a criminal law enforcement authority in the course of a
> criminal investigation, or by an agency conducting a lawful national
> security intelligence investigation, information furnished by a
> confidential source.

 Exemption (7)(D) recognizes that information furnished by third parties cooperating with

Federal, state or local law enforcement investigations is, by its very nature confidential.

Significantly, the statute affords protection from disclosure to all the information furnished by

third-party sources, as well as the actual identity of the cooperating individual, if there has been

an explicit assurance of confidentiality or circumstances exist from which such an assurance

could reasonably be inferred.  U.S. Dep't of Justice v. Landano, 508 U.S. 165 (1993). Here,

Exemption (b)(7)(D) was asserted to protect individuals who were given assurances of

confidentiality.

 Exemption 7(D) was asserted by the OIG to protect the identity of persons providing

information during the investigation.  Attachment 2, pp. 8-11.  The IS asserted Exemption 7(D)

to withhold such information as the name of a detective who was involved in investigating

41

complaints from victims in Ohio, the name of a state law enforcement source; a state law enforcement incident listing; information from a federal law enforcement database on UAF employee(s).  Attachment 3 at p. 9. In sum, Exemption 7(D) was asserted to protect the identities of confidential law enforcement sources utilized by the Postal Service.

       7.  <u>Exemption 7(E) has been Properly Applied by Defendant</u>.

Exemption 7(E) of the FOIA provides protection for all information compiled for law enforcement purposes when release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

"[T]he term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope." <u>Mittleman v. Office of Personnel Management</u>, 76 F.3d 1240, 1243 (D.C. Cir. 1996), <u>cert</u>. <u>denied</u>, 519 U.S. 1123 (1997) (citing <u>Pratt v. Webster</u>, 673 F.2d 408, 420 n.32 (D.C. Cir. 1982)).  When, however, a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies."  <u>Keys v. U.S. Dept. of Justice</u>, 830 F.2d 337, 340 (D.C. Cir. 1987) (citing <u>Pratt v. Webster</u>, 673 F.2d 408, 418 (D.C. Cir. 1982)).  A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least "a colorable claim" of its rationality.'"  <u>Keys</u>, 830 F.2d at 340 (quoting <u>Pratt</u>, 673 F.2d at 421).

The first clause of Exemption 7(E) affords "categorical" protection for "techniques and procedures" used in law enforcement investigations or prosecutions. Smith v. Bureau of Alcohol, Tobacco and Firearms, 977 F.Supp. 496, 501 (D.D.C. 1997) (citing Fisher v. United States Dep't of Justice, 772 F. Supp. 7, 12 n. 9 (D.D.C. 1991), aff'd, 968 F.2d 92 (D.C. Cir. 1992)). While Exemption 7(E)'s protection is generally limited to techniques or procedures that are not well known to the public, even commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness. See, e.g., Coleman v. FBI, 13 F.Supp. 2d. 75, 83 (D.D.C. 1998). In justifying the application of Exemption 7(E) the agency may describe the general nature of the technique while withholding the full details. See e.g. Bowen v. FDA, 925 F.2d 1225, 1228 (9th Cir. 1991).

Exemption 7(E)'s second clause separately protects "guidelines for law enforcement investigations or prosecutions if [their] disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Accordingly, this clause of the Exemption protects any "law enforcement guideline" that pertains to the prosecution or investigative stage of a law enforcement matter whenever its disclosure "could reasonably be expected to risk circumvention of the law." See, e.g., PHE, Inc. v. United States Dep't of Justice, 983 F.2d 248, 251 (D.C. Cir. 1993) ("release of FBI guidelines as to what sources of information are available to its agents might encourage violators to tamper with those sources of information and thus inhibit investigative efforts"); Jimenez v. FBI, 938 F.Supp. 21, 30 (D.D.C. 1996) (applying 7(E) to gang-validation criteria used by Bureau of Prisons to determine whether individual is gang member).

In the instant case, Exemption 7(E) was asserted to protect the integrity of a law enforcement electronic database used by the IS. Attachment 3 at pp. 11-12.  As Ms. Baxter explained, "[t]hese law enforcement reports identifies [sic] the name of a postal inspector involved in coordinating the investigation of complaints from postal employees and contains details of the ivestigation of Plaintiff's solicitation of postal employees on postal property and obtaining postal employee's personal information. . . [and also] federal law enforcement computerized data reports on UAF employees." Id. at p. 11.  Release of this information could compromise the integrity of the law enforcement databases. Id.

8. Segregability

The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions."  5 U.S.C. § 552(b); Mead Data Cent., Inc. v. United States Dept. of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).  The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue sua sponte." Trans-Pacific Policing Agreement v. United States Customs Service, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements".  Mead Data, 566 F.2d at 261.  The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed.  Id.  All that is required is that the

government show "with 'reasonable specificity'" why a document cannot be further segregated. Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996). Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." Mead Data, 566 F.2d at 261, n.55.

In this case, each entity took appropriate efforts to release all segregable information to plaintiff. Attachment 1 at ¶¶ 2-5, Attachment 2 at 3. Segregability; and, Attachment 3 at p. 12.

## IV. CONCLUSION

For the reasons set forth herein and the attached supporting documents, it is respectfully requested that defendant's renewed motion for summary judgment on behalf of the defendant be granted and plaintiff's motion for summary judgment be denied. A proposed order is attached.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 49860
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____/s/_____
CLAIRE WHITAKER, D.C. BAR # 354530
Assistant U.S. Attorney

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED AMERICA FINANCIAL, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-1023 (JDB)** |
| | ) | |
| **POSTMASTER GENERAL, JOHN E. POTTER,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

1. By letter dated February 1, 2006, addressed to the Postal Service Records Office and to James Rowan, Jr., Acting Chief Postal Inspector, plaintiff requested, *inter alia*, the names of all people responsible for creating a document titled, "A dropped PIN - Nigerian identity thieves targeting USPS employees" and supporting/investigative documents related thereto.  Complaint at ¶ 7 and Exhibit B, thereto.

2. Plaintiff's request was responded to by the Postal Service's Human Resources' Compensation Office, the Office of the Inspector General (OIG) and the Inspection Service ("IS").  See Attachments 1, 2 & 3, hereto.

3. Documents were withheld and released by these offices with redactions pursuant to Exemptions 2, 5, 6, 7(C), 7(D) and 7(E).

4. Efforts were made by Human Resources and the Inspection Service to segregate and release all reasonably segregable records. Attachment 1 at pp. 9-12, Attachment 2 at pp. 3-4 and Attachment 3 at p. 12.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR , Bar # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____/s/_____
CLAIRE WHITAKER, D.C. BAR # 354530
Assistant U.S. Attorney