## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED AMERICA FINANCIAL, INCORPORATED | ) )  ) |
| | ) Civil No.: 06 CV 1023 (JDB) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| POSTMASTER GENERAL JOHN E. POTTER U.S. POSTAL SERVICE, | ) ) |
| | ) |
| Defendant. | ) ) |

---

## PLAINTIFF'S OPPOSITION
## TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

William P. Farley
DC Bar Number 466280
Law Office of William P. Farley P.C.
1350 Connecticut Avenue, N.W.
Suite200
Washington, D.C. 20036
(202) 775-1550 x-115
Counsel for Plaintiff

## <u>TABLE OF CONTENTS</u>

INITIAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    THERE ARE NO FOIA EXEMPTIONS APPLICABLE IN THIS MATTER . . . . . 5

II. STANDARD FOR SUMMARY JUDGEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    1.  Defendant Does Not Meet His Burden For OIG Documents . . . . . . . . . . 9

        Declaration of Betsy Cuthbertson Is Inadequate . . . . . . . . . . . . . . . . . 9

        Declaration of Mildred R. Baxter is Inadequate . . . . . . . . . . . . . . . . . 11

    2. Defendant Does Not Meet His Burden For Compensation Office

        Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        Ms. Moore is Not Qualified to Give the Affidavit . . . . . . . . . . . . . . . 12

    C. None of the Documents Withheld Fall Under an Exemption . . . . . . . . . . . . . . . 14

        1. The Documents Do Not Fall Under Exemption 2 . . . . . . . . . . . . . . . . . . 14

        2. None Of The Documents Fall Under Exemption 5 . . . . . . . . . . . . . . . . . 16

        3. The Documents Do Not Fall Under Exemption 6 . . . . . . . . . . . . . . . . . . 17

        4. The Documents Do Not Fall Under Exemption 7( C), 7 (D), Nor 7(E) . . . 18

        5. Exemption 7C.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

        6. The Documents Do Not Fall Under Exemption 7(D) . . . . . . . . . . . . . . . 22

        7. The Documents Do Not Fall Under Exemption 7(E) . . . . . . . . . . . . . . . 24

IV. FOIA PHILOSOPHY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

    A. FOIA POLICY IS FULL DISCLOSURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

    B. THE FOIA'S CENTRAL PURPOSE IS TO KEEP GOVERNMENT HONEST 26

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED AMERICA FINANCIAL, INCORPORATED ) ) ) **Plaintiff,** ) ) **v.** ) ) POSTMASTER GENERAL JOHN E. POTTER ) U.S. POSTAL SERVICE, ) ) ) **Defendant.** ) ) | **Civil No.: 06 CV 1023 (JDB)** |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT
And Memorandum 0f Points and Authorities in Support of the Opposition**

Plaintiff, United America Financial, Incorporated ("UAF"), opposes Defendant's Renewed Motion for summary judgment and asks the Court to grant Plaintiff's Motion for Summary Judgment and order the Defendant to release the withheld information to further the public interest.

## <u>INITIAL ARGUMENT</u>

First, contrary to Defendant's assertions there is no contested matter between the post office and Plaintiff. Page four of the defendant's renewed motion claims that there is such a matter. It has not been identified, this lawsuit is the only contested matter - which would make it ironic if the post office was relying upon this FOIA action to deny documents requested pursuant to FOIA.

Second, the defendant never identifies any retaliation that could be used by Plaintiff. Def. Br., pg. 4. This is fatal to their speculation that employees could face retaliation from an insurance company or middle aged insurance salespeople.

Third, the names and work locations of postal employees is posted on the internet and is freely given if one calls to any post office. Defendant fails to provide evidence that they do not identify their workers in phone calls and on the internet - which they do. Again, their argument that they have to protect the names of their employees and which postal facility they work at is nonsensical given the post office's practices. Def. Br., pg. 4.

Fourth, the defendant also is seeking to protect those that label legitimate businessmen that happen to be of African Descent as Nigerian identity thieves. Not being white in America does not mean one is an identity thief. Labeling another human being a Nigerian identity thief is not protected when it is false, degrading, illegal, and ruins an insurance company's business. The defendant's argument that they need to protect their employees that make such statements because they call them "Inspectors[1]," when there is no evidence that such persons are inspectors, is not consistent with the FOIA goals.

Fifth, there is no unwarranted invasion of privacy from the plaintiff's customer's that have already provided their personal information to plaintiff to obtain insurance. Def. Br., pg. 4. This is also a nonsensical argument as the plaintiff has the personal information from the employees that purchased insurance through them. To state to this honorable court that the post office needs to protect information that is already in plaintiff's possession, but unusable because they don't know who has stated that they were Nigerian identity thieves, is not consistent with a logical argument.

Finally, the crime the Defendant has not identified which identity thieves are charged under is 18 U.S.C. § 1028, False Identification Documents. The statute of limitations for any employee of the Post Office to bring a cause of action against an entity, such as UAF in this matter, for identity

---

[1] Def. Br., pg. 4.

2

theft pursuant to similar facts as would give rise to § 1028 is two years. *TRW Inc. v. Andrews*, 534 U.S. 19, 23, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001). Identity theft by UAF, which never occurred, would be a violation of The Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").

As the FCRA provides a two (2) year statute of limitation commencing from the date of the violation of the Act, regardless of whether the victim even knows of the violation. Any claims by any person against UAF would have been filed by now. None have been filed. Thus, the Defendant must come forward with more than conclusory statements that an investigation is continuing - they have to provide evidence that there has been any wrongdoing with the lack of any complaints by any employee.

