## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED AMERICA FINANCIAL,
INCORPORATED,

     Plaintiff,

        v.

POSTMASTER GENERAL JOHN E. POTTER,
U.S. POSTAL SERVICE,

     Defendant.

Civil Action No.  06-1023 (JDB)

## MEMORANDUM OPINION

Plaintiff United America Financial, Inc. ("UAF") brings this action against the head of the

United States Postal Service ("Postal Service" or "USPS") under the Freedom of Information Act

("FOIA"), 5 U.S.C. § 552.  UAF submitted a FOIA request to the USPS seeking disclosure of

documents that concern allegations that UAF was engaged in an identity theft scam involving

USPS employees. In response, the Postal Service conducted a search for responsive documents

from its Compensation Office, Inspection Service, and Office of Inspector General, and then it

made a series of partial productions at various stages of this litigation.  See United Am. Fin. Inc.

v. Potter, 531 F. Supp. 2d 29 (D.D.C. 2008) ("UAF"); Order at 2-3 (filed Mar. 5, 2009).  The

USPS invoked several FOIA exemptions to withhold hundreds of pages of documents in whole

or in part but subsequently reevaluated those decisions and made additional disclosures.  Now,

after two rounds of cross-motions for summary judgment, the parties have narrowed the dispute

to discrete redactions in seventeen documents comprised of twenty-one pages, as well as one

document the plaintiff claims is missing.  Currently pending before the Court are the parties'

latest renewed cross-motions for summary judgment.[1]  For the reasons set forth below, the Court

concludes that many of the redactions in the remaining documents at issue are supported by

Exemptions 5, 6, 7(C), and 7(D), and will grant defendant's motion in those respects.  However,

some of the redactions pursuant to those exemptions are not adequately supported, and plaintiff's

motion will be granted for those portions of the documents.

## BACKGROUND

The factual background of this case is set out at length in the Court's earlier opinion, and

is only briefly revisited here.  Plaintiff submitted a FOIA request to the USPS on February 1,

2006, seeking information related to an article circulated among Postal Service employees on or

about January 27, 2006 entitled "A dropped PIN: Nigerian identity thieves targeting USPS

employees."  See UAF, 531 F. Supp. 2d at 36.  The article warned employees that "Nigerians

posing as representatives of the Office of Federal Employees Group Life Insurance (OFEGLI)

have been asking employees for their Social Security numbers, Employee IDs and USPS PINs."

Id.  Plaintiff contends that the government improperly labeled its salespeople as "identity thieves"

simply because they were black and had Nigerian names.  See Pl.'s Mem. at 2.  Plaintiff sought

---

[1]  For ease of reference, the Court will refer to defendant's memorandum in support of its renewed motion for summary judgment, filed on April 13, 2009, as "Def.'s Mem."; to plaintiff's memorandum in support of its renewed motion for summary judgment and opposition to defendant's motion, filed on June 10, 2009, as "Pl.'s Mem."; to defendant's opposition to plaintiff's motion and reply to plaintiff's opposition, filed on July 6, 2009, as "Def.'s Opp'n"; and to plaintiff's reply to defendant's opposition, filed on August 5, 2009, as "Pl.'s Reply."

Defendant has also submitted declarations from the following USPS offices and their representatives describing the justifications for the withholdings at issue in this round of cross-motions: for the Office of Inspector General, Betsy Cuthbertson and Jeremy Kirkland; for the Inspection Service, Mildred Baxter; and for the Compensation Office, Jane Eyre.  Defendant also has included supplemental declarations from Cuthbertson and Baxter.  The Court will henceforth refer to the declarations (including supplemental declarations) solely by the declarant's last name, e.g., Cuthbertson Decl. and Cuthbertson Supp. Decl.

public disclosure of documents surrounding the investigation to support that contention.  Id.

Three offices within the USPS generated responsive information: (1) the Office of Inspector General ("OIG"), which was considered the office likely to have an investigative file relating to the subject of plaintiff's request; (2) two divisions of the Inspection Service, which conducts criminal, civil, and administrative investigations; and (3) the Compensation Office in the Human Resources Department at headquarters, as the office responsible for generating and posting the article.  See UAF, 531 F. Supp. 2d at 36.  During the first round of briefing, the OIG reported that it had located an investigative file relating to UAF, which it withheld in its entirety pursuant to Exemption 7(A).  Id. at 37.  The Inspection Service located 176 pages of responsive documents, initially releasing five pages with redactions, and subsequently releasing 21 pages in full and an additional 26 redacted pages, withholding the remainder pursuant to Exemptions 2, 5, 6, 7(A), 7(C), 7(D), and 7(E).  Id.  The Compensation Office reported that it had located eleven pages of responsive documents, releasing five pages in full and one redacted page, while withholding the remainder pursuant to Exemptions 2, 3, 5, 6 and 7(C).  Id.

The Court held that the record was insufficient to support the exemptions claimed by the OIG and the Inspection Service, denied defendant's motion for summary judgment without prejudice, but provided defendant an opportunity to support the exemptions with a more detailed Vaughn index.  Id. at 38-41.  With respect to the documents withheld by the Compensation Office, the Court granted in part and denied in part defendant's motion for summary judgment and, among other things, directed defendant to provide a more detailed justification for withholding the identities of USPS employees involved in responding to the alleged identity theft situation.  Id. at 41-48.

