UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED AMERICA FINANCIAL, INCORPORATED**<br><br>Plaintiff,<br><br>v.<br><br>**POSTMASTER GENERAL JOHN E. POTTER, U.S. POSTAL SERVICE**<br><br>Defendant. | Civil Action No. 06-1023 (JDB) |

# MEMORANDUM OPINION

Plaintiff United America Financial, Inc. ("UAF") filed this Freedom of Information Act ("FOIA") suit against defendant Postmaster General John Potter seeking the release of documents related to the creation and circulation of an article designating certain insurance employees as "Nigerian identity thieves." Although this Court upheld in part defendant's decision not to disclose materials, the United States Postal Service ("USPS") was ordered to provide names that had been redacted in earlier disclosures. Plaintiff now moves for an award of $143,615.60 in attorney fees plus an additional $6,941.80 in fees for preparing the briefs for this motion. For the reasons discussed below, plaintiff's motion will be denied.

# BACKGROUND

The factual background of this case is set out at length in the Court's earlier opinions and will only briefly be revisited here. See United Am. Fin., Inc. v. Potter, 531 F. Supp. 2d 29 (D.D.C. 2008) ("UAF I"); United Am. Fin., Inc. v. Potter, 667 F. Supp. 2d 49 (D.D.C. 2009) ("UAF II"). Plaintiff submitted a FOIA request to the USPS on February 1, 2006, seeking

information related to an article circulated among Postal Service employees on or about January 27, 2006 entitled "A dropped PIN: Nigerian identity thieves targeting USPS employees." See UAF I, 531 F. Supp. 2d at 36; UAF II, 667 F. Supp. 2d at 53-54. Plaintiff argued that the government improperly labeled its salespeople as "identity thieves" simply because they were black and had Nigerian names. Under FOIA, plaintiff requested several documents related to the investigation.

In UAF II, after three rounds of briefing and several motions for summary judgments from both parties, this Court granted in part and denied in part the parties' cross motions for summary judgment. The Court found that certain documents containing information identifying USPS investigators and inspectors fell within the law enforcement purposes of FOIA Exemption 7(C) and thus were properly redacted, but also concluded that USPS failed to set forth a factual basis to support the claimed concerns of harassment, intimidation, or physical harm necessary to show a privacy interest in the case of several documents. UAF II, 667 F. Supp. 2d at 60. Hence, the Court identified ten documents, in total less than 20 pages, that defendant was required to provide to plaintiff with the specified redacted portions intact. See id. at 59-66.

Although USPS filed a notice of appeal on December 31, 2009, USPS ultimately moved to dismiss the appeal on March 10, 2010. See Pl's Mot. for Atty Fees and Costs (Pl's Mot.) at 8. On March 12, 2010, the D.C. Circuit dismissed defendant's appeal and on March 25, 2010 defendant provided plaintiff with the requested documents. Pl's Mot. at 8.

## STANDARD OF REVIEW

Section 552(a)(4)(E) of FOIA states that a court "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this

section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). In determining the reasonableness of attorney fees and costs under FOIA a court must first find that the plaintiff is *eligible* for attorney fees and then determine whether the plaintiff is *entitled* to the requested fees and costs. Weisberg v. U.S. Dep't of Justice, 848 F.2d 1265, 1268 (D.C. Cir. 1988); Burka v. U.S. Health & Human Serv., 142 F.3d 1286, 1288 (D.C. Cir. 1998).

Plaintiffs are considered eligible for attorney fees and costs if they can show they "substantially" prevailed in the litigation. See 5 U.S.C. § 552(a)(4)(E)(ii). Prior to the enactment of the 2007 OPEN Government Act amendments, "in order for plaintiffs in FOIA actions to become eligible for an award of [attorney] fees, they must have 'been awarded some relief by a court,' either in a judgment on the merits or in a court-ordered consent decree." Oil, Chemical and Atomic Workers v. Dep't of Energy, 288 F.3d 452, 456-57 (D.C. Cir. 2002) (quoting Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res., 532 U.S. 598, 603 (2001)).

Under the current FOIA provision, however, a plaintiff "substantially prevails" if the plaintiff has obtained relief either through "(1) a judicial order or an enforceable written agreement or consent decree; or (2) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii)(I)-(II). A plaintiff is considered to have "substantially prevailed" if the litigation "substantially caused the requested records to be released." N.Y.C. Apparel F.Z.E. v. U.S. Customs & Borders Prot. Bureau, 563 F. Supp. 2d 217, 221 (D.D.C. 2008) (internal citations omitted).