For this briefing, the Court has identified the documents at issue:

> The Compensation Office informed plaintiff that it had located eleven pages of responsive documents, releasing five pages in full and one redacted page, while withholding the remainder pursuant to Exemptions 2, 3, 5, 6 and 7C). Moore Decl. ¶ 11; Tyrrell Decl. ¶ 2. The Inspection Service located 176 pages of responsive documents, initially releasing five pages with redactions, and subsequently releasing 21 pages in full and an additional 26 redacted pages, withholding the remainder pursuant to Exemptions 2, 5, 6, 7(A), 7C), 7(D), and 7(E). Baxter Decl. ¶¶ 22, 23, 29; Malone Decl. ¶ 5. OIG located an investigative file relating to UAF which it withheld in its entirety pursuant to Exemption 7(A). Cuthbertson Decl. ¶ 5; O'Connor Decl. ¶ 6.

For the reasons stated below, plaintiff asks that all the documents be released as none of the reasons given by defendant to withhold the documents is consistent with FOIA requirements.

## A. Factual Background

Plaintiff challenges the government's refusal to disclose data concerning plaintiff and the statements its employees were "Nigerian Identity Thieves." These statements raise potentially

serious implications for constitutionally protected rights for citizens of African descent to do business with the government and, accordingly, there is widespread public concern about the scope and methodology employed by the government in denying those of African descent from being treated similarly to white businesses.

Plaintiff filed this litigation after defendant U.S. Postal Service ("Postal Service") failed to respond expeditiously to a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. The request sought records related to Defendant's methodology and practices in dealing with companies owned and operated by those of African descent.  The government's authority to engage in treating those businesses which employ primarily those of African descent differently than that of European descended people living in the United States. The records sought are critical to the public's ability to evaluate the import of the Postal Services powers, to determine whether the government is using their powers appropriately, to determine whether the powers should be modified to stop the destruction of people of African decent owned businesses, and to determine whether the public should support further Postal Service efforts to treat African descendants differently than European descendants.

While the Postal Service has now released a few documents and redacted records in response to Plaintiffs' request, it has asserted that certain responsive records are exempt from disclosure. Plaintiffs  opposes Defendant's motion for summary judgment and will cross-move for summary judgment on the ground that Defendant has failed to meet its burden under the FOIA to withhold the disputed records.

UAF continues to seek all government documents concerning the government's policies and procedures in labeling African descendant companies Nigerian identity thieves.  The public

has the right to know how the government determines who is a Nigerian identity thief and why the insurance salespeople of UAF, the only insurance company owned and operated by those of African descent, came to be labeled Nigerian identity thieves by the government. The public should have this information in order to assess the government's role in the matter to see if the government is improperly labeling Black owned and operated businesses in order to promote white businesses.

None of the "narrowly construed" exemptions to FOIA applies in this matter, thus, FOIA requires full agency disclosure.

## I. INTRODUCTION
### A. THERE ARE NO FOIA EXEMPTIONS APPLICABLE IN THIS MATTER[2]

Due to this Court's January 22, 2008 opinion, this is a rather simple matter. This Court provided an excellent framework in which to work:

1.    Whether the government affidavits provide information that releasing the documents would interfere with enforcement proceedings. The affidavits would, of course, provide the statute of limitations for the crimes and the amount of hours the investigation has taken so the Court could see that there was actually an investigation being undertaken and charges being considered. *UAF v. Potter,* 06-CV-1023 (January 22, 2008 Memorandum Opinion) ("Opinion"), pg. 6. In addition, the Defendant would explain how the investigation has continued for more than two years and what is left to be investigated. The government has not contacted any UAF personnel.

2.    Whether the government's release of the documents would interfere with their

---

[2] PSMF ¶¶ 12, 16 and 19. Defendant refused to provide information and claimed Exemptions 2, 3, 5, 6, 7( C), 7(D), 7(E) were applicable to withhold the information.

criminal prosecution? In conjunction with this, the government would have to submit evidence that they were considering a crime and how the disclosure would reveal the focus of the investigation. Opinion, pg. 6-7.

3.    Has Potter provided declarations that explain with specificity how each portion of every document withheld would interfere with enforcement proceedings. Opinion, pg. 9.

4.    Does Potter have a reasonable anticipation of enforcement proceedings, and not just a possibility that enforcement proceedings could be brought. Opinion, pg. 9. Included in this declaration would also be the number of hours which this investigation has proceeded in the last two and a half years and the number of personnel assigned and the breakdown in the time which has been directly related to bringing charges and not in litigating this matter. (Which could be provided under seal if necessary).

5.    In his declaration, has Defendant made a distinction between the different types of people involved in the documents? Opinion, pg. 10.

6.    Has the Defendant provided a proper basis for the exemption claimed for all redactions? Opinion, pg. 7.

7.    Has the Defendant provided declarations that explain in reasonable detail which portions of the documents are "reasonably segregable from the exempted portions? Opinion, pg. 11.

8.    Has all purely factual information been released?

9.    Whether Compensation Office Records were part of law enforcement procedures? Opinion, pg. 19. If so, the Defendant will provide declarations that show that the law enforcement officers had a subpoena to look at this matter, or concede the Compensation Office released

6

unprotected information.

10.     Whether the Office of Inspector General and the Inspection Service have properly withheld documents in light of the facts that no crime has been identified nor has any UAF employee been contacted.