The Court recognized then that one of the main issues in the case would be defendant's

withholding of names of USPS personnel involved in responding to the perceived identify theft situation:

> Plaintiff represents that its primary interest is in obtaining the names of the persons spreading the allegations that UAF is involved in identity theft, and that it may pursue a civil rights or other lawsuit for which it would need the employees' names. Defendant asserts that these employees have a strong privacy interest in the nondisclosure of their names, and thus invokes Exemptions 6 and 7(C) to justify withholding their names.

UAF, 531 F. Supp. 2d at 45 (citations omitted). The Court cautioned defendant that all USPS employees could not be treated categorically alike -- some were victims, while others were involved in responding to the allegations against UAF -- and that context matters in assessing the privacy interest. Id. at 46. The Court further emphasized that "[a] 'bare conclusory assessment' that public disclosure of an employee's name would constitute an invasion of personal privacy is insufficient to support the existence of a privacy interest" under Exemptions 6 and 7(C), and that "an agency must at least explain the ground for concluding that there is some factual basis for concerns about harassment, intimidation, or physical harm." Id. at 47 (citations omitted).

Following issuance of the Court's first opinion, the parties filed renewed cross-motions for summary judgment, but due to the evolving state of document disclosures and lack of communication between the parties, the record was insufficient to allow resolution on the merits, and both motions were denied without prejudice. See Order at 2-3 (filed Mar. 5, 2009).

Now, at this third round of briefing, the issues have crystallized considerably:

- The OIG has 137 pages of responsive records. Thirty-four pages were released in their entirety, and 103 pages were released with redactions pursuant to FOIA Exemptions 6, 7(C), and 7(D). See Def.'s Mem. at 2.

- The Inspection Service has focused on 118 pages of responsive records.[2] Of this

---

[2] In the first round of cross-motions for summary judgment, the Inspection Service claimed to have located 176 pages of responsive documents, of which it released at most 52

(continued...)

set of documents, 40 pages are duplicates, 28 pages were released with redactions based on Exemptions 5, 6, 7(C), and 7(D), and 50 pages were withheld in full under Exemptions 6, 7(C), and 7(D).  See id. at 5-6 & Baxter Decl. ¶ 8.

• The Compensation Office released the four emails previously reviewed by the Court, with "minimal" redactions under Exemption 7(C) to withhold the names of law enforcement personnel.  See id. at 8.

Defendant has moved for summary judgment with respect to each of the claimed exemptions.

In many respects, plaintiff does not oppose defendant's motion for summary judgment. Plaintiff no longer seeks to litigate any redactions made by the Compensation Office (see Pl.'s Mem. at 8-9 & n.12), nor does plaintiff generally seek the documents withheld in their entirety or information recognized as highly private by the Court's earlier decision (e.g., victims' social security numbers, home phone numbers, and home addresses).  Indeed, plaintiff's response to defendant's motion puts in issue withholdings from only seventeen documents -- ten redacted documents from the OIG, and seven redacted documents from the Inspection Service -- and one document plaintiff alleges is missing.  These documents consist largely of emails, fax cover sheets, and interview and incident reports that were generated during a criminal investigation into plaintiff's activities,[3] and that remain redacted primarily to withhold the identities of Postal Service employees who played different roles in the UAF investigation, as well as

---

[2](...continued)
pages in full or redacted form.  See UAF, 531 F. Supp. 2d at 37.  Assuming the Inspection Service in this round of cross-motions is excluding the already-released pages, there should be at a minimum 124 pages at issue, not 118.  This discrepancy is immaterial, however, because plaintiff only challenges a few specific redactions at this stage.  See Pl.'s Mem. at 3-8.

[3]  The criminal investigation was closed on or about May 2006 without referral to a U.S. Attorney's office for prosecution.  See Kirkland Decl. ¶ 2.  The Postal Service also considered civil fraud charges against plaintiff, but the U.S. Attorney's Office for the District of Columbia decided not to pursue such charges, and the matter was closed on or about August 2007.  Id. ¶ 3.

communications characterized as "deliberative" in nature.[4]  Hence, the renewed cross-motions for

summary judgment focus on whether the redactions in this limited subset of documents have

been legitimately made under Exemptions 5, 6, 7(C), or 7(D).

## STANDARD

"Summary judgment is the preferred method of resolving cases brought under FOIA."

Evans v. U.S. Office of Personnel Mgmt., 276 F. Supp. 2d 34, 37 (D.D.C. 2003); see also

Summers v. Dep't of Justice, 140 F.3d 1077, 1080 (D.C. Cir. 1998).  The standard is a familiar

one: summary judgment is appropriate when the pleadings and the evidence demonstrate that

"there is no genuine issue as to any material fact and that the moving party is entitled to judgment

---

[4]  The Court will adopt the citation format utilized by the parties to refer to the FOIA documents that remain in issue, and hence will refer to those documents by an abbreviated descriptive title and the ECF number of the document. The OIG documents that remain in issue are:

- Email dated Feb. 6, 2006 (ECF #42-5, p. 33)
- Email dated Jan. 27, 2006 (ECF #42-5, p. 35)
- Email dated Jan. 24, 2006 (ECF # 42-5, p. 36)
- Fax Sheet dated Jan. 26, 2006 (ECF # 42-5, p. 37)
- Email dated Feb. 13, 2006 (ECF #42-5, p. 51)
- Names of Newsletter Staff (ECF # 42-5, p. 64)
- Articles on Alleged Identity Theft (ECF #42-5, p. 65-66)
- Mem. of Interview on Jan. 20, 2006, Case No. 06UIPA1109C11CT (ECF #42-5, p. 103)
- Mem. of Interview on Jan. 20, 2006, Case No. 06UIPA1109C11CT (ECF #42-5, p. 105)
- Mem. of Interview on Mar. 2, 2006, Case No. 06UIPA1109C11CT (ECF #42-5, p. 136)

The Inspection Service documents that remain in dispute are:

- Incident Report dated Jan. 27, 2006 (ECF #42-6, p. 7-8)
- Fax dated Jan. 30, 2006 (ECF #42-6, p. 10; Baxter Supp. Decl. Ex. 1)
- Sheet labeled "Toledo 12:30 am," undated (ECF #42-6, p. 12)
- Email dated Jan. 27, 2006 (ECF #42-6, p. 14)
- Sheet labeled "Postal Ease (4 Digit)," undated (ECF #42-6, p. 17)
- Alleged Missing Email dated January 24, 2006
- Email dated Feb. 9, 2006 (ECF #42-6, p. 29-30)
- Email dated Jan. 30, 2006 (ECF #42-6, p. 39-40)

as a matter of law." Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may successfully support its motion by identifying those portions of "the pleadings, the discovery and disclosure materials on file, and any affidavits" which it believes demonstrate the absence of a genuine issue of material fact.  Fed. R. Civ. P. 56(c); see Celotex, 477 U.S. at 323.

In determining whether there is a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position.  Id. at 252.  By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment.  Celotex, 477 U.S. at 322.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted).  Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]."  Id. at 252.

In the FOIA context, the Court may award summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations when they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).  The declarations and accompanying Vaughn index (see Vaughn v. Rosen, 484 F.3d 820, 827-28 (D.C. Cir. 1973))

serve three important functions:

> [I]t forces the government to analyze carefully any material withheld, it enables
> the trial court to fulfill its duty of ruling on the applicability of the exemption, and
> it enables the adversary system to operate by giving the requester as much
> information as possible, on the basis of which he can present his case to the trial
> court.

Judicial Watch, Inc. v. Food and Drug Admin., 449 F.3d 141, 146 (D.C. Cir. 2006).  Thus, the

agency affidavits or declarations must contain "reasonable specificity of detail rather than merely

conclusory statements."  Consumer Fed'n of Am. v. Dep't of Agric., 455 F.3d 283, 287 (D.C. Cir.

2006) (citations and internal quotation marks omitted); see also Kimberlin v. Dep't of Justice,

139 F.3d 944, 950 (D.C. Cir. 1998) (explaining that declarations must be sufficiently detailed "to

permit adequate adversary testing of the agency's claimed right to an exemption").

## ANALYSIS

The focus of the Court's analysis at this stage of the litigation has become four FOIA

exemptions -- Exemptions 5, 6, 7(C), and 7(D) -- and their applicability to discrete redactions in

seventeen documents.  The standards that govern the exemptions were set forth in large part in

the first UAF opinion.  Before evaluating the validity of the particular redactions now at issue,

the Court recaps the legal principles that guide its evaluation.

### I.     Legal Standards for Exemptions

#### A.     Exemption 5

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which

would not be available by law to a party other than an agency in litigation with the agency."  5

U.S.C. § 552(b)(5).  This exemption incorporates the deliberative process privilege, which

"protects the decisionmaking process of government agencies and encourage[s] the frank

discussion of legal and policy issues by ensuring that agencies are not forced to operate in a

-8-

fishbowl." Mapother v. Dep't of Justice, 3 F.3d 1533, 1537 (D.C. Cir. 1993) (quoting Wolfe v. Dep't of Health and Human Servs., 839 F.2d 768, 773 (D.C. Cir. 1988) (en banc)).  Two requirements apply: first, the information must be predecisional, and second, it must be deliberative.  See Judicial Watch v. FDA, 449 F.3d at 151.  Information is "predecisional if it was generated before the adoption of an agency policy and deliberative if it reflects the give-and-take of the consultative process," such as by disclosing advice or recommendations or revealing factual information that would so expose the deliberative process that it must be covered by the privilege.  Id. (internal citations omitted); see also Wolfe, 839 F.2d at 774.

**B.      Exemption 6**

Exemption 6 shields from disclosure information in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The "clearly unwarranted" language requires a "balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information."  Lepelletier v. FDIC, 164 F.3d 37, 46 (D.C. Cir. 1999) (citations omitted).  "'The only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know what their government is up to.'"  Id. (quoting U.S. Dep't of Defense v. Fed. Labor Relations Auth., 510 U.S 487, 497 (1994)).