Once a plaintiff has been deemed eligible for attorney fees and costs under FOIA, the court must then consider four factors in determining the plaintiff's entitlement: (1) the public benefit

derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the government has a reasonable basis for withholding the requested information. Cotton v. Heyman, 63 F.3d 1115, 1117 (D.C. Cir. 1995). Section 552(a)(4)(E) does not operate to award attorney fees and costs to every successful litigant, but instead seeks "to remove the incentive for administrative resistance to disclosure requests based not on the merits of exemption claims, but on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation." Nationwide Bldg. Maint., Inc. v. Sampson, 559 F.2d 704, 711 (D.C. Cir. 1977). Hence, no one factor should be given "dispositive weight" and courts are encouraged to "search out and consider other factors that may be relevant to whether [attorney] fees should be awarded to a successful FOIA plaintiff." Id. at 714. Upon viewing all the relevant evidence and materials, "if the balance of these four factors favors the Government, then the claim for attorney fees is insubstantial." Poett v. U.S. Dept. of Justice, 2010 U.S. Dist. LEXIS 104900, * 13 ( D.D.C. 2010). With these principles in mind, the Court will address in sequence plaintiff's eligibility for and then entitlement to an award of fees.

## DISCUSSION

### A. Eligibility

Plaintiff is eligible for an award of attorney fees if it "substantially prevailed" in the FOIA litigation. 5 U.S.C. § 552(a)(4)(E); Tax Analysts v. U.S. Dept. of Justice, 965 F.2d 1092, 1093 (D.C. Cir. 1992). Here, defendant has conceded eligibility because "this litigation rendered a decision granting, in part, and denying, in part, USPS's Final Motion for Summary Judgment." See Def's Opp'n to Pl's Mot. for Atty's Fees and Costs of Suit ("Def's Opp'n") at 2, 11. The Court

therefore turns to the entitlement analysis.

## B. Entitlement

In assessing plaintiff's entitlement to attorney fees and costs, the Court looks to four non-exhaustive factors: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the government has a reasonable basis for withholding the requested information. Cotton, 63 F.3d at 1117. In balancing the four factors, courts are instructed that "none of these factors are dispositive," Piper v. U.S. Dep't of Justice, 339 F. Supp 2d, 13, 20 (D.D.C. 2004), and that a finding of "[e]ntitlement is at the discretion of the district court." Md. Dep't of Human Res. v. Sullivan, 738 F. Supp. 555, 563 (D.C. Cir. 1990).

*1. Public Benefit*

The public benefit prong focuses on whether "the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." Cotton, 63 F.3d at 1120. "The inquiry is furthered by considering the likely degree of dissemination and the public impact that can be expected from a particular disclosure." Horsehead Indus. Inc. v. U.S. EPA, 999 F. Supp. 59, 68 (D.D.C. 1998) (citing Blue v. Bureau of Prisons, 570 F.2d 529, 533 (5th Cir. 1978)). Ultimately, "the court must consider 'both the effect of the litigation for which fees are requested and the potential public value of the information sought.'" Campaign for Responsible Transplantation v. U.S. FDA, 593 F. Supp. 2d 236, 241 (D.D.C. 2009) (quoting Davy v. CIA, 550 F.3d 1155, 1159 (D.C. Cir. 2008)). Recognizing FOIA's purpose and effort in assisting the free flow of information between the government and individuals, the public benefit prong requires "a distinction . . . to be drawn between the plaintiff who seeks to advance his

private commercial interests and . . . the public interest group seeking information to further a project benefiting the general public." Davy, 550 F.3d at 1159. Ultimately, "when a litigant seeks disclosure for a commercial benefit or other personal reasons, an award of fees is usually inappropriate." Cotton, 63 F.3d at 1120.

Here, plaintiff argues that "the release of the documents to date has furthered the public interest by shedding light on the operations and activities of the Government. There is a greater understanding of how the Postal Service uses numerous employees in these trying economic times to label insurance salesmen." Pl's Mot. at 14. But although plaintiff claims that this litigation has produced public benefits, there is little evidence that there is a large interested group or even that plaintiff is able to disseminate the disclosed information to the allegedly interested public. Under this prong, the courts are typically concerned with "the disclosure of information that 'citizens may use in making vital political choices.'" Fenster v. Brown, 617 F.2d 740, 744 (D.C. Cir. 1995) (citing Blue, 570 F.2d at 534). That interest seems remote here.

Plaintiff claims this litigation contributed to the "public debate about whether insurance salespeople of African descent are properly labeled by the federal government as Nigerian Identity Thieves," but this appears to be a debate that largely occurred within UAF and not one that relates to vital political choices of the public. Pl's Reply at 7. Ultimately, plaintiff's inquiry, and the documents that were ordered disclosed, were limited to materials related to the creation of the particular article at issue. Hence, to "the extent that this information is of any interest to the public, it is likely of interest to a relatively small segment of the population." Peter S. Herrick's Customs & Int'l Trade Newsletter v. U.S. Customs and Border Prot., 2006 U.S. Dist. LEXIS 77935, *20 (D.D.C. 2006). Accordingly, the Court concludes that the public benefit from the

disclosures in this case is minimal and thus weighs against awarding attorney fees and costs associated with this litigation.

*2. Commercial Benefit to the Plaintiff/Nature of the Plaintiff's Interest*

The second and third factors - - the commercial benefit to the plaintiff and the nature of the plaintiff's interests in the records requested - - "are closely related and often analyzed together." Tax Analysts, 965 F.2d at 1095. Under these factors, the requesting party's "motive need not be strictly commercial" to cut against an award of attorney fees - - "any private interest will do." Id. at 1095. The first three factors under the FOIA attorney fees analysis are similar in that they "assist a court in distinguishing between requesters who seek documents for public informational purposes and those who seek documents for private advantage." Davy, 550 F. 3d 1160. Hence, "the functional inquiry under these factors is to assess the probability that the complainant had sufficient private incentive and means to seek disclosure of the records regardless of the availability of fees." Horsehead Indus. Inc., 999 F. Supp. at 69.