With this Freedom of Information Act[3] lawsuit, plaintiff seeks many of the documents that are held by the defendant created in connection with the business of insurance business practices by private vendors, specifically, plaintiff's practices.  UAF is a minority owned insurance company duly organized under the laws of Maryland and doing business in the District of Columbia and other locals.  Of the 176 pages of records defendant has only released five pages of redacted information to plaintiff prior to UAF filing their first motion for summary judgment.  Plaintiff seeks the other documents and non-redacted versions of the documents provided by Defendant.

## II. STANDARD FOR SUMMARY JUDGEMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56C.). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Summary judgment is appropriate if the non-moving party fails to offer "evidence on which the jury could reasonably find for the [non-moving party]." *Peter S. Herrick's Customs and Intern. Trade Newsletter v. U.S. Customs and Border Protection*, 2006 WL 1826185 (D.D.C. 2006) (Bates, J.) *citing Anderson v. Liberty Lobby,*

---

[3]  *See* 5 U.S.C. § 552 *et al.*

*Inc.*, 477 U.S. 242, 252 (1986); *Holbrook v. Reno*, 196 F.3d 255, 259-60 (D.C.Cir.1999).

### III. ARGUMENT

Defendants' motion for summary judgment must be denied, and plaintiff's motion for summary judgment must be granted.

With this Freedom of Information Act[4] lawsuit, plaintiff seeks many of the documents that are held by the defendant created in connection with the business of insurance business practices by private vendors, specifically, plaintiff's practices. UAF is a minority owned insurance company duly organized under the laws of Maryland and doing business in the District of Columbia and other locals.

The Supreme Court has recognized that FOIA's basic purpose is reflected by "a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language. . . . To make crystal clear the congressional objective . . . to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny . . . Congress provided in s 552C.) that nothing in the Act should be read to authorize withholding of information or limit the availability of records to the public, except as specifically stated . . . . Consistently with that objective, the Act repeatedly states that official information shall be made available to the public, for public inspection." *Department of Air Force v. Rose*, 425 U.S. 352, 360-361 (1976) (citations and quotations omitted).

This Circuit has long recognized " that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Central, Inc. v. United States Dep't of the Air Force*, 566 F.2d 242, 260 (D.C.Cir.1977). Plaintiff requests all the documents

---

4   *See* 5 U.S.C. § 552 *et al.*

8

held by Defendant and information retracted from the few documents provided.

In their Answer, Defendant offers two defenses[5] to the withholding of the documents and redacted information: (1) Plaintiff has made a request under the Freedom of Information Act ["FOIA"], 5 U.S.C.§ 552, et seq., for certain records that are not in a system of records maintained by defendant; and (2) Plaintiff has failed to establish a claim under the FOIA with regard to other records responsive to plaintiff's request that have been located by defendant.  In correspondence Defendant has refused to provide documents based on various FOIA exemptions that are discussed below.  PSMF ¶ 10.

In addition, Defendant failed to provide sufficiently detailed declarations detailed enough to permit a  allow the court to reach a proper determination regarding the sufficiency of the agency's justifications for withholding or redacting documents under FOIA.

## 1. Defendant Does Not Meet His Burden For OIG Documents

Defendant relies heavily upon protecting factual matters by claiming they were in investigation files.  The Defendant's position directly conflicts with this Court's clear teaching that "there is no 'blanket exemption for Government records simply because they were found in investigatory files compiled for law enforcement purposes.'" *Crooker v. Bureau of Alcohol Tobacco and Firearms*, 789 F.2d 64, 66 (D.C. Cir. 1986).  Court Op., pg. 10.  In addition, there is no ongoing investigation that could be supported in this matter based upon the facts that more than two years have passed and UAF has never even been questioned.

### a. Declaration of Betsy Cuthbertson Is Inadequate

---

[5]  Defendant's Answer to the Complaint; Plaintiff's August 31, 2006 Statement of Material Facts ("PSMF"), ¶¶ 1-19.

Defendant relies upon the declaration of one Betsy Cuthbertson. Def. Br., Attachment 2. Cuthbertson identifies documents that were created by UAF employees on pages 1-3 of her declaration and states that she has "determined that all other previously withheld documents as well as associated documents created later (after the filing of the FOIA request) can be released in redacted form." Cuthbertson Dec., ¶ 3. However, the Post Office never provided the documents. The Post Office should provide all the released documents to the Court so Plaintiff will have the copies Defendant alleges that they have received.

In addition, Cuthbertson claims that there has been testimony given in this matter. Cuthbertson Dec, ¶ 3(a). She also claims that there were representatives of complainants. *Id.* However, this is inconsistent with this case in that no testimony has been given (or at least no documents of testimony have been identified for this Court). And, the representatives of complainants, if any, have not been properly identified as that is a purely factual matter.

The Defendant has not identified the evidence that shows they actually believe that Plaintiff is a Nigerian identity thief. That information is not protected as it could not be part of an investigation. Being Nigerian is not a crime. The Defendant has not provided information that will reveal how protecting those that label others Nigerian is criminal, or could lead to criminal prosecution.

Finally, Cuthbertson does not identify where she is getting her information from that there is an ongoing investigation. She does not identify who is involved in that investigation and the goals of any alleged investigation. Finally, she does not state that there is any ongoing investigation.

For these reasons, plaintiff asks that all the documents identified in the Court order be provided. As shown below no exemption exists for any of the documents.

10

**b. Declaration of Mildred R. Baxter is Inadequate**

As shown below, none of the statutory exemptions permit the Post Office from hiding the documents from Plaintiff that reveal who claims that they are Nigerian Identity thieves. First, Ms. Baxter states that documents should be released to plaintiff, yet to date they are still being withheld. March 25, 2008 Declaration of Mildred R. Baxter ("Baxter Dec."), ¶ 5-7.