**C.      Exemption 7(C)**

Exemption 7(C) authorizes the withholding of "records or information compiled for law enforcement purposes" where disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  "In assessing whether

records are compiled for law enforcement purposes, . . . the focus is on how and under what circumstances the requested files were compiled, . . . and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." Tax Analysts v. IRS, 294 F.3d 71, 78 (D.C. Cir. 2002) (quoting Jefferson v. Dep't of Justice, 284 F.3d 172, 176-77 (D.C. Cir. 2002)).  As under Exemption 6, the court must balance the interest in protecting an individual's private affairs against the public's right to governmental information.  Davis v. Dep't of Justice, 460 F.3d 92, 97 (D.C. Cir. 2006).  "[T]he privacy inquiry of Exemptions 6 and 7(C) [is] essentially the same," see Judicial Watch, Inc. v. Dep't of Justice, 365 F.3d 1108, 1125 (D.C. Cir. 2004), although Exemption 7(C) sets a slightly lower threshold for withholding because it "requires only that disclosure 'could reasonably be expected to constitute an unwarranted invasion of personal privacy,'" see Stonehill v. Internal Revenue Serv., 534 F. Supp. 2d 1, 11 (D.D.C. 2008) (quoting Exemption 7(C)), aff'd, 558 F.3d 534 (D.C. Cir. 2009).  "The addition of the reasonable expectation language, coupled with the omission of the term 'clearly,' in Exemption 7(C) signals a somewhat lower bar for withholding material." Id.

> **D.**     **Exemption 7(D): Law Enforcement Records from Confidential Sources**

Exemption 7(D) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D).  To invoke Exemption 7(D), "an agency must

show that an individual provided information to the government for the purpose of a criminal or

national security investigation under either (1) an express assurance of confidentiality or (2)

under circumstances that support an implied assurance of confidentiality."  Akin, Gump, Strauss,

Hauer & Feld, L.L.P. v. U.S. Dept. of Justice ("Akin Gump"), 503 F. Supp. 2d 373, 384 (D.D.C.

2007).  Also relevant to the Exemption 7(D) inquiry in this case is the Inspector General Act

("IGA"), which applies to the USPS and provides, in relevant part, that "[t]he Inspector General

shall not, after receipt of a complaint or information from an employee, disclose the identity of

the employee without the consent of the employee, unless the Inspector General determines such

disclosure is unavoidable."  See 5 U.S.C. app. 3 § 7.

## II.     Redactions from OIG Documents

### A.      The OIG Emails

Defendant contends that Exemptions 6, 7(C), and 7(D) apply to the redacted portions of

OIG emails because they contain the names and identifying information of inspectors and agents

involved in the investigation into UAF's activities and identifying information of employees who

provided evidence to them.  See Def.'s Mem. at 2-5; Cuthbertson Decl. ¶ 4.  Plaintiff argues that

"the people sending and receiving the emails are not identified enough to know whether they fit

within an exemption" and opposes the withholding of the identifying information, which it calls

"factual matters concerning dates, government phone numbers and states where the emails

originated."  Pl.'s Mem. at 4-5.  Plaintiff contends that the release of one of the emails at issue,

almost in its entirety, by the Compensation Office demonstrates that there is no legitimate reason

for withholding this type of information.  See Pl.'s Mem. Ex. 6 at 4 (citing ECF #42-7, p. 4).

The emails pose two distinct legal questions.  The first is whether the defendant must

disclose the names and associated identifying information of employees who conducted the

investigation.[5]  The second is whether defendant must disclose the names and other identifying

information of employees who provided information to the OIG as part of the investigation.

1.      **The Distinctions Between Different Types of USPS Employees**

a.      **Identifying Information of Investigators and Inspectors**

Because the threshold to justify withholding information is lower under Exemption 7(C)

than under Exemption 6, the Court will first consider whether Exemption 7(C) justifies the OIG's

redactions.  The first inquiry is whether the document was "compiled for law enforcement

purposes."  See 5 U.S.C. § 552(b)(7).  "A 'law enforcement purpose' exists where there is a

'rational nexus' between the compiled document and a law enforcement duty of the agency and

where there is 'a connection between an individual or incident and a possible security risk or

violation of federal law.'" Judicial Watch, Inc. v. U.S. Dep't of Commerce, 337 F. Supp. 2d 146,

179 (D.D.C. 2004) (quoting Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice, 331 F.3d 918, 926

(D.C. Cir. 2003)).  The emails refer to events pertaining to defendant's investigation of plaintiff's

activities involving USPS employees.  The OIG considered both criminal and civil fraud charges

potentially stemming from plaintiff's activities until August 2007, although no charges were ever

brought.  See Kirkland Decl. ¶ 2.  Hence, the emails fall within FOIA's law enforcement

purposes requirement under Exemption 7.  See Tax Analysts, 294 F.3d at 77.  Indeed, based on

the Kirkland and Cuthbertson declarations and the context of the documents, the Court has

determined that all of the OIG documents at issues were compiled for a law enforcement

purpose.

---

[5]  Where defendant has sought to protect an individual's identity, defendant has also
withheld both the name and identifying information (like pronouns, dates and locations) to
prevent "disclosure by deduction."  See Def.'s Opp'n at 9.  Whether the latter identifying
information is properly withheld turns on whether the individual's identity is properly withheld.

Neither of the Cuthbertson declarations, however, establish that the investigators and inspectors have a privacy interest that would bring their identifying information within Exemption 7(C).  "[A]n agency must at least explain the ground for concluding that there is some factual basis for concerns about 'harassment, intimidation, or physical harm.'"  See UAF, 531 F. Supp. 2d at 47 (citing Judicial Watch v. FDA, 449 F.3d at 153).  But the OIG declarations set forth no factual basis to support any concerns of harassment, intimidation, or physical harm.  In the first Cuthbertson declaration, the entirety of the explanation of the privacy interest is as follows:

> Name of Inspector General Special Agents and Inspection Service Inspectors. These names of low-ranking agents are redacted under Exemption 7(C).  Absent a demonstration of significant misconduct on the part of law enforcement personnel, they retain a substantial privacy interest.