Plaintiff points to the original filing of their FOIA lawsuit in March 2006, where they acknowledge that the information disclosed by the USPS could not be used in a suit for defamation, as evidence that they had no commercial interest in the release of the documents. Pl's Mot. at 16. Although plaintiff may not have plans for a lawsuit that would produce a commercial benefit, the motive "need not be strictly commercial" to weigh against a fee award. Tax Analysts, 965 F.2d at 1095. This is not a case of a news organization that might receive a commercial gain from seeking and publishing information that would also assist the public in making important political choices. See id. at 1096 (acknowledging that "Congress wanted news organizations to be

treated favorably under the attorney's fees provision"). Plaintiff may not be able to profit from the disclosures by way of a defamation lawsuit, but the particular nature of their request and the limited focus of the disclosed documents illustrate that this FOIA request reflected a private interest on the part of plaintiff and was not for public information purposes. Hence, the second and third factors do not support an award of attorney fees and costs.

*3. Reasonableness of the Agency's Withholding*

To avoid an award of costs and fees under the final factor, "the government need only show that its position had a colorable basis in law." Nat'l Sec. Archive v. U.S. Dep't of Def., 530 F. Supp. 2d 198, 205 (D.D.C. 2008). "If the government only establishes that it had a reasonable basis in law for resisting disclosure it may be proper to deny a FOIA plaintiff's motion for attorney fees unless other factors affirmatively justify such an award." Nationwide Bldg. Maint., 559 F.2d at 712 n. 34. This factor "is intended to weed out those cases in which the government was 'recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior.'" Tax Analysts, 965 F.2d at 1097 (quoting Cuneo v. Rumsfeld, 553 F.2d 1360, 1366 (D.C. Cir. 1977)). Although courts should not award fees "where the agency's interpretation of its legal right to withhold information is correct as a matter of law," Piper, 339 F. Supp 2d at 22, the D.C. Circuit has "also emphasized that the government's position need not be correct to qualify as reasonable," Fenster, 617 F.2d at 744.

Plaintiff argues that the appellate record of this case is evidence of defendant's delay tactics and unreasonable basis for withholding the requested documents. Pl's Mot. at 18. It is true that this litigation stretched on for a period of almost four years, but that is not evidence of

"obdurate behavior." See Herrick's Customs, 2006 U.S. Dist. LEXIS at * 31-32 (explaining that "there [was] no evidence that the requests to extend looming deadlines, which are (unfortunately) a routine occurrence on the Court's docket, were sought" in any "stubborn" resistance to FOIA). And the specific circumstance of a notice of appeal followed some time later by a voluntary dismissal of the appeal is (again perhaps unfortunately) fairly commonplace with the federal government in this Court's experience.

Although the Postal Service improperly redacted the names of employees in certain documents, they certainly were not recalcitrant or obdurate. As noted, the standard is not whether the government was ultimately correct, but rather whether they were reasonable in their refusal. The Postal Service relied on Exemption 7(C), which authorizes the withholding of "records or information compiled for law enforcement purposes" where disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy," to support their refusal to disclose the names of specific employees. 5 U.S.C. § 552(b)(7)(C). Although it ultimately failed to make the required specific and particularized showing that disclosing the identities of these employees would result in harm or harassment, that failure does not support a finding that USPS was unreasonable. The claim was based on sound legal theory but ultimately failed because USPS was not able to make the required showing of harm.

The relevant Exemption 7(C) case law confirms that the Postal Service's assertion of Exemption 7(C) was not recalcitrant. See Schrecker v U.S. Dep't of Justice, 217 F. Supp. 2d, 29, 36 (D.C. Cir. 2002) (explaining that "an agency claiming exemption 7(C) must engage in a balancing of the public interest in disclosure versus the privacy interest in withholding

information in order to justify adequately withholding information under 7(C)"); Judicial Watch, Inc. v. FDA, 449 F.3d 141, 153 (D.C. Cir. 2006) (finding that to succeed under Exemption 7(C) an agency must show there is some factual basis for the claim that "harassment, intimidation, or physical harm" will result from disclosure of individuals' names). Even though defendant's argument was ultimately rejected, that does not rule out the reasonableness of the argument asserted. Because the Postal Service articulated a reasonable legal position and did not exhibit the kind of stubborn opposition to valid claims that FOIA seeks to discourage, the Court concludes that the fourth factor in the entitlement analysis weighs against an award of attorney fees.

## CONCLUSION

Although plaintiff is eligible for an award of attorney fees and costs, he is not entitled to one. Given the modest amount of court-ordered relief, the minimal public benefit conferred by the released information, plaintiff's predominantly private interest in the materials, and defendant's reasonable legal position, the Court will deny plaintiff's motion for attorney fees and costs. A separate order has been issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: March 18, 2011