Baxter claims that a phone number of an unknown person can not be released because of privacy concerns pursuant to Exemption 6. Baxter Dec., pg. 5. However, there can be no privacy to information that can't be identified after two years of an alleged investigation.

Plaintiff asks that Defendant be ordered to provide all the documents that they claim they have released as the Plaintiff has not received all the documents Defendant claims have been provided.

**2. Defendant Does Not Meet His Burden For Compensation Office Documents**

On January 22, 2008 this honorable court issued a memorandum opinion ("Court Op.")that explained the Order of that date. The Court's Order required that the Compensation Office release the photocopy of the UAF employee's business card portion of the routing slip. This document has not been released to date, however it is a very important document because it could reveal the name of a witness if UAF decided bring suit and to determine if any of their employees could have been harassing the Post Office as Moore alleges in her declaration.

The Court ordered the Defendant to justify withholding documents pursuant to 7( c). Court Op., pg. 20 ("Considering that further briefing is forthcoming on other withheld documents, the Court will give defendant another opportunity to justify withholding of the names in the emails under Exemption 7C.")

The Court noted that "Because the Moore declaration does not provide a factual basis for the conclusion that harassment or intimidation would result from disclosure of the names, the Court cannot uphold the assertion of Exemptions 6 or 7C)."  Thus, if Moore's affidavit does not give specifics as to what this insurance company who must abide by regulations to stay in business would do to harass postal employees, the Defendant would have to release the documents in question.

First, Moore's declaration does not meet the legal standards.  Second, Moore makes outrageous unsupported statements in her declaration including that "Plaintiff demonstrated hostility and animosity towards Postal Service employees involved in the investigation and employees who were involved in it [sic] commitment to protect employees' personal and financial information." Moore Dec, ¶ 16.  This statement is false.  Where, when, who, how often, how, why, to whom, and whether there is any evidence to support such a statement is all lacking from the Moore declaration. Merely making conclusory statements that a legitimate insurance company attacked the post office without any specifics is a sign that Defendant can not legitimately meet the burden to withhold this information pursuant to FOIA.

Moore never identifies any information that the post office found that would indicate UAF is not an honorable and upstanding company engaged in the business of selling insurance products. She merely provides conclusory statements that the release of postal managers names "could provide potential wrongdoers with key information to circumvent such protections in the future."  Moore Dec., pg. 4.  Using the word "could" makes this statement on its face speculative.

**a. Ms. Moore is Not Qualified to Give the Affidavit**

The Post Office has represented the Julie S. Moore is the Manager, Compensation at the U.S. Postal Service Headquarters.  However, her correct title according to online sources is Compensation

Manager, Human Resources, Office of the Postmaster General and Chief Executive Officer, United States Postal Service.

As human resources manager, Ms. Moore is presumably responsible for labor relations, EEO complaint processing, employment and development, training, compensation and staffing, affirmative action, and safety and health.  39 CFR 229.2(5) ("Human Resources is responsible for labor relations, EEO complaint processing, employment and development, training, compensation and staffing, affirmative action, and safety and health.  No where in her affidavit does she provide information about her intimate knowledge of FOIA matters which could support her determinations such as "it is my belief that nonexempt material cannot reasonably be segregated from exempt materials in the records at issue."  Moore St. ¶ 5.

Second, even if the affidavit was proper, which it isn't, the subject matter is not consistent with Ms. Moore's duties and appears to be beyond the realm of her expertise.  For instance, in ¶ 16 of her declaration she declares that "Release of names and work locations would subject the employees to harassment and/or intimidation from Plaintiff [a team of middle aged people wearing three piece suits and selling insurance]."  The question has to be, what harassment - denying postal employees a calendar?  The post office has phone records and other information they could have provided this court under seal - but none of their records could support these conclusory statements.  Thus, the post office has not met their burden.

Ms. Moore's affidavit does **not** provide detailed and specific information demonstrating that the material was properly withheld so as to justify the district court's awarding summary judgment on UAF's claims.  *See e.g., Juda v. U.S. Customs Service*, 2000 WL 1093326 (D.C. Cir. 2000).  Instead, Ms. Moore continues with conclusory statements that are not supported by admissible

evidence that could be provided to the Court under seal.

Ms. Moore's affidavit provides that her office could segregate information out of the documents that the government is seeking to protect. Moore, ¶ 3. Under FOIA, the statute provides that all reasonably segregable information needs to be released. 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.") This Circuit has long recognized " that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Central, Inc. v. United States Dep't of the Air Force*, 566 F.2d 242, 260 (D.C.Cir.1977). Thus, this admission by the government requires that the information that is segregable be released.

Ms. Moore doesn't say who, has determined that any attempt to segregate nonexempt information would essentially leave only a meaningless collection of words and phrases.

In addition, Ms. Moore makes statements that are unsupportable. For instance, she states that none of the email information can be released because it describes actions taken by postal employees in reviewing pay records. However, she later states that the Plaintiff has this information. Moore, ¶ 17 (employees had given UAF "personal identifiable information.") In addition, the Post Office provides public information on their means and process their managers use to protect property. See, http://www.uspsoig.gov/foia_files/SA-AR-08-003.pdf (Postal Inspection Service Security Controls and Processes.) Thus, the post office fails in meeting the burden to withhold these documents based upon Moore's declaration.