Cuthbertson Decl. ¶3(f).  Cuthbertson's supplemental declaration contains no factual proffer that might bolster this conclusory statement.  She adds only that she applied a balancing test that assessed the public interest, and then makes another conclusory statement that redactions were necessary to protect the employees involved in the investigation from harassment.  Cuthbertson Supp. Decl. ¶¶ 4-5 ("I redacted information that would identify Postal employees who were involved in the investigation to protect them from unwarranted questions and harassment.").  These statements are far too conclusory to support a finding that these employees have a privacy interest.[6]  See Stonehill, 534 F. Supp. 2d at 12 (holding that a "bare conclusory assessment" that

---

[6]  Indeed, the Court cautioned defendant early in this case that "the privacy interests of government employees involved in an investigation are less than for private citizens who are involved . . . because there is no suspicion of wrongdoing on their part, and, unlike private citizens, their continued cooperation is not at stake."  See UAF, 531 F. Supp. 2d at 47.  Nothing in defendant's latest submission explains why, notwithstanding that diminished expectation of privacy, the names of the Postal Service inspectors and investigators involved in the UAF investigation should be withheld under Exemption 7(C).

disclosing a name would violate that person's privacy is insufficient).

Weighing the interest in privacy against the public interest in disclosure also favors the plaintiff.  This Court has previously recognized a public interest "in disclosing the names of employees and agents who worked on [a] case since they may be able to provide valuable information in the context of a related civil suit.'"  Id. at 47-48 (quoting Stonehill, 534 F. Supp. 2d at 13).  Hence, although plaintiff's subjective interest in finding out the source of the "Nigerian identity theft" allegations is not relevant to the public interest inquiry, the potential use of these documents in a potential civil suit does constitute a recognized public interest under Exemption 7(C).  Id. at 48.  Therefore, defendant may not withhold the names of inspectors and investigators or other information that may identify them.[7]

### b.   Identifying Information of Postal Service Employees Who Cooperated with the Investigation

The Postal Service contends that Exemption 7(D) and the Inspector General Act preclude the agency from disclosing information identifying USPS employees who made a complaint or report to the Inspector General because the IGA provides that such complaints are to be anonymous.  See Def.'s Mem. at 5.  UAF responds that "the government does not claim the author of the e-mail[s] gave confidential information nor did the [sic.] claim the author, or every recipient, was an inspector or involved in any way in the investigation," and that "[c]onfidential sources have not been identified," see Pl.'s Mem. at 4, 14.

The central question under Exemption 7(D) is whether identifying individuals who supplied factual information to OIG to further the criminal investigation would reveal a confidential source.  The IGA provides that the Inspector General "shall not, after receipt of a

---

[7]  The Court does not reach the applicability of Exemption 6, having found that defendant's claim fails to meet the less stringent standards of Exemption 7(C).

complaint or information from an employee, disclose the identity of the employee" without that employee's consent, <u>see</u> 5 U.S.C. app. 3 § 7, and several redactions in the emails were made to protect the identity of USPS employees who provided information to the OIG during the criminal investigation of plaintiff's activities.  <u>See</u> Cuthbertson Decl. ¶ 3(a); Kirkland Decl.¶ 3.[8]  The Court has determined that these circumstances -- the promise of confidentiality in the IGA and the pendency of the criminal investigation -- constitute "circumstances that support an implied assurance of confidentiality." <u>see</u> <u>Akin Gump</u>, 503 F. Supp. 2d at 384, and, hence, information identifying the source will be considered properly redacted under Exemption 7(D).

**2.      Application of These Principles to the Emails**

The Court provides a document-by-document assessment, applying these principles to the emails at issue, for clarity of the record.

*Email dated February 6, 2006 (ECF #42-5, p. 33)*.  This document must be released in full.  Although defendant purports to claim Exemptions 6, 7(C) and 7(D) for the OIG version of this email, defendant released virtually the entire email to UAF through the Compensation Office.  <u>See</u> ECF #42-7, page 4; Pl.'s Mem. at 6-8.  The only items withheld, at this point, are the names of other investigators and inspectors involved in the investigation, which, as explained above, the record does not support withholding under Exemption 6 or 7(C).

*Email dated January 27, 2006 (ECF #42-5, p. 35)*.  This document must be released in full.  Again, defendant purports to claim Exemptions 6, 7(C) and 7(D) for the OIG version of this email, but defendant has already released the entire email to UAF, save one inspector's name, through the Compensation Office materials.  <u>See</u> ECF #42-7, page 2; Pl.'s Mem. at 8.  The

---

[8] The emails at issue were all generated in January and February of 2006, during the pendency of the criminal investigation.  <u>See</u> Kirkland Decl. ¶ 3 (stating that the criminal investigation was closed in May 2006).

inspector's name is not protected.