### C. None of the Documents Withheld Fall Under an Exemption

#### 1. The Documents Do Not Fall Under Exemption 2

14

Exemption 2 protects from disclosure, documents "related solely to the internal personnel rules and practices of an agency." This section does not apply to matters that are related solely to the internal personnel rules and practices of an agency. Exemption 2 also does not generally apply to matters, such as the matters involved, in which there is a genuine and important public interest.

Exemption 2 protects materials that are "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). It applies to information "used for predominantly internal purposes." *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1073 (D.C.Cir.1981) (en banc). "The exemption exhibits a congressional judgment that material lacking external impact is unlikely to engage legitimate public interest, the touchstone of the policies underlying the Freedom of Information Act." *Cox v. United States Dep't of Justice*, 601 F.2d 1, 5 (D.C.Cir.1979).

Defendant claims Exemption 2 is applicable by the Records Office to withhold markings on the routing slip and the facsimile transmission. Defendant claims Exemption 2 for certain Documents. However, Defendant fails to provide information that would permit identification of those documents to be able to correctly catagorize them and what information was related solely to the Postal Service. For instance, facsimile numbers are not internal, they are external information and they were sent, or received, by someone. Thus, they are not internal information and they must be released. Post Office phone numbers are public information and should be released. Postal Employees and Managers are public information and paid by the public fisc.

Defendant has not provided any evidence that the documents are covered by Exemption 2. Thus, Plaintiff asks that all documents being withheld under Exemption 2 be immediately provided to plaintiff.

### 2. None Of The Documents Fall Under Exemption 5

Exemption 5 of the FOIA exempts from mandatory disclosure documents that are "inter-agency or intra-agency" memoranda or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5); 10 C.F.R. § 1004.10(b)(5). Exemption 5 permits withholding of responsive material that reflects advisory opinions, recommendations, and deliberations comprising part of the process by which government decisions and policies are formulated, under the deliberative process privilege. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). In order to be shielded by this privilege, a record must be both pre-decisional, *i.e.* generated before the adoption of agency policy, and deliberative, *i.e.* reflecting the give-and-take of the consultative process. *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 856 (D.C. Cir. 1980).

However, this privilege does not generally protect records containing purely factual matters. Factual matters means objective information, in contrast to opinions, ideas, or advice exchanged as part of an agency's consultative or deliberative process. A person's name is a factual matter, time, date, locations, etc. are all purely factual. Predecisional materials are not exempt merely because they are prepared prior to a final agency action, policy, or interpretation. These materials must be a part of the agency's deliberative process by which decisions are made. *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975). The deliberative process privilege is intended to promote frank and independent discussion among those responsible for making governmental decisions. *EPA v. Mink*, 410 U.S. 73, 87 (1973); *Kaiser Aluminum & Chemical Corp. v. United States*, 157 F. Supp. 939 (Ct. Cl. 1958).

In this matter, factual matters have been indicated. In addition, Defendant has not identified

the documents that permits a determination of what is being withheld and why that information concerning our government is being kept from the taxpayers.

The Defendant has not shown how all parts of these documents relate to (1) Postal Inspectors' selective recollections and recommendations concerning the investigation, and (2) internal correspondence between Postal Service management and Postal Inspectors. Thus, Exemption 5 does not apply and the government should publicize the documents at issue – Documents 1, 2, 8, 9, 11 and 14.

### 3. The Documents Do Not Fall Under Exemption 6

Exemption 6 shields from disclosure "[p]ersonnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); 10 C.F.R. § 1004.10(b)(6). The purpose of Exemption 6 is to "protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *Department of State v. Washington Post Co.*, 456 U.S. 595, 599 (1982).

Defendant has not provided sufficient evidence to show that Exemption 6 applied to protect certain Documents. They type of information, where the information was, who gathered the information, was it in a public phone book, was not revealed.

First, there are not a significant privacy interest would be compromised by the disclosure of the record. Because there is no privacy interest identified, the record may not be withheld pursuant to this exemption. *See Ripskis v. Department of Hous. and Urban Dev.*, 746 F.2d 1, 3 (D.C. Cir. 1984). Further, the release of the document would further the public interest by shedding light on the operations and activities of the Government. *See Reporters Committee for Freedom of the Press v. Department of Justice*, 489 U.S. 749 (Reporters Committee). There has been no validly identified

privacy issue for any person asserted.

Even if a privacy order was identified, which it hasn't been, it is in the public interest for the disclosure of the information. Information falls within the public interest if it contributes significantly to the public's understanding of the operations or activities of the government. *See Reporters Committee*, 489 U.S. at 775. In the instant matter, the public would learn something directly about the workings of government from the release of documents. Disclosure is mandated because the inner working of the government is the concern of all citizens - especially an governmental entity such as the post office which all Americans see on a daily basis.

Thus, the Documents must be released in their entirety.

### 4. The Documents Do Not Fall Under Exemption 7( C), 7 (D), Nor 7(E)

Exemption 7 protects six different classes of law enforcement information. § 552(b)(7)(A)-(F). Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm. 5 U.S.C. § 552(b)(7); *see Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 622 (1982). "The pivotal inquiry is whether there is a nexus between the agency's law enforcement duties and the information withheld." *Peter S. Herrick's Customs and Intern. Trade Newsletter v. U.S. Customs and Border Protection*, 2006 WL 1826185, *3 (D.D.C. 2006) (Bates, J.) *citing Keys v. United States Dep't of Justice*, 830 F.2d 337, 340 (D.C.Cir.1987).

In order to withhold materials under Exemption 7, an agency has the burden of establishing that the records at issue were compiled for law enforcement purposes, and that the material satisfies the requirements of one of the subparts of Exemption 7. *See Pratt v. Webster*, 673 F.2d 408, 413 (D.C.Cir.1982).