   *Series of Emails dated January 24, 2006 (ECF #42-5, p. 36).*[9]  This document is
comprised of three emails that concern the agency's attempt to obtain more information about
UAF's alleged unauthorized solicitation of Postal Service employees from one particular
individual.  The name of the employee providing information to the investigators is protected by
Exemption 7(D) -- that is, the author of the second of the three emails.  His name and identifying
information is protected to the extent such information is referenced in the other two emails.  The
names of the other employees -- that is, those on the "cc:" list and the inspector to whom the
source is reporting, must be disclosed however.

   *Emails dated Feb. 10 and 13, 2006 (ECF #42-5, p. 51)*.  This page consists of two emails,
one responsive to the other.  The February 13, 2006 email "is from the same IG Act-protected
source" just discussed above, and was "sent to an OIG agent who solicited the information."
Def.'s Opp'n at 12.  The circumstances of this email, combined with the Inspector General Act,
again establish that the employee was providing information to the OIG under an implied
assurance of confidentiality.  Hence, his identifying information is properly redacted.  The
identifying information of the inspectors involved in the email communications is not protected,
however, and must be disclosed.[10]  See 5 U.S.C. § 552(b)(6), (7)(C).

   **B.     Fax Sheet Dated January 26, 2006 (ECF #42-5, p. 37)**

   Defendant invokes Exemptions 6, 7(C), and 7(D) for this responsive record page, which
contains "three accounts from Postal employees [that] describe UAF activities."  Def.'s Opp'n at

---

   [9]  Plaintiff addresses ECF #42-5 pages 36 and 37 in the same argument, but they appear to
be different items subject to different analyses.

   [10]  The OIG, perhaps inadvertently, has already left unredacted the name of one postal
inspector on this page.

11.  The information redacted involves two statements made by alleged victims of identity fraud, and the statement of a supervisor providing an eyewitness account of UAF activities.  The Court previously held that the names of victims are properly redacted under Exemption 6 because "individuals have a privacy interest in the nondisclosure of their names . . . in connection with financial information" and because the public interest would not be furthered by releasing the names of government employees who had made certain financial choices.  See UAF, 531 F. Supp. 2d at 42-43 (citing Lepelletier, 164 F.3d at 47).  Hence, the information identifying the victims on this fax sheet was properly redacted under Exemption 6.  The supervisor likewise supplied information to the OIG in cooperation with the criminal investigation and under circumstances giving rise to an implied assurance of confidentiality.  Hence, the supervisor's name also is properly redacted under Exemption 7(D).  See Akin Gump, 503 F. Supp. 2d at 384.

C.      Names of Newsletter Staff (ECF #42-5, p. 64)

Defendant has redacted the identifying information for the editor, managing editor, and manager of the USPS News Link, a web-based newsletter.  The basis for the redaction is not clear -- the document has Exemption 6 written on it, but defendant's opposition refers to Exemption 7(C).  See Def.'s Opp'n at 12.  Regardless of which privacy-based exemption defendant claims, however, this information is of "low-ranking postal officials," see id., and, like the names of postal inspectors discussed earlier, defendant has not offered anything more than conclusory statements as to why this information should not be public.  See Stonehill, 534 F. Supp. 2d at 12; see also UAF, 531 F. Supp. 2d at 47 (expressing skepticism that defendant could justify withholding the names of persons involved in drafting this article).  The absence of any privacy interest is underscored by the public availability of the names of the web editor, managing editor, and manager on the current version of the USPS News Link website.  See Pl.'s

-17-

Mem. at 5 (citing https://liteblue.usps.gov/news/link/2006jan_archive.htm).[11]  Defendant must

release the page with the editorial staff information in full.

### D.      Articles about Alleged Identity Theft (ECF #42-5, p. 65-66)

There are two types of information redacted from the Postal Service articles under

Exemption 6: first, the name of an "individual in the OIG Consolidated Security Office who was

assigned to collect information from employees" and, second, other names from an article that

defendant contends is "not responsive to Plaintiff's FOIA request."  See Def.'s Opp'n at 13.  The

identifying information of an OIG inspector is not covered by Exemption 6 simply because he is

acting in a law enforcement capacity, as the Court discussed earlier.  Defendant claims that the

other redacted portions are "some content from articles falling outside the scope of the FOIA

request," see Cuthbertson Decl. ¶ 4, but provides no factual basis to permit the Court to conclude

that disclosing that content would constitute a "clearly unwarranted invasion of personal privacy"

as Exemption 6 requires, see 5 U.S.C. § 552(b)(6).  Defendant's decision not to redact

information from other articles that are "non-responsive" further weakens its argument.[12]  Thus,

the material on these two pages is not protected by Exemption 6 and must be disclosed.

### E.      Memoranda of Interviews (ECF #42-5, p. 103, 105, 136)

Plaintiff challenges the OIG's decision to redact, under Exemptions 6, 7(C), and 7(D),

different pieces of information from three memoranda summarizing three different interviews

---

[11]  Defendant insists that the USPS News Link website is not publicly available.  See Def.'s Mem. at 12.  This contention is belied by plaintiff's access to it and the Court's own ability to access the webpage -- and editor information -- referenced by plaintiff.