18

In assessing whether records are compiled for law enforcement purposes, the analysis required is how and under what circumstances the requested files were compiled, and "whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Tax Analysts v. I.R.S.*, 294 F.3d 71, 78 (D.C.Cir. 2002) *citing In Rural Housing Alliance v. Dep't of Agriculture*, 498 F.2d 73 (D.C.Cir.1974). There are two types of investigatory files that government agencies compile: (1) files in connection with government oversight of the performance of duties by its employees, and (2) files in connection with investigations that focus directly on specific alleged illegal acts which could result in civil or criminal sanctions. *In Rural Housing Alliance v. Dep't of Agriculture*, 498 F.2d at 81. Thus, if the investigation is for a possible violation of law, then the inquiry is for law enforcement purposes, as distinct from customary surveillance of the performance of duties by government employees. *Id.* at 82.

## 5. Exemption 7C.)

It should be noted again that UAF has not been contacted by any postal employee considering an action against them for identity theft. As the statute of limitations is two years, this indicates that there is no identity theft. Further, and more importantly, the government has informed this court that they have been investigating this matter for two years. If there was wrongdoing on UAF, or their employees, part the government would have completed any investigation by now. Thus, there is no legitimate Exemption 7( c) claim in this matter.

Exemption 7C.) to the FOIA only permits an agency to withhold information if the information is "compiled for law enforcement purposes" to the extent that such information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)C.). It does not exempt from disclosure, "[i]nternal agency investigations ⋯ in which an

19

agency, acting as the employer, simply supervises its own employees." *Stern v. F.B.I.*, 737 F.2d 84, 89 (1984).

An agency may not withhold an entire file pursuant to Exemption 7C.) unless the Government proves that disclosure of any part of the file "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Kimberlin v. Department of Justice*, 139 F.3d 944, 950 (D.C. Cir.1998) Moreover, the Government must make that showing in its Vaughn index and in such affidavits as it may submit therewith. *See generally Vaughn v. Rosen*, 484 F.2d 820, 827-28 (D.C.Cir.1973) (outlining requirements agency must meet in indexing documents for which it claims exemption from disclosure under FOIA).

The threshold test for withholding information under Exemption 7C.) is whether such information is compiled as part of or in connection with an agency law enforcement proceeding. *FBI v. Abramson*, 456 U.S. 615, 622 (1982). The scope of Exemption 7 encompasses enforcement of both civil and criminal statutes. *Rural Housing Alliance v. Department of Agriculture*, 498 F.2d 73, 81 & n.46 (D.C. Cir. 1974). In the present case, there is no evidence that any of the documents were created during an investigation of any alleged misconduct.

Thus, without any identified investigation and no evidence 7( C) is applicable, there can be no documents legally withheld and plaintiff asks the Court to order the records at issue be provided to plaintiff.

As to the Postal agents' names. Government employee do not completely lose their personal privacy with respect to the discharge of his official duties. *Nix v. United States*, 572 F.2d 998, 1005-06 (4th Cir. 1978). However, the Post Office has not identified the job descriptions of their employees for the Court to make a reasoned decision of whether all the employees that called

Plaintiff's employees Nigerian Identity Thieves did that pursuant to their official duties.

Balanced against the privacy interests is the public interest in the investigation and disclosure of possible violations of federal statutes. With complete disclosure, plaintiff would be able to determine whether the Postal Service's investigation of the labeling insurance salespeople "Nigerian Identity Thieves" was complete and adequate. Moreover, although the Act was not designed to benefit private litigants, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 143 n.10 (1975), the public interest in preventing and discovering illegal actions by federal employees may be vindicated in some cases only by a private litigant's resort to a civil action under 18 U.S.C. s 2520. Just as the vindication of constitutional rights by private litigants in s 1983 actions serves the public interest, the vindication of important rights to a person's reputation and name also serve the public interest. Thus if plaintiff needs the names of Postal employees to maintain a law suit, then the release of the names would benefit a public interest. The public interest in such an investigation coincides with plaintiff's own interest.

There is also no evidence that the professional insurance agents at issue in this matter have ever "harassed" anyone, let alone a Postal employee. In balancing the privacy interests of the Postal agents with the public interest in disclosure. This is not a case in which the plaintiff seeking disclosure of names of agents has been investigated for possible criminal violations. Accordingly, there is no possible danger to the postal employees resulting from disclosure of their names to plaintiff, nor have defendants hypothesized any such danger.

The Defendant's arguments are just articulate an abstract potential for harassment and annoyance and the possibility that future undercover investigations could be jeopardized as justifications for the deletion of the agents' names. These potential invasions of privacy would exist

in every case involving disclosure of agents' names, and the government has not indicated any reason for speculating that the potential is greater in this case.

The exemptions to disclosure are to be narrowly construed. *See Charlotte-Mecklenburg Hospital Authority v. Perry*, 571 F.2d 195 (4th Cir. 1978). Because there is a public interest in disclosure, and the government has not pointed to any circumstance peculiar to this case which indicates greater potential for harassment, annoyance, or the compromising of undercover assignments than would be present in every case, the balancing test favors disclosure. In weighing the public interest in disclosure against the privacy interests, the government has not satisfied its burden and that disclosure here will not constitute an "unwarranted" invasion of personal privacy. Defendants must release the names of the postal employees withheld from all the remaining documents.