[12]  Plaintiff claims that the article at issue, like the editors' names, is publicly available on the Internet.  The copy of the article attached to plaintiff's exhibits, however, differs in part from the article in defendant's FOIA production -- in particular, it omits the sentence encouraging employees to contact the OIG Consolidated Security Office -- and it was printed from a webpage dated July 14, 2009.  In light of the Court's determination that the inspector's name is not covered by Exemption 6, the Court need not resolve whether the article at issue is now publicly available.

concerning defendant's investigation of UAF.  See Pl.'s Mem. at 5-6 (citing ECF # 42-5, pages 103, 105, and 136).  Defendant's declarations establish that, with one exception, the redactions were made to protect information that would tend to identify victims or reveal their personal financial and employment information.  See Cuthbertson Decl. ¶ 4.  This includes the case name on each memorandum because the case name is "the name of a primary complainant."  Cuthbertson Supp. Decl. ¶ 10.

Defendant acknowledges, however, that it also redacted the name of the IG Special Agent who conducted the interview, pursuant to Exemption 7(C).  Like the names of the other inspectors and investigators, however, the identity of the Special Agent is not protected by Exemptions 6 or 7(C) because the record does not demonstrate that disclosure of his name could reasonably be expected to result in an unwarranted invasion of personal privacy.  Hence, the Special Agent's name must be disclosed.

III.    **Redactions from Inspection Service Documents**

A.      **Redactions Concerning Law Enforcement Personnel Names**

Like the OIG, the Inspection Service also has withheld the names of inspectors and investigators to protect their interest in privacy.  The explanation in support of the asserted privacy interest is lengthier than the OIG's but still falls short of the detail necessary to support the withholdings.  The Baxter declaration states, in relevant part:

> The reason for withholding the Inspector names is because of the fear of harassment.  The publicity associated with the release of a postal inspectors' identity in connection with a particular law enforcement investigation could rekindle animosity toward that postal inspector. . . . [A]ssignments of postal inspectors to any particular investigation are not by choice. Publicity (adverse or otherwise) regarding any particular investigation they have been assigned to may seriously prejudice their effectiveness. . . . The privacy consideration is also to protect postal inspectors, as individuals, from unnecessary, unofficial questioning as to the conduct of this or other investigations. . . . [Individuals aggrieved by a

> search or arrest] carry grudges which last for years and they <u>may</u> seek any excuse
> to harass the postal inspector they deem responsible [for the search or arrest].

Baxter Decl. ¶¶ 6, 7 (emphasis added).  While the Inspection Service raises legitimate concerns,

it "offers no explanation whatsoever as to why <u>this</u> case presents one of those identified

circumstances" of a risk of harassment or animosity, <u>see</u> <u>Stonehill</u>, 534 F. Supp. 2d at 10

(emphasis added), beyond one offhand assertion that "UAF was displeased with the

investigation."  <u>See</u> Baxter Supp. Decl. ¶ 4.[13]  By comparison, in <u>Judicial Watch v. FDA</u>, the

court found that the FDA asserted a compelling privacy interest in not disclosing the names of

individuals who worked on an abortion drug when "the FDA cited the danger of abortion-related

violence . . . evidence of abortion clinic bombings . . . [and] websites that encourage[d] readers to

look for [the drug's] manufacturing locations and then kill or kidnap employees."  <u>See</u> 449 F.3d

at 153.  Because "FOIA mandates a strong presumption in favor of disclosure," <u>see</u> <u>Multi Ag</u>

<u>Media LLC v. Dep't of Agric.</u>, 515 F.3d 1224, 1227 (D.C. Cir. 2008) (internal quotations

omitted), and because the Baxter declaration "does not provide a factual basis for the conclusion

that harassment or intimidation would result from disclosure" of the identity of the inspectors at

issue here, <u>see</u> <u>UAF</u>, 531 F. Supp. 2d at 47, withholding the names of inspectors and

investigators was improper.

     Again, to provide a complete record, the Court outlines here the specific redactions that

are challenged by plaintiff and covered by this holding.[14]

_____

[13]  The portions of the record that Baxter cites for this assertion note that plaintiff had
filed a FOIA request and was considering legal action, not that there was any factual basis to
believe inspectors would suffer harassment.  <u>See</u> Def.'s Mem. Ex. 5 at 30, 47.

[14]  Plaintiff contends that the Inspection Service failed to produce a January 24, 2006,
email responsive to its FOIA request, which it became aware of through an OIG disclosure.  <u>See</u>
Pl.'s Mem. at 8 (noting that an OIG email states that a copy is being sent to the Inspection

(continued...)

*Incident Report dated January 27, 2006 (ECF #42-6, pp. 7-8)*.  Plaintiff challenges the redaction of the name in the "Approved By" box at the bottom of the form and of the inspector name in the line stating "Present during . . . interview."  See Pl.'s Mem. at 6.  These names are not protected by Exemption 7(C) and must be released.

*Fax Cover Sheet dated January 30, 2006 (ECF #42-6, p. 10) & Missing Document (Baxter Supp. Decl. Ex. 1)*.  Plaintiff seeks the names of the sender and recipient of the facsimile, and questions whether defendant has disclosed the second page of the fax.  See Pl.'s Mem. at 6-7. Defendant confirms that the fax is to and from law enforcement personnel, and has attached the missing page to its opposition brief.  See Def.'s Opp'n at 17; Baxter Supp. Decl. Ex. 1, ¶ 4.  The missing page is "a 'Duty Response Worksheet' . . . providing information from postal inspector personnel to other postal law enforcement personnel," with only identifying information of postal law enforcement personnel withheld.  See Baxter Supp. Decl. ¶ 4.  The names of the inspectors on the fax cover sheet and the "Duty Response Worksheet" must be disclosed.