### 6. The Documents Do Not Fall Under Exemption 7(D)

Exemption 7(D) protects from disclosure only that information compiled for law enforcement purposes that: could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, information furnished by a confidential source. 5 U.S.C. § 552(b)(7)(D). The government may not assume that a source is confidential for purposes of Exemption 7(D) simply because the source provided information to a law enforcement agency in the course of a criminal investigation. *See United States Dep't of Justice v. Landano*, 508 U.S. 165, 181 (1993). "A source is confidential within the meaning of 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from

22

which such an assurance could reasonably be inferred." *Williams v. Fed. Bureau of Investigation*, 69 F.3d 1155, 1159 (D.C.Cir.1995) (citations omitted) The question is "whether the particular source spoke with an understanding that the communication would remain confidential." *United States Dep't of Justice v. Landano*, 508 U.S. at 172 (emphasis in original).

Similarly, with respect to the names of those persons interviewed by the Post Office in connection with the investigation of the alleged "Nigerian Identity Thieves," in balancing the public interest in disclosure, which is identical to the interest in release of the employees' names, against the privacy interests of the individual interviewees, that release will not constitute an unwarranted invasion of personal privacy.

Defendants have also relied on exemption (b)(7)(D) to withhold names of those interviewed by the Postal employees. Exemption (b)(7)(D) exempts material compiled for law enforcement purposes to the extent that production would "disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, . . . confidential information furnished only by the confidential source." Exemption (b)(7)(D) is unavailable to an agency unless the source of information was given an express assurance of confidentiality or could reasonably infer an assurance from the circumstances. See House Rep. No. 93-876, 1974 U.S.Code Cong. & Admin.News, pp. 6267, 6291.

Defendants do not claim that the Postal Service made an express promise of confidentiality. They do claim that persons interviewed "often assume" that their identities will not be disclosed. Thus defendants admit, and we agree, that not all persons interviewed by Postal agents assume that their names will be kept confidential. Defendants have not shown that the interviewees in the circumstances of this case could have reasonably assumed or did assume confidentiality. On the

23

contrary, there is no evidence that the Postal agent made any representations of confidentiality nor

Moreover, defendants have not shown that this is a case in which the interviewee might have a

reason for desiring confidentiality. *See, e. g., Wellman Indus. Inc. v. NLRB*, 490 F.2d 427, 431 (4th

Cir. 1973); cert. denied 419 U.S. 834 (1974). Defendants have not satisfied their burden of proof

with respect to (b)(7)(D), and the Defendant must release the names excised pursuant to (b)(7)(D)

from documents 1, 10, and 13.

As there are no confidential sources that have been identified, plaintiff requests that all the

documents withheld pursuant to Exemption 7(D) be provided as soon as possible.

### 7. The Documents Do Not Fall Under Exemption 7(E)

Exemption 7(E) protects two kinds of information: (1) that which "would disclose techniques

and procedures for law enforcement investigations or prosecutions;" and (2) that which "would

disclose guidelines for law enforcement investigations or prosecutions if such disclosure could

reasonably be expected to risk circumvention of the law." *Peter S. Herrick's Customs and Intern.*

*Trade Newsletter v. U.S. Customs and Border Protection*, 2006 WL 1826185 at *7 *citing* 5 U.S.C.

§ 552(b)(7)(E). "Both portions of Exemption 7(E) require that the information withheld relate to law

enforcement investigations or prosecutions." *Id.*

Defendant claims Exemption 7(E) protects from mandatory disclosure Documents 1, 2, 16,

17, 19 and 20. However, other than conclusory statements, Defendant has not provided any evidence

that Exemption 7(E) would apply in the present situation. Thus, plaintiff seeks an order that all

documents be provided.

### IV. FOIA PHILOSOPHY

One of the fundamental philosophies of the American constitutional form of representative

24

government is that government is the servant of the people and not their master. Accordingly, it is the public policy of the state that all persons are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees. Providing persons with the information is an essential function of a representative government and an integral part of the routine duties of public officials and employees, whose duty it is to provide the information.

The burden of proof for the non-disclosure of a public record is always on the public agency that would deny access to the peoples' records and not on the person seeking to inspect and copy the record.  To hold that information is exempt from disclosure under (b)(7)C.), the Court must find that the records were compiled solely for law enforcement purposes, that personal privacy interests attach to the withheld information, and that disclosure would constitute an unwarranted invasion of those privacy interests.

## A. FOIA POLICY IS FULL DISCLOSURE

The FOIA began in 1946 as part of the Administrative Procedure Act, but lacked any teeth.[6] "In 1966 Congress amended that section to implement a general philosophy of full agency disclosure."[7]  According to the U.S. Supreme Court: "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter *de novo*.'"[8]

---

[6] *See Department of Justice v. Reporters Committee*, 489 U.S. 749, 754 (1989).

[7] *Id.,* 489 U.S. 749, 754 *(quotations & citations omitted*).

[8]  *Id.,* 489 U.S. 749, 755  (*quoting* 5 U.S.C. § 552(a)(4)(B)).

## B. THE FOIA'S CENTRAL PURPOSE IS TO KEEP GOVERNMENT HONEST

FOIA ensures an informed citizenry which is critical to our democracy. *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Under 5 U.S.C. § 552(a)(4)(B) documents are presumed to be subject to disclosure unless the agency proves that one or more of the nine specific statutory exemptions in § 552(b) applies. To ensure maximum disclosure, those nine exemptions should be narrowly construed. *Dep't of the Air Force v. Rose*, 425 U.S. 352, 360-1 (1976). *See, e.g., Church of Scientology v. United States Dep't of Justice*, 612 F.2d 417, 426 (9th Cir. 1979) (general purpose of the FOIA justifies narrow construction of the exemptions).