*Sheet labeled "Toledo 12:30 am" (ECF #42-6, p. 12)*.  Plaintiff challenges defendant's decision to withhold the names of two "low level postal service officials who were involved in the Inspection Service investigation," along with a phone number, on an otherwise blank sheet.

---

[14](...continued)
Service).  In response, defendant conducted a further search of the Inspection Service files, but was unable to locate a copy of this email in its records.  See Baxter Supp. Decl. ¶ 8 ("I have re-searched the Inspection Service documents and although it may have existed at one time, it did not exist when I performed my searches for records.").  Based on the Baxter declarations, the Court is satisfied that the Inspection Service conducted an adequate search.  In any event, plaintiff has now obtained that email through the OIG, and hence there is no further production to be ordered.

See Baxter Supp. Decl. ¶ 5.[15]   The inspectors' names and the phone number must be released.

*Email dated January 27, 2006 (ECF #42-6, p. 14).*  Plaintiff challenges defendant's

decision to withhold the name of a postal inspector who circulated an article on "Nigerian

identity thieves" to all email users in defendant's Northern Ohio office.  See Pl.'s Mem. at 7.  The

inspector's name must be disclosed.

### B.      Redactions Concerning Other Names and Identifying Information

### 1.      Sheet labeled "Postal Ease (4 Digit)" (ECF #42-6, p. 17)

Defendant claims the protection of Exemption 6 for "a . . . handwritten cell phone number

and the name of an unknown individual."  See Baxter Decl. ¶ 7; Def.'s Opp'n at 18.  The

"unknown individual" is apparently not a Postal Service inspector or investigator, and defendant

telephoned the number to confirm that it was an individual's private cell phone number.  See

Baxter Decl. ¶ 7.  Balancing the privacy interest of this unknown individual against the public

interest in disclosure, the Court finds that requiring release of this person's name and cell phone

number would be a "clearly unwarranted invasion of personal privacy" under Exemption 6, and

hence withholding this information is proper.[16]

---

[15]  The two employee names on this sheet are also described as "provid[ing] information
to the postal inspectors."  See Baxter Decl. ¶ 7.  Hence, it might be argued that their names should
be withheld under Exemption 7(D).  However, defendant has not asserted that exemption, and
the record suggests that these employees were not covered by the Inspector General Act.  See id.
¶ 7 (stating that Exemption 7(C) was asserted "to protect the names of and/or identifying data of
Inspection Service postal inspectors who were responsible for conducting, supervising, and/or
maintaining the investigative activities [concerning UAF].").

[16]  Plaintiff cursorily suggests that Exemption 6 does not apply because the document is
not "part of a personnel or medical file."  Pl.'s Mem. at 8.  However, Exemption 6 also applies to
"similar files," which has been broadly interpreted to encompass "information in [a] file [that]
applies to a particular individual."  E.g., Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32
(D.C. Cir. 2002) (citations and internal quotation marks omitted).

**2.   Email dated January 30, 2006 (ECF #42-6, p. 39)**

Defendant has made several redactions on this document based on Exemption 7(C), but the only ones challenged by plaintiff are redactions of any geographical information.  See Pl.'s Mem. at 12 ("the government has blacked out the geographical information that they didn't block in other e-mails" and UAF "asks that the information that is not names be released").  According to the Inspection Service, however, no geographical information exists on that page.  See Baxter Supp. Decl. ¶ 10.  Considering that plaintiff has opposed only the redactions of geographical information, there is no release of information to be ordered with respect to this document.

**C.   Emails dated February 9, 2006 (ECF #42-6, p. 29)**

Plaintiff challenges the redactions on the bottom half of this chain of emails, which defendant has withheld under Exemption 5.  See Pl.'s Mem. at 8.  The blacked-out information is correspondence among postal inspectors that "relates to speculative statements made in the deliberative process regarding proceeding with the investigation and possible charges."  See Baxter Decl. ¶ 7.  The Inspection Service declaration and the context of the withheld information show that this exclusion meets the two requirements for Exemption 5 -- that the information be both pre-decisional and deliberative.  See Judicial Watch, 449 F.3d at 151.  The email, dated February 9, 2006, predates the decisions to close the criminal investigation (May 2006) as well as the civil investigation (August 2007).  See Kirkland Decl. ¶ 3.  The Baxter declaration and the contents of the email -- a discussion of the inspectors' contacts with an insurance company in connection with responding to the suspected identity fraud -- shows that the information is deliberative.  See Baxter Decl. ¶ 7 ("The information redacted relates to speculative statements made in the deliberative process regarding proceeding with the investigation and possible charges.").  Hence, the Court concludes that the redacted information is deliberative and fits

within the exemption for "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  See 5 U.S.C. § 552(b)(5).

## CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part the cross-motions for summary judgment.  This opinion and the accompanying order mark the conclusion of this FOIA litigation after more than three years of fits and starts.  Defendant is entitled to summary judgment on all withholdings except for those enumerated in this opinion.  Plaintiff is entitled to summary judgment with respect to the documents and redactions the Court has described as insufficiently supported by the declarations.  A separate order accompanies this opinion.


    _____
            /s/
    JOHN D. BATES
    United States District Judge

Dated:  November 3, 2009