The central purpose of the FOIA is to give ordinary citizens the power to keep the government honest in order to preserve our constitutional democracy. It is established that "the FOIA's central purpose is to ensure that the Government's activities be opened to the sharp eye of public scrutiny…."[9] According to the U.S. Supreme Court: "The generation that made the nation thought secrecy in government one of the instruments of Old World tyranny and committed itself to the principle that a democracy cannot function unless the people are permitted to know what their government is up to."[10] Congress expressed "the core purpose of the FOIA as 'contribut[ing] significantly to public understanding of the operations or activities of the government.'"[11] This is "the public interest that the FOIA was enacted to serve."[12]

What is clear is that the names of the federal officials acting in their official capacity should

---

[9]  *Id.*, *Department of Justice v. Reporters Committee*, 489 U.S. 749, 774.

[10]  *Id.*, 489 U.S. 749, 772-773 (*quoting* Henry Steele Commager).

[11]  *Id.*, 489 U.S. 749, 775  (*quoting* 5 U.S.C. § 552(a)(4)(A)(iii))

[12]  *Id.*, 489 U.S. 749, 775

*not* have been redacted and any documents with those names on them should be provided immediately.

## CONCLUSION

Accordingly, Plaintiff requests the Court to grant Plaintiff's Motion for Summary Judgment and Deny Defendant's Motion for Summary Judgment. A draft order is attached.


Respectfully submitted,


_____/s/    William P. Farley_____
William P. Farley 466280
Law Office of William P. Farley P.C.
1350 Connecticut Avenue, N.W.
Suite200
Washington, D.C. 20036
(202) 775-1550 x-115
Counsel for Plaintiff

27

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED AMERICA FINANCIAL, INCORPORATED** | ) |
| | ) |
| | )**Civil No.: 06 CV 1023 (JDB)** |
| **Plaintiff,** | ) |
| **v.** | ) |
| | ) |
| **POSTMASTER GENERAL JOHN E. POTTER** | ) |
| **U.S. POSTAL SERVICE,** | ) |
| **Defendants.** | ) |
| | ) |

**ORDER**

Upon consideration of Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Judgment, the oppositions, respective replies, and the record herein, it is the ___ day of _____, 2008 hereby:

**ORDERED** that the Plaintiff's motion for Summary Judgment be and hereby is **GRANTED;** and it is

**FURTHER ORDERED** that Defendant's motion for Summary Judgment be, and hereby is **DENIED**; and it is

**FURTHER ORDERED** that Defendant shall provide plaintiff with a copy of each document withheld within 15 days**;** and it is

**FURTHER ORDERED** that Defendant shall pay Plaintiff  reasonable fees and costs.

_____
The Honorable John D. Bates
United States District Court Judge

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Plaintiff's Opposition to Defendant's Motion for Summary

Judgment was served on all parties pursuant to the court's rules via electronic transmission, on this

28th day of April 2008 to:


CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorneys Office
Civil Division
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137
Counsel for Defendant



_____/s/____William P. Farley_____
William P. Farley 466280
Law Office of William P. Farley P.C.
1350 Connecticut Avenue, N.W.
Suite200
Washington, D.C. 20036
(202) 775-1550 x-115
Counsel for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| UNITED AMERICA FINANCIAL, INCORPORATED | ) |
| | ) |
| | )Civil No.: 06 CV 1023 (JDB) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| POSTMASTER GENERAL JOHN E. POTTER | ) |
| U.S. POSTAL SERVICE, | ) |
| Defendants. | ) |
| | ) |

---

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS
NOT IN DISPUTE**

1.    **Plaintiff does not dispute that:** By letter dated February 1, 2006, addressed to the Postal Service Records Office and to James Rowan, Jr., Acting Chief Postal Inspector, plaintiff requested the names of all people responsible for creating a document titled, "A dropped PIN - Nigerian identity thieves targeting USPS employees."

     **Plaintiff disputes:** This article was generated after postal employee(s) complained that plaintiff's employees were representing themselves as representatives of the Office of Federal Employee's Life Insurance ("FEGLI") and were asking the employee(s) for PIN and other personal information. Attachment 1 (Moore Decl.)

2.    **Plaintiff does not dispute that:** Plaintiff's request was responded to by the Postal Service's Human Resourses' Compensation Office, the Office of the Inspector General (OIG) and the Inspection Service ("IS") because it was represented by counsel for Defendant that the actions occurred.  However, Plaintiff disputes this is a material fact and denies that there was a response from the Postal Service that complies with FOIA.  In addition, Plaintiff was denied supporting

documents and  investigative documents pertaining to the above-identified documents.

3.       **Plaintiff disputes that Documents were withheld and released by these offices with redactions pursuant to Exemptions 2, 5, 6, 7 C), 7(D) and 7(E).**  As shown in plaintiff's opposition to defendant's renewed motion for summary judgment, Defendant improperly withheld documents as there was no exemption that would permit them to refuse to provide the documents to Plaintff.

4.       **Plaintiff disputes that:** Efforts were made by Human Resources and the Inspection Service to segregate and release all reasonably segregable records. Attachment 1 at ¶ 22; Attachment 2 at ¶ 23.

Respectfully submitted,

_____/s/    William P. Farley_____
William P. Farley 466280
Law Office of William P. Farley P.C.
1350 Connecticut Avenue, N.W.
Suite200
Washington, D.C. 20036
(202) 775-1550 x-115
Counsel for Plaintiff